# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

|   |   |
|---|---|
| DEFINITION SERVICES INC., a British Virgin Islands corporation,<br><br>            Plaintiff,<br><br>    v.<br><br>GVA CAPITAL LTD., a Cayman Islands exempted company,<br><br>            Defendant. | C.A. No. _____ |

## DEFENDANT GVA CAPITAL, LTD.'S NOTICE OF REMOVAL

Defendant GVA Capital Ltd. ("GVA") files this Notice of Removal of Case No. 2021-0357-KSJM, currently pending in the Court of Chancery of the State of Delaware, and all claims and causes of action therein (the "Action") pursuant to 28 U.S.C. §§ 1331, 1441(a), and 1446 and states as follows:

## NATURE OF THE REMOVED ACTION

1. This is a dispute between GVA, an investment manager, and Definition Services Inc. ("Definition"), the successor-in-interest to one of GVA's investors. GVA is a Cayman Islands corporation with its headquarters in San Francisco, California; Definition is a British Virgin Islands ("BVI") entity with its headquarters in BVI.

2. In 2015 and 2016, GVA and its principal, Magomed Musaev, approached Russian businessman Suleiman Kerimov and encouraged him to invest in various GVA projects. These included a venture-capital fund called GVA Vestor.In; a proposed event and co-working space in San Francisco that would be owned and managed by the Startup Temple Group; and the investment at issue in this dispute, GVA Auto, LLC ("GVA Auto"). *See* Ex. A at Dkt. 1 ("Compl."), ¶ 12.

3. In September 2016, Mr. Kerimov and his family agreed to invest $20 million in GVA Auto. Mr. Kerimov routed the investment through Prosperity Investments, LP ("Prosperity") and installed his nephew, Nariman Gadzhiev, as Prosperity's director. GVA invested the $20 million in Luminar Technologies, Inc. ("Luminar"), which, at the time, was a nascent Silicon Valley startup developing LiDAR technology for self-driving (or autonomous) cars.

4. It was an unusual, and an unusually risky, investment for Mr. Kerimov and his family. Within months, he and Mr. Gadzhiev grew skeptical and demanded that GVA extricate Prosperity from the deal. GVA agreed to look for a replacement buyer, ultimately selling 5% of Prosperity's interest to a third party. But GVA also made a proposal that it thought would allay Prosperity's concerns: GVA agreed to take on all of Prosperity's risk. Specifically, GVA and Prosperity agreed that: (1) if the Luminar investment failed, GVA would make Prosperity whole by refunding its entire investment (or whatever portion remained after sales to third parties); and (2) if the Luminar investment ultimately succeeded, GVA would keep any proceeds in excess of Prosperity's original investment (the "Profit and Loss Agreement" or "PLA").

5. Then, in early 2018, the U.S. Department of the Treasury designated Mr. Kerimov "an official of the Government of the Russian Federation" and placed him on its sanctions list, making it illegal for him to do business or own assets in the United States.[1] Shortly before those sanctions were announced, Mr. Kerimov and Mr. Gadzhiev decided to move Prosperity's holdings—including its GVA Auto investment—into a trust established for the benefit of Mr. Kerimov's children. To do that, they purportedly transferred the investment from Prosperity

---

[1] *See, e.g.*, U.S. Dept. of the Treasury, *Treasury Designates Russian Oligarchs, Officials, and Entities in Response to Worldwide Malign Activity* (Apr. 6, 2018), available at https://home.treasury.gov/news/press-releases/sm0338 ("He is alleged to have brought hundreds of millions of euros into France—transporting as much as 20 million euros at a time in suitcases, in addition to conducting more conventional funds transfers—without reporting the money to French tax authorities. Kerimov allegedly launders the funds through the purchase of villas. Kerimov was also accused of failing to pay 400 million euros in taxes related to villas.").

to Prosperity's sole owner, Definition. Notwithstanding these connections, Definition now takes the position that Mr. Kerimov "does not have any relationship whatsoever with Definition."

6. Over time, it started to become clear that Luminar was a high-risk-high-reward investment. In August 2020, Luminar announced that it planned to go public by merging with a special purpose acquisition company or "SPAC." At the time, analysts estimated that Luminar would have a post-merger valuation of approximately $3.4 billion, which meant that GVA Auto's initial $20 million investment was suddenly worth approximately $200 million. Today, Luminar has a market capitalization of $7.3 billion, and GVA Auto's stake is worth approximately $417 million.

7. GVA continues to manage the GVA Auto investment. In that capacity, GVA has decision-making authority, including the "rights and powers" to "sell or otherwise dispose of" any of GVA Auto's assets at any time. However, the Luminar shares have been (and still are) subject to a lockup restriction that expires in early June 2021. Two months ago, as the expiration date approached, GVA wrote to Definition's managers at Neuberger Berman ("NB") to remind them that GVA and Prosperity had entered into an agreement, the PLA, regarding how any GVA Auto profits would be distributed. GVA explained that, when the lockup expired, it intended to proceed according to the terms of the parties' PLA:

> When it sells GVA Auto's interest in Luminar, it will distribute the proceeds accordingly: first, it will ensure that Definition is made whole for Prosperity's investment; then it will ensure that the Manager is paid for its services, consistent with the requirements of the OA; and then, if any proceeds remain, GVA Capital will retain them.

8. NB never responded to GVA's letter.

9. Instead, two weeks later, Definition filed a declaratory-judgment complaint in the Delaware Court of Chancery, suddenly seeking to unwind and invalidate the PLA and remove GVA as the Manager of GVA Auto. In its complaint, Definition alleges that "there is no contemporaneous evidence" documenting the parties' oral PLA, argues that the PLA is thus "non-existent and unenforceable," and asserts that Definition should be free to renege on its predecessor-in-interest's commitments.

10. Ignoring the fact that *GVA* had written to *Definition* two weeks prior, Definition also filed an emergency TRO application, baselessly claiming that it feared GVA would abscond with the profits simply because its principal "is a Russian national domiciled in the Russian Federation" who "would not be 'concerned about' breaching" court orders. *Id.* ¶ 47. (For the avoidance of doubt, GVA and Mr. Musaev dispute those allegations.)

11. Plainly, the parties disagree about the PLA's enforceability—but they agree that their dispute should be resolved by a court. To that end, GVA stipulated to a "status quo order," entered by the Court of Chancery on May 18, 2021, that requires GVA to place the disputed GVA Auto shares into escrow while the parties litigate (the "Status Quo Order"). Specifically, the Status Quo Order provides that: (i) once GVA dissolves or modifies a separate status-quo stipulation in an action pending in the Cayman Islands, the parties will transfer the Luminar shares to an escrow agent; and (b) the escrow agent will distribute: (i) approximately $17.9 million's[2] worth of shares to a third-party investor; (ii) approximately $1.8 million's worth of shares to GVA for managing that third-party's investment; and (iii) approximately $18.5 million's worth of shares to Definition (the number of shares necessary to make it whole for Prosperity's original investment, just as the parties contemplated under the PLA). The parties agree that the remaining shares—approximately $347.7 million's worth—are at issue in this dispute and should remain in escrow until the matter is resolved.

## TIMELINESS OF REMOVAL

12. GVA was served with the Complaint and Summons on or about May 4, 2021. *See* Ex. A at Dkt. 11. This Notice of Removal is timely because, as required under 28 U.S.C. § 1446(b), it is being filed within thirty (30) days of Defendant's receipt of the Summons and Complaint.

---

[2] The parties have agreed that this distribution will be made in shares, not dollars, and will be based on "the closing price of the shares" as quoted on Nasdaq "at the close of business on the business day prior to" the contemplated distribution. However, for diversity-jurisdiction purposes, what matters is the amount in controversy at the time the complaint was filed. The dollar figures in this paragraph are thus based on the closing price of Luminar's shares on April 26, 2021.

## PLACE OF REMOVAL

13.     The United States District Court of the District of Delaware is the appropriate venue for removing an action from the Court of Chancery of the State of Delaware, where this matter is currently pending.  *See* 28 U.S.C. § 1441(a); 28 U.S.C. § 87.

## DIVERSITY OF CITIZENSHIP

14.     A civil action brought in state court may be removed by the defendant to federal district court if the federal court would have had original jurisdiction over the claim.  *See* 28 U.S.C. § 1441(a). "Diversity of citizenship subject matter jurisdiction falls within the original jurisdiction of the district court," under 28 U.S.C. § 1332(a), and thus "a state court case that implicates diversity jurisdiction" may generally be removed, *Brown v. Francis*, 75 F.3d 860, 865 (3d Cir. 1996), as long as the defendant is not a citizen of the state in which the action is brought, 28 U.S.C. § 1441(b)(2).

15.     For jurisdictional analysis, "corporations are citizens both of the state in which they are incorporated and in [their] principal place of business.  A corporation's principal place of business is its nerve center defined as where the corporation decides the strategy and engages in the executive decision-making defining the corporation's business.  There can only be one principal place of business. [Courts] do not find a principal place of business simply because the managers are located in one state or the public perception is the company belongs in a certain state.  The issue is solely where the executive final decision making is made." *See, e.g.*, *ACI Worldwide Corp. v. Tracfone Wireless, Inc.*, No. CV 16-981, 2017 WL 3228138, at *2 (D. Del. July 31, 2017) (citations omitted).

16.     Definition is, and at all relevant times has been, a British Virgin Islands corporation. Compl. ¶ 11.

17.     In its Complaint, Definition is silent about its own principal place of business. However, when Prosperity purported to transfer its GVA Auto interest to Definition, Definition's Manager described the corporation as being a "citizen" of the British Virgin Islands and listed its primary address as Trident Chambers, P.O. Box 146, Road Town, Tortola, British Virgin Islands.

Definition's Manager appears to be based in Switzerland. Upon information and belief, Definition is not registered to do business in either California or Delaware.

18. Definition is therefore a citizen of the British Virgin Islands.

19. Defendant GVA is incorporated in the Cayman Islands. Its principal place of business is San Francisco, California. *See* Compl. ¶ 12 (alleging that GVA is "a San-Francisco based, Cayman Islands-registered entity").

20. GVA is therefore a citizen of the Cayman Islands and California.

21. GVA is not a citizen of Delaware.

22. There is complete diversity of citizenship between the parties.

## AMOUNT IN CONTROVERSY

23. Because there is complete diversity of citizenship, this Court has original diversity jurisdiction under 28 U.S.C. § 1332(a) as long as the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

24. Here, there is no doubt that this dispute clears that threshold. The parties disagree over the distribution of GVA Auto's interest in Luminar, which, "[b]ased on Luminar's recent stock prices," has "a value in the hundreds of millions of dollars." *See* Compl., ¶ 29; *id.* ¶ 33 (alleging that Definition's predecessor, Prosperity, expected to receive "Luminar Shares worth hundreds of millions of dollars"); *id.* ¶ 61 (accusing GVA of "breach[ing] its fiduciary duties by attempting to usurp Definition Services' investment gains, which total hundreds of millions of dollars").

25. Indeed, as detailed above, the parties recently agreed to move approximately $347.7 million's worth of Luminar shares into an escrow account—the "amount in controversy" in this lawsuit based on the shares' April 26, 2021 value.

## PROCEDURAL REQUIREMENTS AND LOCAL RULES

26. There is only one Defendant in this action—GVA Capital, Ltd. No other party's consent is required for removal.

27. By filing this Notice of Removal, Defendant does not intend to waive, and hereby reserves, any objection as to service and other defenses.

28. Pursuant to 28 U.S.C. § 1446(d), a copy of the Notice of Removal to United States District Court is being filed with the Court of Chancery of the State of Delaware. A copy of the Notice of Filing of Notice of Removal, which will be filed with the Court of Chancery, is attached hereto as Exhibit B.

29. This Notice of Removal will be served on Plaintiff today.

30. In accordance with 28 U.S.C. § 1446(a), "a copy of all process, pleadings, and orders served upon" Defendant are attached hereto as Exhibit A.

31. Pursuant to Local Rule 81.2, within 21 days of the filing of the case with the Clerk, the parties shall submit a statement identifying all pending matters which require judicial action.

32. Pursuant to 28 U.S.C. § 1450, the Status Quo Order "shall remain in full force and effect until dissolved or modified by [this Court]."

## DEMAND FOR JURY TRIAL

33. GVA demands trial by jury on all issues appropriate for jury determination.

## CONCLUSION

34. The prerequisites for removal under 28 U.S.C. §§ 1332, 1441, and 1446 have been met. If any questions arise as to the propriety of the removal of this action, GVA requests the opportunity to present a brief, oral argument, and further evidence as necessary in support of its position that this case is removable to this Court.

ROSS ARONSTAM & MORITZ LLP

*Of Counsel*:

Elliot R. Peters
Nicholas D. Marais
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, California 94111

May 25, 2021

*/s/ Adam D. Gold*
Bradley R. Aronstam (Bar No. 5129)
Adam D. Gold (Bar No. 6412)
100 S. West Street, Suite 400
Wilmington, Delaware 19801
(302) 576-1600

*Attorneys for Defendant GVA Capital Ltd.*

## **CERTIFICATE OF SERVICE**

I, Adam D. Gold, hereby certify that on May 25, 2021, I filed the foregoing document with the Clerk of Court using the CM/ECF system.  Additionally, I hereby certify that on May 25, 2021, I served the foregoing document on counsel of record as listed below by electronic mail and on May 25, 2021 by hand delivery at the addresses below:

> Brock E. Czeschin
> Christian Roberts
> RICHARDS, LAYTON & FINGER, P.A.
> 920 North King Street
> Wilmington, Delaware 19801
> czeschin@rlf.com
> croberts@rlf.com

*Attorneys for Definition Services, Inc.*

I hereby certify that a copy of the forgoing motion will be electronically filed with the State of Delaware Chancery Court using File & Serve*Xpress*.

> */s/ Adam D. Gold*
> Adam D. Gold (Bar No. 6412)