# Exhibit A

Click to Print                                    Printed on: 5/25/2021 14:41:06 GMT-0400 (Eastern Daylight Time)

## Case History Search

Search Created:
5/25/2021 14:41:06 GMT-0400 (Eastern
Daylight Time)

---

| | | | | | |
|---|---|---|---|---|---|
| **Court:** | DE Court of Chancery Civil Action | **Judge:** | McCormick, Kathaleen St Jude | **File & ServeXpress Live Date:** | 4/26/2021 |
| **Division:** | N/A | **Case Number:** | 2021-0357-KSJM | **Document(s) Filed:** | 33 |
| **Case Type:** | Injunctive Relief | **Case Name:** | Definition Services Inc. v. GVA Capital LTD. | **Date Range:** | All |

1-12 of 12 transactions   <<Prev  Page 1 of 1   Next>>

| Transaction | ▲Date/Time | Option | Case Number Case Name | Authorizer Organization | # | Document Type | Document Title | Review Status | Size |
|---|---|---|---|---|---|---|---|---|---|
| 66548167 | 4/26/2021 4:06 PM EDT | File Only | 2021-0357-KSJM Definition Services Inc. v. GVA Capital LTD. | Christian C F Roberts, Richards Layton & Finger PA-Wilmington | 1 | Complaint - 18-109 Service <= 10 defs | Verified Complaint Seeking Temporary Restraining Order and other Relief • Linked from (10) | Accepted | 0.6MB |
| | | | | | 2 | Motion for Temporary Restraining Order | Plaintiff's Motion for a Temporary Restraining Order | Accepted | 0.2MB |
| | | | | | 3 | Motion to Expedite | Motion for Expedited Proceedings | Accepted | 0.1MB |
| | | | | | 4 | Opening Brief | Plaintiff's Opening Brief in support of its Motions for Temporary Restraining Order and Expedited Proceedings | Accepted | 0.2MB |
| | | | | | 5 | Summons Instructions | Letter to Register in Chancery from Christian C.F. Roberts, dated April 26, 2021, Regarding Summons Instructions | Accepted | 0.1MB |
| | | | | | 6 | Letter | Letter to The Honorable Andre G. Bouchard from Christian C.F. Roberts, dated | Accepted | 0.1MB |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | April 26, 2021, Enclosing Courtesy Copies and Requesting Prompt Assignment | | |
| | | | | | Exhibits | Exhibits A-B to Verified Complaint Seeking Temporary Restraining Order and other Relief | Accepted | 11.3MB |
| | | | | | Supplemental Information Sheet | Supplemental Information Sheet Pursuant to Rule 3(A) of the Rules of the Court of Chancery and Statement of Good Cause to Verified Complaint Seeking Temporary Restraining Order and Other Relief • Linked from (1) | Accepted | 0.2MB |
| | | | | | Verification to Complaint | Unsworn Verification of Markus Linder Pursuant to 10 Del. C. Section 3927 | Accepted | 0.2MB |
| | | | | | Proposed Order | [Proposed] Temporary Restraining Order | Accepted | 0.1MB |
| | | | | | Proposed Order | [Proposed] Order Granting Plaintiff's Motion for Expedited Proceedings | Accepted | 0.1MB |
| 66549434 | 4/26/2021 5:33 PM EDT | File Only | 2021-0357-KSJM Definition Services Inc. v. GVA Capital LTD. | Christian C F Roberts, Richards Layton & Finger PA-Wilmington | 7 | Supplemental Information Sheet | Amended Supplemental Information Sheet Pursuant to Rule 3(A) of the Rules of the Court of Chancery to Verified Complaint Seeking Temporary Restraining Order and Other Relief • Linked to (2) | Accepted | 0.1MB |

| 66551237 | 4/27/2021 11:43 AM EDT | File And Serve | 2021-0357-KSJM Definition Services Inc. v. GVA Capital | Register in Chancery, DE Court of Chancery Civil Action | 8 | Issuance of Summons | 4.27.2021 - issued (1) 18-109 sums to sps (1) copy • Linked from (3) | Accepted | 0.1MB |
|---|---|---|---|---|---|---|---|---|---|
| 66556958 | 4/28/2021 6:38 PM EDT | File Only | 2021-0357-KSJM Definition Services Inc. v. GVA Capital LTD. | Christian C F Roberts, Richards Layton & Finger PA-Wilmington | 9 | Statement Pursuant to Rule 4(d)(c) | Letter to the Register in Chancery dated April 28, 2021 from Christian C.F. Roberts regarding service on defendant GVA Capital LTD pursuant to 6 Del. C. Section 18-109 • Linked to (2) • Linked from (1) | Accepted | 0.2MB |
| | | | | | 10 | Summons | Summons and Return of Service for GVA Capital Ltd. by serving registered agent of GVA Auto LLC, Harvard Businesses Services, Inc. by Brandywine Process Servers, Ltd. on 04-28-21 • Linked to (2) • Linked from (2) | Accepted | 0.1MB |
| 66574578 | 5/5/2021 3:18 PM EDT | File And Serve | 2021-0357-KSJM Definition Services Inc. v. GVA Capital LTD. | Register in Chancery, DE Court of Chancery Civil Action | 11 | Register's Certificate | Register's Certificate dated May 4, 2021, pursuant to 6 Del.C. 18-109. • Linked to (1) • Linked from (2) | Accepted | 0.3MB |
| 66608528 | 5/17/2021 8:17 PM EDT | File Only | 2021-0357-KSJM Definition Services Inc. v. GVA Capital LTD. | Christian C F Roberts, Richards Layton & Finger PA-Wilmington | 12 | Stipulation & (Proposed) Order | [Proposed] Stipulated Status Quo Order • Linked to (1) • Linked from (2) | Accepted | 0.1MB |
| 66609157 | 5/18/2021 9:56 AM EDT | File And Serve | 2021-0357-KSJM Definition Services Inc. v. GVA Capital LTD. | Ryan D Stottmann, Morris Nichols Arsht & Tunnell LLP-Wilmington | 13 | Entry of Appearance | Entry of Appearance of Ryan D. Stottmann of Morris, Nichols, Arsht & Tunnell LLP on behalf of Interested Non-Party Pavel Cherkashinin | Accepted | 0.1MB |

| | | | | | | | | Accepted | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | (with Certificate of Service)<br>• Linked to (1) | | |
| | | | | | 14 | Letter | Letter to Chancellor Kathaleen S. McCormick from Ryan D. Stottmann on behalf of Interested Non-Party Pavel Cherkashin Regarding form of Proposed Stipulated Status Quo Order<br>• Linked to (2) | Accepted | 0.1MB |
| | | | | | | Exhibits | Exhibit 1 to Letter to Chancellor Kathaleen S. McCormick from Ryan D. Stottmann on behalf of interested non-party Pavel Cherkashin Regarding form of Proposed Stipulated Status Quo order | Accepted | 0.5MB |
| 66609811 | 5/18/2021 11:23 AM EDT | File And Serve | 2021-0357-KSJM Definition Services Inc. v. GVA Capital LTD. | Kathaleen St Jude McCormick, DE Court of Chancery Civil Action | 15 | Order | Granted ([Proposed] Stipulated Status Quo Order)<br>• Linked to (1)<br>• Linked from (1) | Accepted | 0.2MB |
| 66609955 | 5/21/2021 11:47 AM EDT | File And Serve | 2021-0357-KSJM Definition Services Inc. v. GVA Capital LTD. | Adam D Gold, Ross Aronstam & Moritz LLP | 16 | Entry of Appearance | Entry of Appearance of Bradley R. Aronstam and Adam D. Gold of Ross Aronstam & Moritz LLP as counsel on behalf of Defendant GVA Capital Ltd. (with Certificate of Service)<br>• Linked to (2) | Accepted | 0.2MB |
| | | | | | 17 | Motion for Pro Hac Vice | Peters, Elliot R.: Motion for Admission Pro Hac Vice on behalf of Defendant GVA Capital Ltd. (with | Accepted | 0.2MB |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | Certificate of Service)<br>• Linked to (1) | | |
| | | | | | 18 | Motion for Pro Hac Vice | Marais, Nicholas D.: Motion for Admission Pro Hac Vice on behalf of Defendant GVA Capital Ltd. (with Certificate of Service)<br>• Linked to (1) | Accepted | 0.2MB |
| | | | | | | Certification for Pro Hac Vice | Certification in Support of Motion for Admission Pro Hac Vice of Elliot R. Peters on behalf of Defendant GVA Capital Ltd. | Accepted | 0.2MB |
| | | | | | | Proposed Order - Pro Hac Vice | Peters, Elliot R.: [Proposed] Order Granting Motion for Admission Pro Hac Vice on behalf of Defendant GVA Capital Ltd.<br>• Linked from (1) | Accepted | 0.1MB |
| | | | | | | Certification for Pro Hac Vice | Certification in Support of Motion for Admission Pro Hac Vice of Nicholas D. Marais on behalf of Defendant GVA Capital Ltd. | Accepted | 0.2MB |
| | | | | | | Proposed Order - Pro Hac Vice | Marais, Nicholas D.: [Proposed] Order Granting Motion for Admission Pro Hac Vice on behalf of Defendant GVA Capital Ltd.<br>• Linked from (1) | Accepted | 0.1MB |
| 66622863 | 5/21/2021 4:28 PM EDT | Serve Only - Private | 2021-0357-KSJM Definition Services Inc. v. GVA Capital LTD. | Christian C F Roberts, Richards Layton & Finger PA-Wilmington | | Interrogatories | Plaintiff Definition Services Inc.'s First Set of Interrogatories Directed to Defendant GVA Capital Ltd. | N/A | 0.1MB |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Request For Production (First) | Plaintiff Definition Services Inc.'s First Set of Request for Production Directed to Defendant GVA Capital Ltd. | N/A | 0.1MB |
| 66623350 | 5/21/2021 6:47 PM EDT | File And Serve | 2021-0357-KSJM Definition Services Inc. v. GVA Capital LTD. | Christian C F Roberts, Richards Layton & Finger PA-Wilmington | 19 | Notice of Service | Notice and Certificate of Service of (1) Plaintiff Definition Services Inc.'s First Set of Interrogatories Directed to Defendant GVA Capital Ltd.; (2) Plaintiff Definition Services Inc.'s First Set of Requests for Production Directed to Defendant GVA Capital Ltd.; and (3) this Notice and Certificate of Service<br>• Linked to (1) | Accepted | 0.1MB |
| 66626984 | 5/24/2021 3:50 PM EDT | File And Serve | 2021-0357-KSJM Definition Services Inc. v. GVA Capital LTD. | Kathaleen St Jude McCormick, DE Court of Chancery Civil Action | 20 | Order - Pro Hac Vice | Granted (Peters, Elliot R.: [Proposed] Order Granting Motion for Admission Pro Hac Vice on behalf of Defendant GVA Capital Ltd.)<br>• Linked to (1) | Accepted | 0.2MB |
| | | | | | 21 | Order - Pro Hac Vice | Granted (Marais, Nicholas D.: [Proposed] Order Granting Motion for Admission Pro Hac Vice on behalf of Defendant GVA Capital Ltd.)<br>• Linked to (1) | Accepted | 0.2MB |

EFiled:  Apr 26 2021 04:06PM EDT
Transaction ID 66548167
Case No. 2021-0357-

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

DEFINITION SERVICES INC., )
)
Plaintiff, )
)
v. )   C.A. No. 2021-____-____
)
GVA CAPITAL LTD., )
)
Defendant. )

## VERIFIED COMPLAINT SEEKING
## TEMPORARY RESTRAINING ORDER AND OTHER RELIEF

Plaintiff Definition Services Inc. ("Definition Services"), by and through its undersigned counsel, for its Verified Complaint Seeking Temporary Restraining Order and Other Relief against Defendant GVA Capital Ltd. ("GVA Capital"), alleges as follows:

## NATURE OF THE ACTION

1.      This action seeks to stop the brazen attempt by an investment manager, GVA Capital, to steal the substantial gains of its investor, Definition Services, in direct violation of the parties' written agreement.  Pursuant to the written agreement, Definition Services is entitled to receive a distribution of its investment gains, which are currently valued in the hundreds of millions of dollars, in the coming weeks. Until very recently, GVA Capital was working cooperatively with Definition Services in planning for this distribution under the written agreement.  However, as

a result of one of GVA Capital's members seizing control of the company's board, GVA Capital has suddenly taken the position that it is entitled to **all** of Definition Services' investment gains and that such gains will be distributed directly to GVA Capital and/or its new controller. GVA Capital has taken this remarkable position on the grounds of an alleged "oral agreement" purportedly reached years ago by individuals who lacked authority to bind either party. The alleged oral agreement also violates the very terms of the parties' underlying written agreement, which requires any modification or amendment of the parties' rights to be in writing. This shocking conduct must be stopped, including through the prompt issuance of a temporary restraining order. Otherwise, Definition Services' substantial investment gains will be distributed to foreign entities, including a Russian national living abroad, and dissipated before any final relief may be awarded, effectively leaving Definition Services without an available remedy.

2.     GVA Capital styles itself as a venture capital firm that manages investments in early stage companies. Definition Services holds investments in three special purpose entities managed by GVA Capital. One of those investment vehicles—GVA Auto LLC ("GVA Auto")—has experienced phenomenal success as a result of its investment in Luminar Technologies Inc. ("Luminar"), made years ago when Luminar was a struggling startup. But Luminar has since gone public and experienced an extraordinary increase in value. As a result, Definition Services'

2

indirect investment in Luminar through GVA Auto is now worth hundreds of millions of dollars.

3.      Prior to April 8, 2021, Definition Services was working with GVA Capital director Pavel Cherkashin ("Cherkashin") on a distribution agreement, which would provide Definition Services with its rightful share of the Luminar investment proceeds.   However, on that date, Cherkashin notified Definition Services that another member of GVA Capital, Odrison Investments Limited ("Odrison"), was seeking to remove Cherkashin as a director because Cherkashin refused to recognize the alleged oral agreement that purportedly gave GVA Capital the right to all gains on the Luminar investment.  Odrison is an entity controlled by Magomed Musaev ("Musaev"), a Russian national.  Odrison and Musaev assert that at some point Musaev entered into an oral agreement with a "representative" of Definition Services and/or its predecessor providing that Definition Services would only be entitled to the return of its invested capital (approximately $20 million) and all gain or loss on the GVA Auto investment would be realized by GVA Capital.

4.      Odrison's/Musaev's alleged oral agreement is unsupported by the evidence and, moreover, wholly unenforceable.  First, any such oral agreement would violate the plain terms of the Operating Agreement of GVA Auto (the "Operating Agreement") to which GVA Capital and Definition Services are parties. The Operating Agreement provides that "[a]ll profit and loss shall be allocated to

the Capital Accounts of the Members in proportion to their Percentage Interests."
The Operating Agreement further provides that the agreement shall not be amended
except in writing.  Second, none of the individuals purportedly involved in reaching
the alleged oral agreement had authority to bind the parties to it.  Third, no such
binding or enforceable oral agreement was reached in any event.  Odrison/Musaev
appear to have fabricated various versions of this self-interested oral agreement, all
of which Definition Services denies.

5.     Remarkably, Odrison's own partner in GVA Capital, Cherkashin,
refused to recognize the alleged oral agreement and sought properly to perform GVA
Capital's obligations under the Operating Agreement.  As a result, on April 13, 2021,
Odrison purported to remove Cherkashin from GVA Capital's board and appointed
in his place Musaev's handpicked counsel.  Odrison's intention in doing so was
clear:   It was causing GVA Capital to adopt Musaev's outlandish position
concerning the alleged oral agreement, including that all of Definition Services'
gains on the Luminar investment shall be distributed to GVA Capital and/or Musaev.
GVA Capital's newly-minted position is not only contrary to the express terms of
the Operating Agreement, but is also a blatant breach of its fiduciary duties as the
manager of GVA Auto.

6.     The distribution is likely to occur on or soon after June 1, the date on
which lockup restrictions on the Luminar stock expire and the Luminar stock will

be available to GVA Auto.  Absent an injunction, Definition Services expects that, upon the expiration of this lockup period, Definition Services' valuable stock will be almost immediately diverted away from it and dissipated.

7.     For these and other reasons explained herein, Definition Services seeks the entry of a prompt temporary restraining order and other relief necessary to remedy the wrongdoing by GVA Capital.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over the claims set forth herein pursuant to 10 *Del. C.* § 341, 6 *Del. C.* § 18-111, and the Delaware Declaratory Judgment Act, 10 *Del. C.* § 6501, et seq.

9.     This Court has jurisdiction over GVA Capital pursuant to 6 *Del. C.* § 18-109 in its role as a manager of GVA Auto, a Delaware limited liability company.

10.     Jurisdiction and venue in this Court is further appropriate pursuant to Section 13.10 of the GVA Auto Operating Agreement, which provides:

> This Agreement shall be governed by, and construed under, the laws of the State of Delaware (without regard to conflict of laws principals), all rights and remedies being governed by such laws.  The parties agree that any action brought by any party under or in relation to this Agreement, including without limitation to interpret or enforce any provision of this Agreement, shall be brought in, and each party agrees to and does hereby submit to the jurisdiction and venue of, any state or federal court located in Delaware, USA.

## FACTUAL BACKGROUND

**A.     The Parties**

11.     Plaintiff Definition Services is a British Virgin Islands corporation. Definition Services holds investments in three special purpose entities, discussed below, which are managed directly or indirectly by GVA Capital.

12.     Defendant GVA Capital is a San Francisco-based, Cayman Islands-registered entity that manages three entities in which Definition Services holds interests: (1) GVA Auto, a Delaware entity; (2) Startup Temple Group LLC ("Startup Temple"), a Delaware entity; and (3) GVA Vestor.In Partners Fund, L.P., ("Vestor.In"), a Cayman Islands entity.  On information and belief, GVA Capital's principals are Cherkashin, Odrison (which, on information and belief, is controlled by Musaev), Roman Sobachevskiy, and Artem Smirnov.

**B.     The Investments with GVA Capital**

13.     Prosperity Investments LP ("Prosperity"), Definition Services' predecessor-in-interests, originally invested a total of $28 million with GVA Capital across three investments.  First, in August 2015, Prosperity made a $3 million capital contribution in Vestor.In, an investment fund formed for the purpose of making small seed investments in startup companies.

14.　　Next, in January 2016, Prosperity invested $5 million in Startup Temple, which ultimately acquired property in San Francisco, California, to be developed into a "co-working space" for startup companies in the Bay area.

15.　　Third and most significantly, in September 2016, Prosperity made a capital contribution of $20 million in GVA Auto.  GVA Auto's sole purposes are to: "(i) make, hold, and dispose of direct or indirect investments in Luminar Technologies, Inc., a Delaware corporation …, and (ii) engage in any and all activities related or incidental thereto."  Operating Agreement § 2.3.[1]  At the time of the investment, Luminar was a startup company focused on developing technology for autonomous vehicles.

16.　　GVA Auto did not directly invest in the shares of Luminar, but instead invested the $20 million through a Simple Agreement for Future Equity Note (the "SAFE Note").  The SAFE Note provided that in the event of a "Liquidity Event," GVA Auto would have the right to receive a number of shares of Luminar common stock as determined by a formula set forth therein.

17.　　At the time of its capital contribution, Prosperity was the only investor in GVA Auto.  On June 29, 2017, Prosperity sold 5% of its position in GVA Auto to Vladimir Smirnov for $1.5 million in cash.  On information and belief, Vladimir Smirnov is the father of GVA Capital member Artem Smirnov.

---

[1] The Operating Agreement is attached hereto as Exhibit A.

## C.    The Operating Agreement

18.    The Operating Agreement sets forth the parties' rights and obligations with regard to GVA Auto.  GVA Capital is designated as the Manager of the entity, but does not own any Percentage Interest in the company.  *See* Operating Agreement § 1, Schedule A.  Prosperity's original 100% Percentage Interest in the company was reflected on Schedule A to the Operating Agreement.  Following the sale of a 5% interest to Vladimir Smirnov in June 2017, Schedule A was modified to reflect Prosperity's 95% Percentage Interest.  As such, Prosperity and Vladimir Smirnov are the only "Members" of GVA Auto.  *See id.*

19.    Pursuant to Section 4.5(b) of the Operating Agreement, "[a]ll profit and loss shall be allocated to the Capital Accounts of the Members in proportion to their Percentage Interests."

20.    Section 5.2 of the Operating Agreement further provides as follows:

Ordinary Distributions.  Subject to the limitations of the Act and this Agreement, the Manager shall make prompt distributions of Available Cash (and in any event within 30 days after receipt of proceeds from the Portfolio Company) resulting from receipts attributable to, or proceeds from the disposition of, a Portfolio Company to the Members as follows:

(a)  First, 100% to the Members who have Net Investment amounts, in proportion to their relative amounts of Net Investment until the Net Investment of each Member has been reduced to zero;

(b)  Thereafter, (i) 90% to the Members pro rata to their Percentage Interest and (ii) 10% to the Manager (the "Carried Interest").

21.     Stated differently, the Operating Agreement provides that each Member shall receive back its invested capital and then any additional gains shall be distributed 90% to the Members based on their percentage interests and 10% to the Manager.

22.     Under Section 5.3 of the Operating Agreement, the Manager has discretion to "distribute assets in kind in the priority set forth in Section 5.2; provided that for purposes of this Section 5.3, a distribution of an asset or an undivided interest in an asset in-kind to a Member shall be treated as if the asset had been sold for fair market value."

23.     Furthermore, the Operating Agreement, including the distribution provisions and profit and loss allocation provision, may not be amended or modified without the requisite written consent of the majority of its Members.  Under Section 6.2 of the Operating Agreement, the Manager cannot adopt "any amendment to this Agreement" without the "prior written approval of a Required Interest of Members," which is Members holding more than 50% of the Percentage Interests.  Similarly, Section 11.1 of the Operating provides: "This Agreement may not be modified or amended without the written consent of the Manager and the Members holding a Required Interest."

24.     Significantly, upon the vote of Members holding more than 50% of the Percentage Interests, the Operating Agreement provides that GVA Capital may be

9

removed as Manager in the event of "Misconduct by the Manager." *See* Operating Agreement § 9.2. This term is defined to include, among other things, a finding that the Manager committed "fraud or any other act involving improper personal benefit against the Company or its assets" or "willfully and materially breached [the Operating Agreement]." *Id.* § 1. Upon GVA Capital's removal as Manager, the Members are entitled to appoint a new Manager. *See id.* § 9.3(a). As of the effective date of the appointment of a successor Manager, such successor Manager shall have the same rights and obligations as the original Manager has if the original Manager had continued to act as Manager. *See id.*

**D.     Prosperity Transfers Its Interests in the Investments to Definition Services**

25.    In connection with a restructuring in December 2018, Prosperity transferred all of its interests in the GVA investment vehicles to Definition Services.

26.    Specifically, through an Agreement of Assignment and Adherence (the "Assignment Agreement") dated December 19, 2018, Prosperity transferred and assigned all of its "rights, title and interest in respect of its interest in" GVA Auto to Definition Services. The Assignment Agreement, which was signed by Cherkashin on behalf of GVA Auto, further provides that GVA Auto acknowledges, agrees and confirms that "all requirements and conditions for the assignment of the Assigned Interest and the admission of [Definition Services] as a member of the Company have been satisfied or otherwise waived." GVA Capital also approved of the

Assignment Agreement and Definition Services' admission as a member of GVA Auto through written resolutions dated December 9, 2018, which were signed by Ordison.

27.     At the same time, Prosperity transferred its interests in the other two GVA Capital-managed investments (Vestor.In and Startup Temple) to Definition Services through substantially similar agreements.

28.     Definition Services subsequently became aware that all of the Assignment Agreements contained the same scrivener's error.  Specifically, the Assignment Agreements referenced and purported to be with "Prosperity Investment Ltd." instead of "Prosperity Investments LP."  This slight error in Prosperity's name is immaterial given that no entity by the name of Prosperity Investment Ltd. ever owned any interests in any of the companies.  Moreover, following the execution of the Assignment Agreements, GVA Capital recognized Definition Services as the owner of the interests in all three managed entities.  Once the error was identified, representatives of both Prosperity and Definition Services signed corrected copies of the Assignment Agreements.[2]

---

[2] By this time, Prosperity had been dissolved and terminated.  Accordingly, the corrected copy of the GVA Auto Assignment Agreement was signed by the former representatives of Prosperity.

**E.     Luminar Explodes In Value And Goes Public**

29.     By early 2020, Luminar was preparing to go public, and it was clear that the company's value had grown considerably.  Luminar ultimately went public on December 1, 2020, following its merger with Gores Metropoulos Inc.  This constituted a "Liquidity Event" under the SAFE Note and entitled GVA Auto to receive an amount of Luminar stock.  GVA Auto currently holds approximately 18,030,728 shares of Luminar common stock (the "Luminar Shares").  Based on Luminar's recent stock prices, the Luminar Shares have a value in the hundreds of millions of dollars.

30.     The Luminar Shares are currently subject to a lockup period restricting their sale until June 1, 2021, after which time GVA Auto will receive the Luminar Shares in its account.  Prior to Odrison's/Musaev's attempt to undermine Definition Services' rights, GVA Capital's intention was to promptly make an in-kind distribution of the Luminar Shares to the GVA Auto Members based on their percentage ownership, minus the "Carried Interest" to be paid to GVA Capital.

**F.     GVA Capital Takes Steps to Prepare for Distribution of Luminar Shares to Definition Services**

31.     Up until April 8, 2021, GVA Capital took steps to prepare for distribution of Definition Services' rightful shares in Luminar pursuant to the Operating Agreement.  During this period, GVA Capital's board was composed of two directors: Odrison/Musaev and Cherkashin.  Cherkashin had been involved

since the formation of GVA Auto and served as Prosperity's and then Definition Services' principal contact at GVA Capital concerning the GVA Auto investment.

32.     In early March 2021, Cherkashin, on behalf of GVA Capital, reached out to representatives of Definition Services to discuss the planned distribution of the Luminar Shares, consistent with the terms of the Operating Agreement.   In particular, GVA Capital proposed entering into an agreement that would lay out the process for the expected distribution of the Luminar Shares, including the amounts that would be received by each of the Members and GVA Capital.   The parties agreed that GVA Auto would make the distribution promptly after the lockup restrictions were lifted on June 1, 2021.

33.     In connection with these discussions, GVA Capital sent Definition Services' representatives a draft "distribution model" that reflected Prosperity[3] receiving Luminar Shares worth hundreds of millions of dollars.   As such, GVA Capital's own model—showing how GVA Capital contemplated the distribution as of only a few weeks ago—is directly contrary to Musaev's Alleged Oral Agreement.

---

[3] Definition Services promptly reminded Cherkashin that the distribution would need to be made to Definition Services, not Prosperity.   Cherkashin subsequently acknowledged this was correct.

**G.      Musaev Alleges an Unenforceable Oral Agreement in an Effort to Steal Definition Services' Profits**

34.     Even though GVA Capital's and Definition Services' discussions concerning the distribution of the Luminar Shares were consistent with the Operating Agreement, Musaev was not satisfied with the contractually agreed upon allocation of gains from the investment.

35.     On April 8, 2021, Cherkashin sent an urgent email to Definition Services' advisors, with whom he had been discussing the distribution of the Luminar Shares, about an "Important matter."  The email indicated that Musaev claimed to have reached several years ago an oral agreement with an individual purportedly on behalf of Prosperity, whereby Prosperity would receive back its initial investment in GVA Auto but that any loss or gain on the investment would be realized by GVA Capital (the "Alleged Oral Agreement").  Cherkashin went on to state that he had "not seen any evidence, other than Mr. Musaev's account of his conversation" supporting the actual existence of the Alleged Oral Agreement.

36.     Cherkashin also raised concerns that Musaev would attempt to oust him from GVA Capital for complying with GVA Capital's obligations under the Operating Agreement.  His email stated:

> Until recently, I was confident that the transaction Mr. Musaev described could not occur without my approval. … Recently, however, I received the attached notice of an extraordinary meeting of GVA Capital's shareholders on April 13, at which a resolution to remove me as a director will be considered. … If the resolution is approved and I

am removed, then my approval will no longer be needed for the transaction Mr. Musaev has described.

## H.  Musaev's Alleged Oral Agreement is Unenforceable

37.    Cherkashin's email was shocking for several reasons.  First, the email signaled a potential complete reversal of GVA Capital's position with respect to its duties and obligations under the Operating Agreement.

38.    Second, even if Musaev's assertion of the Alleged Oral Agreement was true (which it is not), it would be unenforceable for numerous reasons.  First, the Operating Agreement is clear that "[a]ll profit and loss shall be allocated to the Capital Accounts of the Members in proportion to their Percentage Interests" and that the agreement shall not be amended except in writing.  *See* Operating Agreement §§ 4.5(b), 6.2.  Yet there is no contemporaneous written evidence supporting Musaev's Alleged Oral Agreement.  Accordingly, any such oral agreement violates the plain terms of the parties' written agreement.

39.    Furthermore, none of the individuals purportedly involved in reaching the alleged oral agreement had authority to bind the parties to it.  The individual whom Musaev identified as the representative who made the agreement on behalf of Prosperity has never had any authority to act on behalf of either Prosperity or Definition Services, let alone enter into any such agreement.  Similarly, Odrison (which is believed to be controlled by Musaev) was only one of the two directors of GVA Capital.  As explained above, the other director, Cherkashin, was unaware of

15

the Alleged Oral Agreement at the time it was struck and never approved the agreement.

40.     In response to Cherkashin's email, Definitions Services promptly advised him that it firmly disputed Musaev's Alleged Oral Agreement.  And, on April 10, 2021, Definition Services' counsel wrote to GVA Capital's purported attorney, Grayver, disputing the existence of the Alleged Oral Agreement and objecting to the attempt to remove Cherkashin.

41.     In the letter, counsel stated that Definition Services "strongly disagree[s] with the allegations concerning the purported oral agreement and oppose[s] Odrison's efforts to remove Mr. Cherkashin."  The letter further explained that the Alleged Oral Agreement was not supported by any evidence except for Odrison's/Musaev's self-serving assertions and, in any event, would be invalid and unenforceable.   Indeed, the alleged counterparty to the agreement never had authority to bind Prosperity or Definition.  Moreover, the Alleged Oral Agreement would violate the express terms of the Operating Agreement, which pursuant to its terms can only be amended in writing.

42.     Grayver, who upon information and belief replaced Cherkashin as a director of GVA Capital and may stand to profit from the Alleged Oral Agreement, never responded.

RLF1 25106582v.1

I.     **Cherkashin Disputes the Alleged Oral Agreement in Cayman Islands Court**

43.     On April 19, 2021, Cherkashin commenced an action in The Grand Court of the Cayman Islands, Financial Services Division, challenging Odrison's and Musaev's efforts to cause GVA Capital to implement the Alleged Oral Agreement and seeking the appointment of independent joint receivers for GVA Capital in order to prevent such conduct.[4]  In connection with this action, Cherkashin filed an affidavit (the "Cherkashin Affidavit") that revealed Odrison's/Musaev's plan to spirit away the Luminar Shares so that they will not be subject to collection.

44.     Cherkashin describes Musaev's scheme as follows:

> Mr. Musaev planned to arrange the transfer of the [Luminar] Shares to GVA Capital **without Definition's knowledge or consent**.  From GVA Capital, Mr. Musaev intended to return to Definition or Prosperity only the amount of Prosperity's original investment currently held by Definition (approximately US$18,500,000).  The profit on that investment … would go to Mr. Musaev or an entity under his control.  **If Definition or Prosperity disagreed with Mr. Musaev's receipt of the profit on the investment, they would have to bring legal action to recover the profit from Mr. Musaev.**

(emphasis added).  This plan would effectively render GVA Auto insolvent, as its only asset is the Luminar Shares.  It would also render GVA Capital effectively judgment proof as the entity would be unable to satisfy any judgment once the Luminar Shares are transferred to Musaev.

---

[4] *See* Writ of Summons, attached as Exhibit B hereto.

45.     Cherkashin states that he objected to Musaev's plan because "I had not seen any concrete evidence that the Alleged Agreement in fact existed."  In response to Cherkashin's objections, Musaev threatened to remove his as a director of GVA Capital and to dilute his interest in GVA Capital.  Cherkashin explains that Musaev carried out the first part of this threat by having Odrison notice the April 13, 2021 meeting of GVA Capital members.   Based on the minutes of such meeting, Cherkashin understands that Musaev was successful in removing Cherkashin from the board.

46.     Cherkashin also explained, correctly, that "[t]he Alleged Agreement appears to be *prima facie* invalid and unenforceable" and, if Mr. Musaev causes GVA Capital to adopt and implement such purported agreement "it will expose GVA Capital to significant financial and reputational damage."

47.     Significantly, Cherkashin—Musaev's longtime business partner in GVA Capital—also states that Musaev is a Russian national domiciled in the Russian Federation, and that Musaev would not be "concerned about" breaching an order made by the Cayman Islands court.  For this reason, Cherkashin requests that the Cayman Islands court enter an order appointing two independent receivers of GVA Capital, who will be authorized to assume control of GVA Capital's business and operations.

48.    The Cayman Islands court has yet to issue any rulings related to Cherkashin's filings.  Nonetheless, the additional facts revealed by the Cherkashin Affidavit highlight the baseless nature of Musaev's Alleged Oral Agreement, as well as the imminent threat posed by Odrison's/Musaev's apparently successful effort to take control of GVA Capital.  In light of these troubling facts, Definition Services has no choice but to seek temporary injunctive relief in this Court.

## COUNT I
### (Declaratory Judgment)

49.    Definition Services incorporates each allegation above as if fully set forth herein.

50.    Definition Services is entitled to a declaration that all gain on the Luminar investment shall be distributed in accordance with the Operating Agreement.

51.    Neither side of Musaev's Alleged Oral Agreement—no matter which individual he currently claims to have been his counterparty—actually had authority to bind the respective parties.  As for Prosperity and/or Definitions Services, the individual allegedly involved in discussions with Musaev never had authority to bind such entities to any agreement, let alone the outlandish agreement alleged by Musaev.  Similarly, it appears that Musaev never had authority to bind GVA Capital to the Alleged Oral Agreement without the approval of Cherkashin, which was never obtained.

19

52.     Musaev's Alleged Oral Agreement is also directly contrary to the express terms of the Operating Agreement, which provides that "[a]ll profit and loss shall be allocated to the Capital Accounts of the Members in proportion to their Percentage Interests." *See* Operating Agreement § 4.5(b).  This provision cannot be amended through an oral agreement, as (i) Section 6.2 of the Operating Agreement states that "the prior written approval of a Required Interest of Members" is required for "any amendment" to the Operating Agreement and (ii) Section 11.1 of the Operating Agreement similarly provides that the Operating Agreement may not be modified or amended "without the written consent of the Manager and the Members holding a Required Interest."  Yet there is no contemporaneous evidence supporting Musaev's Alleged Oral Agreement, let alone written consent of the parties.

53.     Musaev's Alleged Oral Agreement is also commercially unreasonable and facially absurd.  Musaev's allegations are nothing more than a brash attempt by an investment manager to seize his investor's profits for himself.

54.     Accordingly, Definition Services seeks a declaration that the Alleged Oral Agreement is non-existent and unenforceable, and that all gains on Definition Services' investments (including the Luminar investment) must be distributed pursuant to the express terms of the parties' written agreements.

## COUNT II
### (Anticipatory Repudiation and
### Entitlement to Remove GVA Capital as Manager)

55.    Definition Services incorporates each allegation above as if fully set forth herein.

56.    Through the removal of Cherkashin from the GVA Capital board, Odrison/Musaev seized control of the entity and has caused GVA Capital to take positions that are directly contrary to the express terms of the Operating Agreement, including a refusal to distribute the gains on the Luminar investment in accordance with Sections 4.5 and 5.2, and instead insist that such gains should be distributed directly to Musaev or his affiliates.  This constitutes an anticipatory repudiation and breach of material obligations under the Operating Agreement.

57.    As a result of GVA Capital's anticipatory repudiation and material breach, Definition Services is entitled to an order of specific performance, requiring that GVA Auto promptly distribute the Luminar shares once they become available in accordance with the provisions of Sections 5.2 and 5.3 of the Operating Agreement.

58.    Definition Services is further entitled to an award of damages for the injuries it has suffered and will continue to suffer as a result of GVA Capital's wrongful conduct, including damages as the result of any delay in receiving the Luminar shares.

21

59.     In addition, Definition Services (as holder of a 95% interest in GVA Auto) seeks a declaration that it is entitled to remove GVA Capital as Manager pursuant to Section 9.2 of the Operating Agreement.  Once removed, GVA Capital will no longer be entitled to any portion of GVA Auto's distributions under Sections 5.2(b) and 9.3(a) of the Operating Agreement.

## COUNT III
### (Breach of Fiduciary Duty)

60.     Definition Services incorporates each allegation above as if fully set forth herein.

61.     As the Manager of the GVA Auto, GVA Capital owes the company and its members, including Definition Services, fiduciary duties of care and loyalty. GVA Capital has blatantly breached its fiduciary duties by attempting to usurp Definition Services' investment gains, which total hundreds of millions of dollars, for itself and its new controller, Musaev.  This brazen misconduct is a breach of virtually every principle of fiduciary responsibility under Delaware law.

62.     As a result of GVA Capital's actions, Definition Services has been and will continue to be damaged.

## PRAYER FOR RELIEF

WHEREFORE, Definition Services demands judgment in its favor and against GVA Capital as follows:

1.      Temporarily, preliminarily and permanently enjoining GVA Capital, and/or its affiliates, from undertaking any distribution or transactions involving the Luminar Shares, or any other investment related to Definition Services, until the Court can determine the validity of the claims alleged herein;

2.      Declaring that the Alleged Oral Agreement is nonexistent and unenforceable;

3.      Declaring, and entering an order of specific performance requiring, that all gains on Definition Services' investments, including the Luminar investment through GVA Auto, shall be allocated and promptly distributed to Definition Services pursuant to the express terms of the parties' written agreements, including the Operating Agreement;

4.      Declaring that GVA Capital has anticipatorily breached material obligations under the Operating Agreement and, as a result, Definition Services has the ability to remove GVA Capital as Manager pursuant to Section 9.2 thereof;

5.      Declaring that GVA Capital has breached its fiduciary duties to Definition Services;

6.      Awarding damages to Definition Services;

7.      Awarding pre- and post-judgment interest to Definition Services;

8.      Awarding Definition Services its costs and reasonable attorneys' fees incurred in connection with this action; and

9.     Granting such other and further relief as the Court may deem just and

proper.

/s/ Brock E. Czeschin
Brock E. Czeschin (#3938)
Christian Roberts (#6694)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
*Attorneys for Plaintiff Definition Services Inc.*

Dated: April 26, 2021

EFiled: Apr 26 2021 04:06PM EDT
Transaction ID 66548167
Case No. 2021-0357-

## UNSWORN VERIFICATION PURSUANT TO 10 *Del. C.* § 3927

I, Markus Linder, a director of Definition Services, Inc. ("Definition Services"), have been authorized by Definition Services to make this verification on its behalf. I hereby verify that I have read the foregoing Verified Complaint Seeking Temporary Restraining Order and Other Relief and that the facts recited therein are true and correct insofar as they concern the acts and deeds of Definition Services, and are believed by me to be true insofar as they concern the acts and deeds of any other person or entity.

Pursuant to 10 *Del. C.* § 3927, and the Delaware Supreme Court's Administrative Order No. 3, dated March 22, 2020, I declare under penalty of perjury under the laws of Delaware that the foregoing is true and correct.

Executed on the 26th day of April, 2021

Markus Linder_____(Printed Name)

_____Digitally signed by Markus Linder
Date: 2021.04.26 12:06:56 +02'00'    (Signature)

EFiled:  Apr 26 2021 04:06PM EDT
Transaction ID 66548167
Case No. 2021-0357-

# EXHIBIT A

**OPERATING AGREEMENT**

**OF**

**GVA AUTO, LLC**

**A DELAWARE LIMITED LIABILITY COMPANY**

This Operating Agreement of GVA Auto, LLC (the "Company") is entered into as of June 29, 2017 (the "Effective Date") by and among the Members (as defined below).

1.      **Definitions**.  The following terms will have the following meanings:

"Accredited Investor" has the meaning assigned to such term under Rule 501 of Regulation D, promulgated under the Securities Act.

"Act" is the Delaware Limited Liability Company Act.

"Affiliate" means (i) a Person who is a member, director, officer, general partner or employee of the Person being considered; or (ii) a Person directly or indirectly controlling or controlled by or under direct or indirect common control with the Person being considered.

"Agreement" means this Operating Agreement, as amended.

"Available Cash" means, at a particular time, the cash and cash equivalents held by the Company less such cash reserves as the Manager reasonably determines are necessary to pay on a timely basis costs and expenses of any Proceeding or Indemnification Obligation, taking into account the anticipated revenues of the Company.

"Business" is defined in Section 2.3.

"Business Day" is any day on which all major banks in the State of California are open for business.

"Capital Accounts" is defined in Section 4.6(a).

"Capital Contributions" means for any Member at the particular time in question the aggregate of the dollar amounts of any cash and cash equivalents contributed by such Member to the capital of the Company, plus the value, as determined by the Manager, of any property contributed by such Member to the capital of the Company.

"Carrying Value" means (a) with respect to property contributed to the Company by a Member, the value of such property at the time of contribution as determined by the Manager and (b) with respect to any other property held by the Company, the adjusted basis of such property for federal income tax purposes at the time it is acquired by the Company, in the case of each of the foregoing (i) as reduced (but not below zero) by all subsequent depreciation, cost recovery, depletion and amortization deductions with respect to such property as taken into account in determining profit and loss and (ii) as adjusted from time to time in accordance with Section 10.2(b) and Treasury Regulation § 1.704 1(b)(2)(iv)(m), and to reflect changes, additions or other adjustments to the Carrying Value for dispositions, acquisitions or improvements of Company properties, as deemed appropriate by the Manager.

"Code" is the Internal Revenue Code of 1986, as amended.

"Company" is defined in the introductory paragraph.

"Confidential Matter" is defined in Section 13.7.

"Effective Date" is defined in the introductory paragraph.

"Event of Bankruptcy" is any of the following:

(a)     any assignment by such party for the benefit of creditors;

(b)     the filing by such party of a voluntary petition in bankruptcy;

(c)     the subjection of such party to the entry of an order for relief or, following a hearing and judicial or other authoritative determination thereof, to a declaration of insolvency in any federal or state bankruptcy or insolvency proceeding;

(d)     the filing of a voluntary petition or answer by such party seeking for such party, a reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any law;

(e)     the filing of an answer or other pleading by such party admitting all of or failing to contest at least one of the material allegations of an involuntary petition filed against such party in a proceeding of the type described in (b) – (d) above;

(f)     such party's pursuit of, consent to, or acquiescence in the appointment of a trustee, receiver, or liquidator of such party of all or any substantial part of such party's properties if such pursuit, consent or acquiescence is demonstrably evidenced by the actions or omissions of such party; or

(g)     the expiration of 120 days after the date of the commencement of a proceeding against such party seeking reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any law if the proceeding has not been previously dismissed, or the expiration of 90 days after the date of the appointment, without such party's consent or acquiescence, of a trustee, receiver, or liquidator of such party or of all or any substantial part of such party's properties if the appointment has not previously been vacated or stayed, or the expiration of 90 days after the date of expiration of a stay, if the appointment has not previously been vacated.

"Family Members" include:

(a)     the spouse, parents, grandparents, children, grandchildren, nieces, nephews, and siblings of

(i)     a Member who is an individual,

(ii)     the beneficiary of a Member that is a trust and such beneficiary has a right, together with other Family Members of such beneficiary, to receive a majority of the trust assets, or

(iii)     the sole holder of equity or other controlling interest in a Member if such Member is a business entity;

(b)     a trust for the benefit of

(i)     the transferring Member,

(ii)     one or more Persons named in part (a) of this definition.

        (c)      a business entity in which a Member is the sole holder of equity or otherwise controls such entity.

"Family Transfer" is defined in Section 8.2.

"Follow-On Investment Contribution Amount" is defined in Section 4.3(a).

"Follow-On Investment Contribution Notice" is defined in Section 4.3(a).

"Follow-On Investments" is defined in Section 4.3.

"Governmental Authority" is any nation or government, any state or other political subdivision thereof and any other Person exercising executive, legislative, judicial, regulatory or administrative functions of or pertaining to government.

"Indemnification Obligation" means any indemnification obligation and any other indemnity contribution or reimbursement obligations of the Company with respect to any person, whether payable in connection with a Proceeding involving the Company or otherwise.

"Indemnified Person" means the Manager and its members, managers, officers, employees, directors and other agents. The Manager may, at its sole discretion, designate any Member, employee, representative, or other Person as an additional Indemnified Person.

"Independent" of a Person means: (a) having no direct or indirect financial interest in that Person; and (b) having no other involvement with that Person that would create a conflict of interest.

"Initial Capital Contribution" is defined in Section 4.1.

"Initial Closing" means the date on which the first Members are admitted to the Company.

"Interest" or "Membership Interest" means, with respect to any Member, (a) that Member's status as a Member, (b) that Member's Capital Account and share of the Profits, Losses and other items of income, gain, loss, deduction and credits of, and the right to receive distributions (liquidating or otherwise) from, the Company under the terms of this Agreement, (c) all other rights, benefits, and privileges enjoyed by, and obligations of, such Member (under the Act or this Agreement) in its capacity as a Member, including that Member's rights to vote, consent and approve those matters described in this Agreement, and (d) all obligations, duties and liabilities imposed on that Member under the Act or this Agreement in its capacity as a Member.

"Investment" is defined in Section 2.3.

"Investment Company Act" is the Investment Company Act of 1940, as amended.

"Manager" means GVA Capital Ltd., a Cayman Islands exempt limited company.

"Members" are the Persons admitted as Members pursuant to Section 3.1. The initial Members are listed on Schedule A hereto.

"Misconduct" shall have occurred if the Manager is found by a court of competent jurisdiction of first impression to have (a) committed (or enters a plea of nolo contendere to having committed) embezzlement, fraud or any other act involving material improper personal benefit against the Company or its assets, (b) willfully and materially breached this Agreement, which breach remains uncured as of the date of such finding, in a manner which had a material adverse effect on the Company, as found by a court of competent jurisdiction of first impression or (c) knowingly violated any law in a manner which

had, or could have had, a material adverse effect on the Company, as found by a court of competent jurisdiction of first impression.

"Net Investment" means, as of any date the total Capital Contributions made by the Member reduced by the total amount previously distributed to that Member pursuant to Section 5.2 and Section 10.2; and which includes such Member's portion of the Setup Fee or any other expenses paid by such Member on behalf of the Company; provided that such expenses have been approved by the Manager.

"Percentage Interests" means, for each Member, a percentage equal to such Member's total Capital Contributions in the Company divided by the total Capital Contributions of all Members. The Percentage Interests of the Members shall be adjusted from time to time as provided in this Agreement.

"Person" is an individual, partnership, limited partnership, limited liability partnership, limited liability company, corporation, trust or unincorporated organization or other entity, and a government or agency or political subdivision.

"Portfolio Company" means Luminar Technologies, Inc.

"Proceeding" means any action, claim, suit, investigation or arbitration or proceeding involving the Company's activities, whether at law or in equity, and whether by or before any court, arbitrator, governmental body or other administrative, regulatory or other agency or commission.

"Profit or Loss" means the income or loss of the Company as determined under the capital accounting rules of Treasury Regulation § 1.704 1(b)(2)(iv) for purposes of adjusting the Capital Accounts of Members, including, without limitation, the provisions of paragraphs 1.704 1(b)(2)(iv)(g) and 1.704 1(b)(4) of those regulations relating to the computation of items of income, gain, deduction and loss.

"Recapture Income" means any gain recognized by the Company (but computed without regard to any adjustment required by Sections 734 and 743 of the Code) upon the disposition of any property or asset of the Company that does not constitute capital gain for federal income tax purposes because such gain represents the recapture of deductions previously taken with respect to such property or assets.

"Required Interest" means Members holding, individually or in the aggregate, more than fifty percent (50%) of the Percentage Interests.

"Representative" is defined in Section 10.2.

"Securities" or "Security" means securities of every kind and nature and rights and options, rights or warrants with respect thereto, including capital stock, notes, bonds, debentures, instruments or evidences of indebtedness, trust receipts and other business interests of every type, including interests in partnerships, joint ventures, proprietorships and other business entities.

"Securities Act" is the Securities Act of 1933, as amended.

"Securities Exchange Act" is the Securities Exchange Act of 1934, as amended.

"Setup Fee" is defined in Section 6.9.

"Substitute Member" is any Person admitted to the Company as a substitute Member pursuant to Section 8.3.

"Transfer, Transferring" means a sale, assignment, transfer, exchange, mortgage, pledge, or grant of a security interest, or other disposition or encumbrance, or the act of making such a sale, assignment,

transfer, exchange, mortgage, pledge, or grant of a security interest, or other disposition or encumbrance.

"Treasury Regulations" means regulations issued by the Department of Treasury under the Code. Any reference herein to a specific section or sections of the Treasury Regulations shall be deemed to include a reference to any corresponding provision of future regulations under the Code.

2.     **Organization.**

2.1     Formation. The parties to this Agreement ratify the filing of the Certificate of Formation of the Company that were filed with the Delaware Secretary of State as of July 18, 2016 pursuant to the provisions of the Act and in accordance with the further terms and provisions of this Agreement.

2.2     Name. The name of the Company is GVA AUTO, LLC or such other name or names as may be selected by the Manager.

2.3     Purpose. The business of the Company shall be to (i) make, hold and dispose of direct or indirect investments in Luminar Technologies, Inc., a Delaware corporation (the "Investment"), and (ii) engage in any and all activities related or incidental thereto (together, the "Business").

2.4     Places of Business; Registered Office and Agent. The address of the registered office of the Company in the State of Delaware is Corporation Trust Center, 1201 Orange Street, Suite 600, Wilmington, Delaware 19899; and the name of the registered agent of the Company at such address is Incorp Services Inc. Company's principal place of business will be located at the location determined by the Manager from time to time on notice to the other Members.

2.5     Fiscal Year. The fiscal year of the Company will end on the 31st day of December in each year. The Manager will have authority to change the ending date of the fiscal year to any other date required or allowed under the Code if the Manager determines that such change is necessary or appropriate. The Manager will promptly give notice of any such change to the Members.

3.     **Members.**

3.1     Members. The Company will consist of those Members who are a party to this Agreement and such substituted Members as may be admitted to the Company pursuant to Section 8. The Manager shall have the right to admit Members, and to receive additional Capital Contributions from existing Members with the approval of Required Interest.

3.2     Interests. Each Member (other than the Manager) will have a Membership Interest in the Company that is proportional to that Member's Percentage Interest then in effect.

3.3     Liability of Members. The liability of the Members will be limited to the fullest extent possible under the Act. No Member other than the Manager shall take part in the control, management, direction or operation of the affairs of the Company, unless otherwise expressly provided in this Agreement, or specifically required under the Act, or shall have any power to bind the Company in their capacity as Members.

3.4     Company Property. No real or other property of the Company will be deemed to be owned by any Member individually, but will be owned by and title will be vested solely in the Company.

3.5     Meetings. Meetings of the Members for any purpose may be called only by the Manager or a Required Interest of Members. The Manager shall designate the place for any meeting and the Manager or Members calling the meeting shall give notice thereof not less than 5 calendar days' prior to the meeting date. A Required Interest of Members, represented in person or by proxy, shall be necessary

to constitute a quorum at meetings of the Members.

   3.6 <u>Action by Written Consent</u>. Any action of the Members may be taken without a meeting if evidenced by a written consent describing the action taken and signed by the requisite number of Members required to approve such action. Member action taken under this Section 3.6 shall be effective when the required number of Members have signed the consent, or such other effective date specified in such consent.

4.  **Capital Contributions and Capital Accounts.**

   4.1 <u>Capital Contributions; Investments</u>. The Members are each making an initial Capital Contribution in the amount shown on the Member's Subscription Agreement (the "<u>Initial Capital Contribution</u>" for each such Member). No Member will be required or obligated to make any additional Capital Contributions other than as provided in Section 4.3.

   4.2 <u>Expenses</u>. The Manager shall be responsible for the payment of all Administrative Expenses.

   4.3 <u>Follow-On Investments; Admission of New Members</u>. Members shall have the right, but not the obligation, to make additional Capital Contributions to enable the Company to exercise its pre-emptive rights with respect to any new issuances of Securities by Portfolio Company or its right of first refusal rights with respect to the sale of any Securities of the Portfolio Company by other stockholders of the Portfolio Company ("<u>Follow-On Investments</u>").

    a. The Manager shall deliver to the Members a written notice (a "<u>Follow-On Investment Contribution Notice</u>") setting forth a reasonably detailed description of the terms and conditions of the Follow-On Investment, including the amount thereof (the "<u>Follow-On Investment Contribution Amount</u>") and the Members' pro rata shares of the Follow-On Investment Contribution Amount which shall be based upon their then respective Percentage Interests

    b. If within 7 days after delivery of a Follow-On Investment Contribution Notice, a Member does not subscribe for all of its pro rata share of the Follow-On Investment Contribution Amount, the Manager may elect to take any of the following actions (or any combination thereof): (i) subscribe for all or part of the unsubscribed amount itself or (ii) and solicit, obtain and accept subscriptions from and third parties, for the unsubscribed portion of the Follow-On Investment Contribution Amount on the terms set forth in the Follow-On Investment Contribution Notice.

   4.4 <u>No Third Party Right to Enforce</u>. No Person other than a Member shall have the right to enforce any obligation of a Member to contribute capital hereunder and specifically no lender or other third party shall have any such rights.

   4.5 <u>Capital Accounts; Allocation of Profits or Losses</u>.

    (a) A capital account for each Member shall be established and maintained in accordance with Section 704(b) of the Internal Revenue Code of 1986, as amended (the "<u>Code</u>"), and the regulations promulgated thereunder ("<u>Capital Accounts</u>"). The Company's net profit, net loss and items thereof shall be allocated to the capital accounts of the Members on an annual basis, at the end of each calendar year, in the manner required by Code Section 704(b) as determined by the Manager and in accordance with this Agreement.

    (b) All profit and loss shall be allocated to the Capital Accounts of the Members in proportion to their Percentage Interests.

(c)     If additional Members are admitted to the Company subsequent to the formation of the Company, then allocations of profit and loss (including, without limitation Company expenses) attributable to periods subsequent to the formation of the Company shall be adjusted by the Manager as necessary to, as quickly as possible, cause the capital account balances of the Members to reflect the same amounts that they would have reflected if all Members had been admitted to the Company and made all of their Capital Commitments at the same time at the formation of the Company and had received allocations of profit and loss in accordance with Sections 4.6(a) and 4.6(b), all as the Manager may in its discretion determine to be equitable.

5.     **Distributions.**

5.1     No Right to Withdraw. No Member will have the right to withdraw or demand a distribution from the Company.

5.2     Ordinary Distributions.  Subject to the limitations of the Act and this Agreement, the Manager shall make prompt distributions of Available Cash (and in any event within 30 days after receipt of proceeds from the Portfolio Company) resulting from receipts attributable to, or proceeds from the disposition of, a Portfolio Company to the Members as follows:

(a)     First, 100% to the Members who have Net Investment amounts, in proportion to their relative amounts of Net Investment until the Net Investment of each Member has been reduced to zero;

(b)     Thereafter, (i) 90% to the Members pro rata to their Percentage Interest and (ii) 10% to the Manager (the "Carried Interest").

5.3     Distributions in Kind. The Manager may, in its sole discretion, distribute assets in kind in the priority set forth in Section 5.2; provided that for purposes of this Section 5.3, a distribution of an asset or an undivided interest in an asset in-kind to a Member shall be treated as if the asset had been sold for its fair market value, any gain or loss (determined with respect to its Carrying Value) had been allocated pursuant to the applicable provisions of Section 4.6, and an amount equal to the fair market value of such asset or undivided interest had been distributed under the applicable provisions of this Section 5.

5.4     Withholding. Notwithstanding anything else contained in this Agreement, the Manager may, in its reasonable discretion, withhold from any distribution of cash or property in-kind to any Member pursuant to this Agreement, the following:

(a)     as necessary or appropriate to cause the Company to comply with any foreign or federal, state or local withholding requirement with respect to any allocation, payment or distribution by the Company to any Member or other Person.

(b)     any amounts due from such Member to the Company or the Manager or attributable to such Member pursuant to this Agreement to the extent not otherwise paid (including, without limitation, such Member's share of expenses relating to any Proceedings and Indemnification Obligations)

5.5     Final Distribution. The final distributions following dissolution of the Company will be made in accordance with the provisions of Section 10.

6.     **Management.**

6.1     Management by the Manager. The Manager will have full responsibility for and charge of the overall management, control and administration of the Company in all respects. All determinations

made and actions taken by the Manager pursuant to this Agreement will be binding on and conclusive as to all of the Members and will not be subject to question or review by any Member in any suit or proceeding except to the extent that any such suit or proceeding involves an alleged violation of the standards set forth in the Act. To the fullest extent permitted by law, the Members hereby consent to the exercise by the Manager of the powers conferred on it by this Agreement. The Manager may delegate authority to its Affiliates and others. The Manager will have all specific rights and powers required or appropriate to manage the Company, including, without limitation, the power and authority to do the following (except to the extent that any of the following powers are specifically limited or restricted by any other provision of this Agreement):

        (a)     originate the Company's investments in Portfolio Company;

        (b)     monitor and evaluate the Company's investments in Portfolio Company and otherwise represent the Company's interests with respect to Portfolio Company in all respects;

        (c)     exercise the voting rights under all Securities of Portfolio Company owned by the Company;

        (d)     administer the overall operation of the Company;

        (e)     initiate, participate in and settle judicial, arbitration, administrative or similar proceedings to protect the assets of the Company, enforce the Company's rights or otherwise defend the interests of the Company;

        (f)     sell or otherwise dispose of all or substantially all of the assets of the Company, including all Securities of Portfolio Company;

        (g)     retain (as consultants and not employees) (and cause the Company to pay all fees and expenses of such Persons) Persons to render legal and accounting services to the Company as may be necessary for the efficient operations of the Company;

        (h)     make, or cause to be made, payment by the Company any and all expenses that may be necessary for the operation, administration or management of the Company;

        (i)     sue, complain and defend, in the name of and on behalf of the Company, and to settle, adjust, submit to arbitration and compromise all actions, suits, accounts, reckonings, claims and demands whatsoever now or hereafter pending between the Company and any other party (other than a Member); and

        (j)     do any other acts that the Manager deems advisable to further the purposes of the Company and that are not prohibited by this Agreement or applicable law.

      6.2    <u>Certain Actions by the Manager</u>. The following actions shall require the prior written approval of a Required Interest of Members:

        (a)     any merger, reorganization, consolidation, dissolution or similar restructuring of the Company;

        (b)     a change to the Business of the Company;

        (c)     any amendment to this Agreement;

        (d)     an investment of Company funds in any investment except Portfolio Company;

(e)     any other decision or taking any action with respect to the Company that specifically requires the approval of the Members pursuant to this Agreement.

6.3     Intentionally Left Blank.

6.4     No Guarantee by Manager. The Manager does not guarantee the return of the Members' Capital Contributions or a profit for the Members from the operations of the Company.

6.5     Reliance by Third Parties. No third party dealing with the Company shall be required to ascertain whether the Manager is acting in accordance with the provisions of this Agreement. All third parties may rely on a document executed by the Manager as binding on the Company.

6.6     Indemnity of the Manager, Employees, Other Agents and Other Indemnified Persons.

(a)     Indemnification – Generally.  An Indemnified Person will receive liability protection to the fullest extent provided by the Act. Moreover, an Indemnified Person will not be personally liable for any arbitration award, decree, or judgment or other proceeding for any debt, obligation, or liability of the Company, whether that liability or obligation arises in contract, tort, or otherwise.

(b)     Indemnification – Specifically.  Subject to the limitations of the Act:

(i)     An Indemnified Person carrying out his, her, or its duties under this Agreement will not be liable to the Company nor to any Member for any acts, omissions, or errors of judgment the Indemnified Person believed were taken in good faith and within the scope of authority conferred by this Agreement.

(ii)     An Indemnified Person is not liable to the Company or any Member for any acts, omissions, or errors of judgment of any agent appointed by the Indemnified Person to perform any of the duties of the Indemnified Person under this Agreement.

(iii)     An Indemnified Person will not be liable to the Company or any Member for the Indemnified Person's good faith reliance on (A) the books and records of the Company or (B) information, opinions, reports or statements provided to the Company by any Person as to matters such Indemnified Person reasonably believes are within such other Person's professional or expert competence (e.g., an economic report published by an economist or an accounting report created by an accountant).

(c)     Limitation.  In all cases, indemnification will be provided up to the extent of the net, liquid assets of the Company and no Member will have any personal liability for such expenses.

(d)     Advances.  Expenses (including legal fees and expenses) incurred by an Indemnified Person in defending any claim, demand, action, suit or proceeding subject to sub-Section (a) above will be paid by the Company in advance of the final disposition of such claim, demand, action, suit or proceeding upon receipt of an undertaking (which need not be secured) by or on behalf of the Indemnified Person to repay such amount if it will ultimately be finally determined by a court of competent jurisdiction and not subject to appeal, that the Indemnified Person is not entitled to be indemnified by the Company as authorized hereunder.

6.7     Investments and Other Actions.

(a)     Authority.  The Manager is hereby authorized to execute or cause to be executed all instruments, certificates, notices and documents, and to do or cause to be done all such filing, recording, publishing and other acts as may be deemed by the Manager to be necessary or appropriate to comply with all applicable requirements for the formation or operation or, when appropriate, termination of a limited liability company in the State of Delaware and in all other jurisdictions where the Company

does or will desire to conduct its business. Specifically, the Manager is hereby authorized to execute or cause to be executed all of the documents necessary to make investments in Portfolio Company.

(b)     Further Assurances. If requested by the Manager, the Members will immediately execute all certificates and other documents consistent with the terms of this Agreement necessary for the Manager to accomplish all filing, recording, publishing and other acts as may be appropriate to comply with all requirements for the lawful organization and existence of the Company as a limited liability company, in all jurisdictions where the Company proposes to operate, and all other filings required to be made by the Company.

6.8     Other Business Opportunities; Affiliate Transactions; Conflicts.

(a)     Each Member acknowledges that the Manager, the other Members and their respective Affiliates are or may be active in other business activities and shall be free to independently engage, invest or participate for their own account in, and receive the full benefits from, any business or activity, without consulting with the Company or the Members and without offering any right to participate therein to the Company or any other Member.

(b)     The Manager may, on behalf of the Company, enter into contracts, agreements, undertakings and transactions with Members, or with Persons, firms or corporations having business, financial or other relationships with Members, provided that such transactions with such Persons and entities are on terms no less favorable to the Company than are generally available to unrelated third parties in comparable transactions.

(c)     It is specifically contemplated by the Members that the Manager and its Affiliates may become actively involved in assisting Portfolio Company through advice, counsel, and other means. Unless otherwise agreed by the Members, which consent shall not be unreasonably withheld, any compensation received by the Manager or its Affiliates in connection with the foregoing activities shall be for the account of the Company and shall be deemed income and asset of the Company. The Manager and its Affiliates shall promptly disclose to the Members any interest they may have in the Portfolio Company or any dealings with the Portfolio Company for which they have received any compensation..

6.9     Setup Fee. On the Effective Date or as soon as commercially reasonable thereafter, the Company shall pay to the Manager a one-time setup fee ("Setup Fee"). The Setup Fee attributable to each Member shall equal 1.0% (one percent) of the Capital Contribution of such Member attributable to the investment by the Company in the Portfolio Company. By way of example, the Capital Contribution of NEW MEMBER allocable to the investment in the Portfolio Company is $1,500,000 and the Setup Fee is $15,000.

6.10     Operating Expenses. The Manager shall be solely responsible for all of the operating expenses of the Company and shall not receive any compensation from the Company other than the Setup Fee and the Carried Interest.

**7.     Books of Account, Records and Reports.**

7.1     Maintenance of Books and Records. The Company will maintain books and records in such manner as is utilized in preparing the Company's federal information tax return in compliance with Section 6031 of the Code, and such other records as may be required in connection with the preparation and filing of the Company's required federal, state and local income tax returns or other tax returns or reports of foreign jurisdictions, including, without limitation, the records reflecting the Capital Accounts and adjustments specified in Section 4. All such books and records will at all times be made available at the principal office of the Company and will be open to the reasonable inspection and examination of the Members or their duly authorized representatives during normal business hours.

7.2     Federal, State and Local Income Tax Information. The Manager will use its commercially reasonable efforts to cause the Company to transmit to each Person who was a Member at any time during the fiscal year then ended (including any permitted assignee of a Member who so requests in writing) an Internal Revenue Service Schedule K-1 and such Company tax information as is legally required for the preparation by such Person of federal, state and local tax returns in accordance with any applicable laws, rules and regulations then prevailing. The Manager will use its discretion to obtain extensions for filing as needed. Each Member understands and agrees that the tax returns for the Company may be delayed so that it may be necessary for each Member to obtain extensions for the filing of their own tax returns. Such information will include a statement showing such Person's share of distributions, income, gain, loss, deductions and credits and other relevant fiscal items of the Company for such fiscal year. Promptly upon the request of any Member, the Manager will cause the Company to furnish such Member all United States federal, state and local income tax returns or information returns, if any, which the Company is required to file.

7.3     Financial Statements and Other Reports. To the extent the Company has access thereto and permission to distribute, the Manager will distribute to each Person who is a Member on the date of dispatch, financial statements of Portfolio Company.

**8.   Transfer of Interests; Substitute Members.**

8.1 Withdrawals, Transfers.

(a)     No Member shall have any right to voluntarily withdraw from the Company.

(b)     No Member will Transfer the Member's Interest or any rights in the Interest, or permit any legal or beneficial interest in such Member itself to be Transferred, unless such Transfer is: (i) a Family Transfer carried out in accordance with Section 8.2 of this Agreement, or (ii) approved by the Manager in the Manager's sole and absolute discretion. All attempted Transfers in violation of the terms of this Agreement will be void *ab initio*.

8.2     Family Transfer. Notwithstanding anything to the contrary contained in this Agreement, but subject to the considerations contemplated in Section 8.1, a Member, the estate of a deceased Member or attorney-in-fact or guardian of a mentally incompetent Member, may Transfer any or all of the Member's Interest to one or more Family Members of such Member (a "Family Transfer") provided that such Family Member is an Accredited Investor; however, such Family Member will not be admitted as a Member for purposes of political or voting power unless and until such Person is approved by the Manager and has executed and delivered an addendum to this Agreement in accordance with Section 8.3. In the event any such successor in interest is not approved as a Member or does not execute and deliver such addendum to this Agreement, such successor will only be entitled to the economic rights attributable to the Transferred interest as permitted hereunder.

8.3     Execution of this Agreement by Transferee. No assignee of all or any part of any Interest of a Member in the Company will be admitted to the Company as a substitute member (a "Substitute Member") unless and until:

(a)     the Manager, in its sole and absolute discretion will have duly approved such admission,

(b)     the assignee has executed a counterpart of this Agreement (as modified or amended) and such other instruments as the Manager may reasonably deem necessary or appropriate to confirm the undertaking of the assignee to be bound by all the terms and provisions of this Agreement; and

(c)     the assignee has undertaken in writing to pay all expenses incurred by the

Company in connection with such assignment and substitution.

Unless and until an assignee of Interests in the Company becomes a Substitute Member, such assignee will not be entitled to exercise any vote, consent or any other right or entitlement with respect to such Interests.

**9. Resignation and Removal of the Manager.**

9.1     Substitution of Manager. Without the consent of the Members, the Manager may substitute an Affiliate as a successor Manager. Upon the substitution of a successor Manager under this Section 9.1, the successor will succeed to all of the rights and obligations of the Manager and the prior Manager will be deemed to have withdrawn as the Manager. Except as required by applicable law, changes in the members, managers, directors, officers, employees or agents of the Manager will not require the consent of the Members and will not cause the dissolution of the Company.

9.2     Removal or Cessation of Manager. The Manager will cease to be the Manager of the Company: (i) if the Manager resigns or is dissolved; (ii) if the Manager becomes the subject party in an Event of Bankruptcy; (iii) upon the vote of a Required Interest of Members in the event of Misconduct by the Manager.

9.3     Successor Manager.

(a)     General. Upon the removal or resignation of the Manager under Section 9.2, the Members will appoint a new Manager with each Member having the number of votes equal to the proportion of Interests held by such Member. The new Manager will be the Person which receives the approval of Members holding a Required Interest. Any successor Manager appointed by the Members to replace a Manager pursuant to this Section 9.3 will, beginning on the effective date of such appointment, have the same rights and obligations under this Agreement as the replaced Manager would have had subsequent to such date if the replaced Manager had continued to act as Manager

(b)     Timing. The designation of such Person as a successor Manager will occur, and for all purposes will be deemed to have occurred, on the effective date of the cessation of the prior Manager.

**10. Duration and Termination of the Company.**

10.1     Term. The existence of the Company will be deemed to have commenced on the date on which the Certificate of Formation were filed with the Delaware Secretary of State and will continue until terminated as follows:

10.1.1   The written determination of the Manager;

10.1.2   The sale of all or substantially all of the assets of the Company; or

10.1.3   one year after the initial public offering by the Portfolio Company.

10.2 Winding-Up. At the termination, the Company will be dissolved and wound-up. In connection with the dissolution and winding-up of the Company, the Manager or, if it votes to appoint a liquidator or other representative (or if the Manager has been removed under Section 9.2 and not timely replaced under Section 9.3, a liquidator or other representative selected by the Members) (the "Representative"), will proceed with the sale or liquidation of all of the assets of the Company (including, to the extent feasible, the conversion to cash or cash equivalents of its assets) and will apply and distribute the proceeds of such sale or liquidation in the following order of priority, unless otherwise required by mandatory provisions of applicable law:

(a)     first, to pay (or make provision for payment of) all expenses of the liquidation in satisfaction of all obligations of the Company for such expenses of liquidation;

(b)     second, to pay (or to make provision for the payment of) all creditors of the Company (including Members who are creditors of the Company), in the order of priority provided by law or otherwise, in satisfaction of all debts, liabilities or obligations of the Company due such creditors and of such expenses of liquidation;

(c)     third, to the establishment of any reserve which the Manager or the Representative may deem reasonably necessary for any contingent or unforeseen liabilities or obligations of the Company (such reserve may be paid over by the Manager or the Representative to an escrow agent acceptable to the Manager or the Representative, to be held for disbursement in payment of any of the aforementioned liabilities and, at the end of such period as will be deemed advisable by the Manager or the Representative, for distribution of the balance in the manner provided in this Section 10.2);

(d)     fourth, after the payment (or the provision for payment) of all debts, liabilities and obligations of the Company in accordance with clauses (a) and (b) above and the establishment of the reserve required under clause (c) above, to the Members in an amount equal to their positive Capital Account balances; and

(e)     fifth, in accordance with Section 5.2.

10.3     Distributions in Cash or in Kind. Upon dissolution, the Manager or the Representative may at its discretion hire independent appraisers to appraise the fair market value of Company assets not sold or otherwise disposed of and allocate any unrealized gain or loss determined by such appraisal to the Members' respective Capital Accounts as though the properties in question had been sold on the date of distribution and, after giving effect to any such adjustment, distribute said assets in the manner set forth in Section 10.2.

10.4     Time for Liquidation. A reasonable amount of time will be allowed for the orderly liquidation of the assets of the Company and the discharge of liabilities to creditors so as to enable the Manager or the Representative to minimize the losses attendant upon such liquidation.

10.5     Termination. Upon compliance with the foregoing distribution plan, the Manager or the Representative will execute, acknowledge and cause to be filed with the Secretary of State of the State of Delaware Certificate of Dissolution (or other appropriate document) of the Company. The provisions of this Agreement will remain in full force and effect during the period of winding up and until the filing of such Certificate of Dissolution (or other appropriate document) of the Company with the Secretary of State of the State of Delaware.

10.6     The costs and expenses for terminating, dissolving and winding up the Company shall be payable by the Members.

**11. Amendments.**

11.1     Amendments by Members. This Agreement may not be modified or amended without the written consent of the Manager and the Members holding a Required Interest. The admittance of new Members in accordance with Section 4.3 shall not be deemed an amendment or modification of this Agreement.

**12.     Investment/Operations Covenants.**

12.1     The Company shall use reasonable best efforts not to engage in any activities which

could cause the Company to be engaged in a trade or business any income of which would be treated by any foreign Member (or any foreign partner or member of a Member) as income effectively connected with a United States trade or business under sections 871(a) or 881(a) of the Code.

      12.2    The Company will not invest in the securities of any portfolio company if the ownership of such securities would cause the Company to be treated as engaged in a trade or business any income from which would be treated by any foreign Member (or any foreign partner or member of a Member) as income effectively connected with a United States trade or business under sections 871(a) or 881(a) of the Code.

      12.3    The Company shall use its reasonable best efforts to ensure that all of its gross income is from dividends, interest, and capital gains and losses from the disposition of property, and rents and royalties, but only such rents and royalties as are excluded, pursuant to sections 512(b)(2) and (3) of the Code in calculating unrelated business taxable income to ensure that (a) the Company will not constitute a "business enterprise" for purposes of the excess business holdings provisions of section 4943 of the Code. The Company shall use its reasonable best efforts to ensure that the Company not enter into any transaction that would constitute participation by the Company or any Member in a "prohibited transaction" under section 4975 of the Code or in an "excess benefit transaction" under section 4958 of the Code. In no event shall this Section 12.3 be interpreted as preventing (or limiting in any respect) the Manager or the Company from participating in those activities that are customarily associated with the acquisition, holding of capital appreciation, and sale or distribution by a professionally managed investment fund of portfolio company securities, including taking an active role in founding or serving on the boards of directors of portfolio companies.

      12.4    The Company will use its reasonable best efforts to conduct the affairs of the Company so as to avoid having the Company treated as engaged in a trade or business within the United States for purposes of sections 875, 882, 884, and 1446 of the Code, so as to avoid any Member (or any partner or member of a Member) realizing gain or loss treated as effectively connected with a U.S. trade or business under section 897 of the Code and so as to avoid "effectively connected income" within the meaning of section 864 of the Code. In no event shall this Section 12.4 be interpreted as preventing (or limiting in any respect) the Manager or the Company from participating in those activities that are customarily associated with the acquisition, holding of capital appreciation, and sale or distribution by a professionally managed investment fund of portfolio company securities, including taking an active role in founding or serving on the boards of directors of portfolio companies.

**13.    Miscellaneous.**

      13.1    <u>Waiver of Partition</u>. Each of the Members hereby irrevocably waives any and all rights that such Member may have to maintain any action for partition of any of the Company's property.

      13.2    <u>Entire Agreement</u>. This Agreement together with the documents expressly referred to herein, each as amended or supplemented, constitutes the entire agreement among the parties with respect to the subject matter herein or therein. They supersede any prior agreement or understanding among the parties hereto.

      13.3    <u>Successors and Assigns</u>. Except as otherwise specifically provided herein, this Agreement will be binding upon and inure to the benefit of the parties and their legal representatives, heirs, administrators, executors, successors and permitted assigns.

      13.4    <u>Severability</u>. If any provision of this Agreement, or the application of such provision to any Person or circumstance, will be held invalid, illegal or unenforceable in any jurisdiction, the validity, legality and enforceability of the remaining provisions of this Agreement, or the application of such provision in jurisdictions or to Persons or circumstances other than those to which it is held invalid, illegal or unenforceable, will not be affected thereby.

13.5     Counterparts. This Agreement may be executed in several counterparts, each of which will be deemed an original but all of which will constitute one and the same instrument. Counterparts may be delivered *via* facsimile, electronic mail (including .pdf or any electronic signature complying with the U.S. federal ESIGN Act of 2000, *e.g.*, *www.docusign.com*) or other transmission method and any counterpart so delivered shall be deemed to have been duly and validly delivered and be valid and effective for all purposes.

35.6     Notices. All notices and demands, consents and other communications under this Agreement must be in writing and delivered by: (a) confirmed email or (b) an internationally recognized overnight delivery service with confirmed receipt. The physical and email addresses of the Members will be recorded via the Subscription Agreement and the address of the Company will be shown in Section 2.4. Notices, demands, consents and other communications mailed will be deemed to have been given and made three Business Days following the date mailed. Notices, demands, consents and other communications sent by email or delivery service will be deemed to have been given on the day receipt of such notice is confirmed. Any Member may designate a different address by written notice.

13.7     Confidentiality. Each Member agrees, as set forth below, with respect to any information pertaining to Portfolio Company or any third party that the Company is under an obligation of confidentiality (collectively, "Confidential Matter"), to treat as confidential (and to only use in connection with the business of the Company) all such information, and will not disclose any Confidential Matter, provided that any Member may disclose any such information (a) as has become generally available to the public, (b) as to which such Member has received from a third party and about which such Member has no knowledge of a confidentiality agreement between such third party and the Company, (c) as may be required or appropriate in any report, statement or testimony submitted to any Governmental Authority having or claiming to have jurisdiction over such Member but only that portion of the data and information which, in the written opinion of counsel for such Member is required or would be required to be furnished to avoid liability for contempt or the imposition of any other material judicial or governmental penalty or censure, (d) as may be required or appropriate in response to any summons or subpoena or in connection with any litigation or (e) as to which each of the other Members has consented in writing.

13.8     Interpretation. Wherever from the context it appears appropriate, each term stated in either the singular or the plural will include the singular and the plural, and pronouns stated in the masculine, the feminine or neuter gender will include the masculine, the feminine and the neuter. Captions contained in this Agreement are inserted only as a matter of convenience and in no way define, limit or extend or otherwise affect the scope or intent of this Agreement or any provision hereof.

13.9     Manager's Standard of Care. Whenever in this Agreement the Manager is permitted or required to make a decision (a) in its "sole and absolute discretion," "sole discretion," "discretion" or under a grant of similar authority or latitude, the Manager will be entitled to consider such interests and factors as it desires, including its own interests or (b) in its "good faith" or under another express standard, the Manager will act under such express standard and will not be subject to any other or different standard imposed by this Agreement or other applicable law.

13.10    Governing Law and Venue. This Agreement shall be governed by, and construed under, the laws of the State of Delaware (without regard to conflict of laws principles), all rights and remedies being governed by said laws.  The parties agree that any action brought by any party under or in relation to this Agreement, including without limitation to interpret or enforce any provision of this Agreement, shall be brought in, and each party agrees to and does hereby submit to the jurisdiction and venue of, any state or federal court located in the Delaware, USA.

13.11    Compliance with FINRA. In the event that the Company invests in any Securities that are part of a "new issue" within the meaning of the rules of Financial Industry Regulatory Authority, Inc. (formerly, NASD, Inc.) ("FINRA") (including Rule 5130), such investment shall be made in accordance

with all applicable FINRA rules. In furtherance (but not limitation) of the preceding sentence, to the extent necessary to comply with FINRA rules (as determined by the Manager in its reasonable discretion) only those Members that have established through written representations satisfactory to the Manager that they do not fall within the proscription of such rules with regard to any specific new issue Securities shall have a beneficial interest in such new issue securities through their interest in the Company. Under no circumstance shall the Manager be deemed in breach of any duty to the Company by virtue of causing the Company to decline an opportunity to invest in a new issue Security.

### 13.12   *Compliance with Investment Advisers Act*.

(a)      The Members acknowledge and agree that the Members, solely by virtue of their status as such or their rights under this Agreement, are not intended to be clients of the Manager within the meaning of the Investment Advisers Act. Accordingly, notwithstanding any provision of this Agreement to the contrary, the Manager shall not be required to provide any Member (in its capacity as such) with any advice, analysis or reports regarding such Member's direct actual or proposed investments in any securities (including any actual or proposed co-investment by such Member with the Company).

(c)      In recognition of Rule 206(4)-8(a)(1) of the Investment Advisers Act (and other applicable laws, regulations and rules that similarly prohibit misleading communications to investors), each Member acknowledges and agrees that any and all communications from the Manager relating to the Company (including financial statements, capital call notices, proposals of amendments to this Agreement, requests for consents or waivers, and other reports, statements, notices and communications) shall be interpreted by each Member in light of all of the provisions of this Agreement.

### 13.13   *Compliance with Securities Exchange Act*.

(a)      The Members acknowledge and agree that the activities of the Manager in connection with the offering of interests in the Company are not intended to give rise to a requirement that any of such Persons register as a broker or a dealer under the Securities Exchange Act or any corresponding State, local, or foreign law. To the maximum extent permitted by applicable law, the Manager and the Company hereby disclaim any duties, obligations, or status as an advisor, finder, agent, broker or dealer on behalf of or in respect of any Person in connection with such Person's actual or proposed investment in the Company.

(b)      Notwithstanding any provision of this Agreement to the contrary, the Manager (in its capacity as such) shall not be required to provide any services in connection with the actual or proposed transfer of all or any portion of a Member's or Assignee's interest in the Company, or in connection with any distribution by the Company, which services would give rise to a requirement that the Manager or any member thereof register as a broker or dealer under the Securities Exchange Act or any corresponding State, local or foreign law.

[Signature Page Follows]

**COUNTERPART SIGNATURE PAGE FOR OPERATING AGREEMENT OF GVA AUTO, LLC**

**MANAGER:**

GVA CAPITAL LTD

By:_____

    Name: Pavel Cherkashin
    Title: Director

MEMBER:

By:_____

    Name: Vladimir Smirnov
    Title:

## SCHEDULE A

## GVA AUTO, LLC
## LIMITED LIABILITY COMPANY AGREEMENT

| Name of Member | Percentage Interest |
|---|---|
| Prosperity Investments LP | 95.0% |
| Vladimir Smirnov | 5.0% |
| **Totals** | 100.0% |

# EXHIBIT B



**IN THE GRAND COURT OF THE CAYMAN ISLANDS
FINANCIAL SERVICES DIVISION**

**CAUSE NO: FSD _____ OF 2021 (_____)**

**BETWEEN:**

(1)   **PAVEL CHERKASHIN**
(2)   **PAVEL CHERKASHIN (DERIVATIVELY ON BEHALF OF GVA CAPITAL LTD)**

**PLAINTIFFS**

**AND:**

(1)   **GVA CAPITAL LTD**
(2)   **ODRISON INVESTMENTS LIMITED**

**DEFENDANTS**

**WRIT OF SUMMONS**

TO:   (1)   GVA Capital Ltd
            c/o Harneys Fiduciary (Cayman) Limited
            4th Floor, Harbour Place
            103 South Church Street
            PO Box 10240
            Grand Cayman KY1-1002
            Cayman Islands

      (2)   Odrison Investments Limited
            IRIS Tower, Floor 4
            Flat 401
            Arch. Makariou III & Agapinoros 2
            1076 Nicosia
            Cyprus

THIS WRIT OF SUMMONS has been issued against you by the above-named Plaintiff in respect of the claim set out on the next page.

Within 14 days (or, if leave is required to effect service out of the jurisdiction, such other period as is specified in the attached Acknowledgement of Service of Writ of Summons) after the service of this Writ on you, counting the day of service, you must either satisfy the claim

This Writ of Summons was issued by KSG, attorneys for the Plaintiff, whose address for service is 4th Floor Harbour Centre, 42 North Church Street, PO Box 2255, Grand Cayman KY1-1107, Cayman Islands [JK/MR/2101]

or return to the Court Office, PO Box 495G, George Town, Grand Cayman, the accompanying Acknowledgement of Service stating therein whether you intend to contest these proceedings.

If you fail to satisfy the claim or to return the Acknowledgement within the time stated, or if you return the Acknowledgement without stating therein an intention to contest the proceedings, the Plaintiff may proceed with the action and judgment may be entered against you forthwith without further notice.

Issued this 19th day of April 2021.

NOTE – This Writ may not be served later than 4 calendar months (or, if leave is required to effect service out of the jurisdiction, 6 months) beginning with the date of issue unless renewed by order of the Court.

**IMPORTANT**

Directions for Acknowledgement of Service are given with the accompanying form.

This Writ of Summons was issued by KSG, attorneys for the Plaintiff, whose address for service is 4th Floor Harbour Centre, 42 North Church Street, PO Box 2255, Grand Cayman KY1-1107, Cayman Islands [JK/MR/2101]

2

### GENERAL INDORSEMENT

1.      The First Plaintiff, Pavel Cherkashin (**Mr Cherkashin**) is a shareholder and former director of GVA Capital Ltd (the **Company**), a Cayman Islands exempted company. Mr Cherkashin brings this action on his own behalf and derivatively on behalf of the Company.

2.      The Second Defendant, Odrison Investments Limited (**Odrison**) is a Cyprus limited company. Odrison is a shareholder and a director of the Company. Odrison is controlled by, and represents the interests of, Magomed Musaev (**Mr Musaev**), a Russian national domiciled in the Russian Federation.

3.      The Company is the sole manager of GVA Auto, LLC (**GVA Auto**), a Delaware limited liability company. GVA Auto carries on business as an investment fund, and has two participating members. One participating member holds a 95% interest in GVA Auto and the other participating member holds a 5% interest in GVA Auto. GVA Auto is governed by an Operating Agreement dated 29 June 2017 that is subject to Delaware law.

4.      It is anticipated that GVA Auto will make a distribution of assets in June 2021 representing a substantial profit to the participating members. Under the Operating Agreement, the participating members are entitled to receive the distributed assets in accordance with their proportionate interests in GVA Auto, subject to the Company's entitlement to carried interest.

5.      Mr Musaev and Odrison allege that Mr Musaev, on behalf of the Company, made an oral agreement the purported effect of which is that the Company is entitled to receive all of the appreciation attributable to the 95% interest in GVA Auto held by the majority participating member, which is to then be paid over to Odrison, Mr Musaev and/or an entity controlled by Mr Musaev (the **Alleged Agreement**).

6.      Mr Cherkashin and the majority participating member in GVA Auto deny that the Alleged Agreement exists or is valid or enforceable. However, Odrison, at the direction of Mr Musaev, intends to implement the Alleged Agreement. In response to Mr Cherkashin's concerns about the transaction, Mr Musaev has engineered the removal

This Writ of Summons is filed by KSG, attorneys for the Plaintiffs, whose address for service is 4th Floor Harbour Centre, 42 North Church Street, PO Box 2255, Grand Cayman KY1-1107, Cayman Islands [JK/MR/2101]

**FSD2021-0094**                    **Page 3 of 9**                    **2021-04-19**

of Mr Cherkashin as a director of the Company and has threatened to cause Mr Cherkashin's shareholding in the Company to be diluted.

7.      If the Company implements or attempts to implement the Alleged Agreement while its validity and enforceability is disputed, the Company management rights under the GVA Auto Operating Agreement will be threatened, and thereby cause significant loss to the Company and to Mr Cherkashin as a shareholder of the Company.

8.      Further, the threats to dilute Mr Cherkashin's shareholdings in the Company, and any attempt to do so, would constitute breaches of the Company directors' fiduciary and common law duties owed to the Company.

The Plaintiffs' claims are for:

(1)     An injunction restraining GVA and Odrison from taking any steps to implement the Alleged Agreement pending final determination of the validity and enforceability of the Alleged Agreement by a court of competent jurisdiction;

(2)     An injunction restraining GVA and Odrison from issuing any further shares or other equity interests, or any rights or interests capable of becoming a share or other equity interest, in GVA;

(3)     Costs; and

(4)     Such further or other relief as counsel may advise or the Court thinks appropriate.

**DATED** this 19th day of April, 2021.



_____
**KSG**
Attorneys for the Plaintiffs

This Writ of Summons is filed by KSG, attorneys for the Plaintiffs, whose address for service is 4th Floor Harbour Centre, 42 North Church Street, PO Box 2255, Grand Cayman KY1-1107, Cayman Islands [JK/MR/2101]

FSD2021-0094                    Page 4 of 9                    2021-04-19

### DIRECTIONS FOR ACKNOWLEDGMENT OF SERVICE
### OF WRIT OF SUMMONS

1.  The accompanying form of Acknowledgment of Service should be completed by an Attorney acting on behalf of the Defendant or by the Defendant if acting in person.

    After completion it must be delivered or sent by post to the Law Courts, P.O. Box 495G, George Town, Grand Cayman.

2.  A Defendant who states in his Acknowledgement of Service that he intends to contest the proceedings must also serve a defence on the Attorney for the Plaintiff (or on the Plaintiff if acting in person).

    If a Statement of Claim is indorsed on the Writ (i.e., the words "Statement of Claim" appear on the top of page 3), the Defence must be served within 14 days after the time for acknowledging service of the Writ, unless in the meantime a summons for judgment is served on the Defendant.

    If the Statement of Claim is not indorsed on the Writ, the Defence need not be served until 14 days after a Statement of Claim has been served on the Defendant.

    If the Defendant fails to serve his defence within the appropriate time, the Plaintiff may enter judgment against him without further notice.

3.  A Stay of Execution against the Defendant's goods may be applied for where the Defendant is unable to pay the money for which any judgment is entered. If a Defendant to an action for a debt or liquidated demand (i.e. a fixed sum) who does not intend to contest the proceedings states, in answer to Question 3 in the Acknowledgement of Service, that he intends to apply for a stay, execution will be stayed for 14 days after his Acknowledgment, but he must, within that time, issue a Summons for a stay of execution, supported by an affidavit of his means. The affidavit should state any offer which the Defendant desires to make for payment of the money by instalments or otherwise.

**See over for notes for guidance**

**Please complete overleaf**

This Writ of Summons is filed by KSG, attorneys for the Plaintiffs, whose address for service is 4th Floor Harbour Centre, 42 North Church Street, PO Box 2255, Grand Cayman KY1-1107, Cayman Islands [JK/MR/2101]

**Notes for Guidance**

1.  Each Defendant (if there are more than one) is required to complete an Acknowledgment of Service and return it to the Courts Office.

2.  For the purpose of calculating the period of 14 days for acknowledging service, a writ served on the Defendant personally is treated as having been served on the day it was delivered to him.

3.  Where the Defendant is sued in a name different from his own, the form must be completed by him with the addition in paragraph 1 of the words "sued as (the name stated on the Writ of Summons)".

4.  Where the Defendant is a FIRM and an attorney is not instructed, the form must be completed by a PARTNER by name, with the addition in paragraph 1 of the description "Partner in the firm of (.....................................)" after his name.

5.  Where the Defendant is sued as an individual TRADING IN A NAME OTHER THAN HIS OWN, the form must be completed by him with the addition in paragraph 1 of the description "trading as (...........................)" after his name.

6.  Where the Defendant is a LIMITED COMPANY the form must be completed by an Attorney or by someone authorised to act on behalf of the Company, but the Company can take no further step in the proceedings without an Attorney acting on its behalf.

7.  Where the Defendant is a MINOR or a MENTAL PATIENT, the form must be completed by an Attorney acting for a guardian ad litem.

8.  A Defendant acting in person may obtain help in completing the form at the Courts Office.

This Writ of Summons is filed by KSG, attorneys for the Plaintiffs, whose address for service is 4th Floor Harbour Centre, 42 North Church Street, PO Box 2255, Grand Cayman KY1-1107, Cayman Islands [JK/MR/2101]

FSD2021-0094                              Page 6 of 9                              2021-04-19

**IN THE GRAND COURT OF THE CAYMAN ISLANDS
FINANCIAL SERVICES DIVISION**

CAUSE NO: FSD _____ OF 2021 (_____)

BETWEEN:

> (3)   **PAVEL CHERKASHIN**
> (4)   **PAVEL CHERKASHIN (DERIVATIVELY ON BEHALF
>        OF GVA CAPITAL LTD)**

**PLAINTIFFS**

AND:

> (3)   **GVA CAPITAL LTD**
> (4)   **ODRISON INVESTMENTS LIMITED**

**DEFENDANTS**

**ACKNOWLEDGMENT OF SERVICE
OF WRIT OF SUMMONS**

If you intend to instruct an Attorney to act for you, give him this form IMMEDIATELY.

Important. Read the accompanying directions and notes for guidance carefully before completing this form. If any information required is omitted or given wrongly, THIS FORM MAY HAVE TO BE RETURNED.

Delay may result in judgment being entered against a Defendant whereby he may have to pay the costs of applying to set it aside.

1.   State the full name of the Defendant by whom or on whose behalf the service of the Writ is being acknowledged.

2.   State whether the Defendant intends to contest or otherwise participate in the proceedings (tick appropriate box)
           yes                         no

3.   If the claim against the Defendant is for a debt or liquidated demand, AND he does not intend to contest the proceedings, state if the Defendant intends to apply for a stay of execution against any judgment entered by the Plaintiff (tick box)
           yes                         no

Service of the Writ is acknowledged accordingly


(Signed)…………………………………………………
 Attorney for                                          **Please complete overleaf**

**Notes on address for service**

Attorney: where the Defendant is represented by an attorney, state the attorney's place of business in the Cayman Islands.  A Defendant may not act by a foreign attorney.

Defendant in person: where the Defendant is acting in person, he must give his post office box number and the physical address of his residence or, if he does not reside in the Cayman Islands, he must give an address in Grand Cayman where communications for him should be sent.  In the case of a limited company, "residence" means its registered or principal office.

Endorsement by plaintiff's Attorney (or by plaintiff if suing in person) of his name, address and reference, if any, in the box below.

KSG Attorneys at Law
4th Floor Harbour Centre
42 North Church Street
PO Box 2255
Grand Cayman KY1-1107
Cayman Islands

Endorsement by defendant's Attorney (or by defendant if suing in person) of his name, address and reference, if any, in the box below.

EFiled:  Apr 26 2021 04:06PM EDT
Transaction ID 66548167
Case No. 2021-0357-

SUPPLEMENTAL INFORMATION PURSUANT TO RULE 3(A)
OF THE RULES OF THE COURT OF CHANCERY

The information contained herein is for the use by the Court for statistical and administrative purposes only. Nothing stated herein shall be deemed an admission by or binding upon any party.

1. Caption of Case:     ***Definition Services Inc. v. GVA Capital LTD***, C.A. No. 2021-____-___

2. Date Filed:     **April 26, 2021**

3. Name and address of counsel for plaintiff(s):
   **Brock E. Czeschin (#3938)**
   **Christian C.F. Roberts (#6694)**
   **Richards Layton & Finger P.A.**
   **920 North King Street**
   **Wilmington, DE 19801**

4. Short statement and nature of claim asserted: **Plaintiff brings this suit to enforce provisions of Operating Agreement of Delaware Limited Liability Company, to enjoin Manager's breach of the Operating Agreement, and to recover damages for Manager's breaches of fiduciary duty and of the Operating Agreement.**

5. Substantive field of law involved (check one):
   ____Administrative law          ____Labor law                  ____Trusts, Wills and Estates
   __X__Commercial law             ____Real Property              ____Consent trust petitions
   ____Constitutional law          ____348 Deed Restriction       ____Partition
   ___ Corporation law             ____Zoning                     ____Rapid Arbitration (Rules 96,97)
   ____Trade secrets/trade mark/or other intellectual property          ____Other

6. Related cases, including any Register of Wills matters (this requires copies of all documents in this matter to be filed with the Register of Wills):   **None**

7. Basis of court's jurisdiction (including the citation of any statute(s) conferring jurisdiction):
**6 *Del. C.* § 18-111; 6 *Del. C.* § 18-109; 10 *Del. C.* § 341; 10 *Del. C.* § 6501**

8. If the complaint seeks preliminary equitable relief, state the specific preliminary relief sought. **Plaintiffs seeks a temporary restraining order enjoining Defendant from proceeding with self-interested distribution in breach of the Operating Agreement.**

9. If the complaint seeks a TRO, summary proceedings, a Preliminary Injunction, or Expedited Proceedings, check here  **X**  .  (If #9 is checked, a Motion to Expedite must accompany the transaction.)

10. If the complaint is one that in the opinion of counsel should not be assigned to a Master in the first instance, check here and attach a statement of good cause.  **X**

*/s/ Brock E. Czeschin*
Brock E. Czeschin (#3938)

RLF1 25170915v.1

## <u>STATEMENT OF GOOD CAUSE</u>

The undersigned counsel have reviewed the Verified Complaint Seeking Temporary Restraining Order and Other Relief and do not believe that this action is suitable for assignment to a Master in Chancery. As described in the accompanying Opening Brief in Support of Motions for Temporary Restraining Order and Expedited Proceedings, plaintiff seeks expedition and a temporary restraining order enjoining defendant from proceeding with a self-interested transaction in violation of the Operating Agreement of a Delaware Limited Liability Company. Accordingly, this action should proceed directly before the Chancellor or a Vice Chancellor of this Court.

/s/ Brock E. Czeschin
Brock E. Czeschin (#3938)
Christian C.F. Roberts (#6694)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700

*Attorneys for Plaintiff Definition Services Inc.*

Dated: April 26, 2021

**EFiled:  Apr 26 2021 04:06PM EDT**
**Transaction ID 66548167**
**Case No. 2021-0357-**

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| DEFINITION SERVICES INC., | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 2021-_____ |
| | ) | |
| v. | ) | |
| | ) | |
| GVA CAPITAL LTD., | ) | |
| | ) | |
| | ) | |
| Defendant, | ) | |

## PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER

Pursuant to Court of Chancery Rule 65(b), Plaintiff Definition Services Inc. ("Plaintiff") moves for an Order enjoining GVA Capital LTD ("GVA Capital" or "Defendant") and its affiliates from making or authorizing any distribution, sale, or other transaction involving the Luminar Shares (the "Motion").  The grounds for the Motion are set forth in Plaintiff's Opening Brief in Support of Its Motions for Temporary Restraining Order and Expedited Proceedings filed contemporaneously herewith.

/s/ Brock E. Czeschin
Brock E. Czeschin (#3938)
Christian Roberts (#6694)
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700

*Attorneys for Plaintiff*

Dated:  April 26, 2021                Words: 70

2

EFiled:  Apr 26 2021 04:06PM EDT
Transaction ID 66548167
Case No. 2021-0357-

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

DEFINITION SERVICES INC.,     )
     )
     )
     Plaintiff,     )    C.A. No. 2021-____
     )
     v.     )
     )
GVA CAPITAL LTD.,     )
     )
     )
     Defendant,     )

## [PROPOSED] TEMPORARY RESTRAINING ORDER

Plaintiff Definition Services Inc. ("Definition Services"), having moved for an Order enjoining GVA Capital LTD ("GVA Capital") and its affiliates from making or authorizing any distribution, sale, or other transactions involving or otherwise implicating the Luminar Shares (the "Motion"), and the Court having considered the matter,

IT IS HEREBY ORDERED this __ day of April, 2021, that:

1.    The Motion is GRANTED; and

2.    GVA Capital and its affiliates, including but not limited to its members, managers, directors, employees, and agents, shall not make or authorize any direct or indirect distribution, sale, transfer, contribution, pledge, encumbrance, or other transaction involving or otherwise implicating the Luminar Shares, unless it obtains the prior written consent of Definition Services or the Court.

_____
[Vice] Chancellor

EFiled:  Apr 26 2021 04:06PM EDT
Transaction ID 66548167
Case No. 2021-0357-

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DEFINITION SERVICES INC., | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 2021-____ |
| | ) | |
| v. | ) | |
| | ) | |
| GVA CAPITAL LTD., | ) | |
| | ) | |
| | ) | |
| Defendant, | ) | |

## MOTION FOR EXPEDITED PROCEEDINGS

Plaintiff Definition Services Inc. ("Definition" or "Plaintiff"), by and through its undersigned counsel, hereby moves for an Order, in the form attached hereto, providing for expedited proceedings (the "Motion").  The grounds for the Motion are set forth in Plaintiff's Opening Brief in Support of Its Motions for Temporary Restraining Order and Expedited Proceedings filed contemporaneously herewith.

_/s/ Brock E. Czeschin_
Brock E. Czeschin (#3938)
Christian Roberts (#6694)
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700

_Attorneys for Plaintiff_

Dated:  April 26, 2021          Words: 56

**EFiled:  Apr 26 2021 04:06PM EDT**
**Transaction ID 66548167**
**Case No. 2021-0357-**

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DEFINITION SERVICES INC., | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 2021-_____ |
| | ) | |
| v. | ) | |
| | ) | |
| GVA CAPITAL LTD., | ) | |
| | ) | |
| | ) | |
| Defendant, | ) | |

## [PROPOSED] ORDER GRANTING
## PLAINTIFF'S MOTION FOR EXPEDITED PROCEEDINGS

Upon Plaintiff Definition Services Inc.'s Motion for Expedited Proceedings

(the "Motion"), and for good cause shown,

IT IS HEREBY ORDERED this ___ day of April, 2021, that:

1. The Motion is GRANTED;

2. The proceedings in the above-captioned action shall be expedited; and

3. The parties are directed to confer on an appropriate schedule, in

accordance with any guidance provided by the Court.


_____
[Vice] Chancellor

EFiled:  Apr 26 2021 04:06PM EDT
Transaction ID 66548167
Case No. 2021-0357-

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DEFINITION SERVICES INC., | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 2021-_____ |
| | ) | |
| v. | ) | |
| | ) | |
| GVA CAPITAL LTD., | ) | |
| | ) | |
| | ) | |
| Defendant, | ) | |

## PLAINTIFF'S OPENING BRIEF IN SUPPORT OF ITS MOTIONS FOR TEMPORARY RESTRAINING ORDER <u>AND EXPEDITED PROCEEDINGS</u>

Brock E. Czeschin (#3938)
Christian Roberts (#6694)
RICHARDS, LAYTON & FINGER,
P.A.
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700

Dated:  April 26, 2021

*Attorneys for Plaintiff Definition Services Inc.*

RLF1 25172028v.1

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES...................................................................ii

PRELIMINARY STATEMENT ...........................................................1

STATEMENT OF FACTS ....................................................................4

**A.**   The Investments with GVA Capital ...........................4

**B.**   The Operating Agreement .........................................4

**C.**   Prosperity Transfers Its Interests in the Investments to Definition Services ....................................................6

**D.**   Luminar Explodes In Value And Goes Public ...........7

**E.**   GVA Capital Takes Steps to Prepare for Distribution of Luminar Shares to Definition Services.......................8

**F.**   Musaev Alleges an Unenforceable Oral Agreement in an Effort to Steal Definition Services' Profits ...........9

**G.**   Musaev's Alleged Oral Agreement is Unenforceable ..............10

**H.**   Cherkashin Disputes the Alleged Oral Agreement in Cayman Islands Court..........................................................11

ARGUMENT.....................................................................................14

**I.**   A TEMPORARY RESTRAINING ORDER MUST BE ISSUED TO PROTECT DEFINITION SERVICES' SUBSTANTIAL INVESTMENT GAINS ......................................................14

**A.**   Definition Services States More Than Colorable Claims.........14

**B.**   Definition Services will suffer Irreparable Harm without a TRO ...............................................................17

**C.**   The Balance of Hardships Favors Definition Services.............20

**II.**   THE COURT SHOULD ORDER EXPEDITED PROCEEDINGS...21

CONCLUSION ..................................................................................21

ii

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Arkema Inc. v. Dow Chem. Co.*,
  2010 WL 2334386 (Del. Ch. May 14, 2010) ...................................................14

*Box v. Box*,
  697 A.2d 395 (Del. 1997).................................................................................21

*In re Cogent, Inc. S'holder Litig.*,
  7 A.3d 487 (Del. Ch. 2010) ..............................................................................18

*Destra Targeted Income Unit Inv. Tr. v. Parmar*,
  C.A. No. 13006-VCL (Del. Ch. Jan. 25, 2017) (TRANSCRIPT).....................19

*Drawbridge Special Opportunities Fund LP v. PRC Williston LLC*,
  C.A. No. 9166-VCL (Del. Ch. Dec. 23, 2013) (TRANSCRIPT).......................19

*Giammargo v. Snapple Beverage Corp.*,
  1994 WL 672698 (Del. Ch. Nov. 15, 1994).....................................................21

*Kansas City S. v. Grupo TMM, S.A.*,
  2003 WL 22659332 (Del. Ch. Nov. 4, 2003)....................................................18

*Kendall Associated Invs., LLC v. Mallard Creek Realty Advisors, LLC*,
  2021 WL 736867 (Del. Ch. Feb. 25, 2021).......................................................16

*Mitsubishi Power Sys. Ams., Inc. v. Babcock & Brown Infrastructure Grp. US, LLC*,
  2009 WL 1199588 (Del. Ch. Apr. 24, 2009).....................................................18

*Newell Rubbermaid Inc. v. Storm*,
  2014 WL 1266827 (Del. Ch. Mar. 27, 2014) ....................................................14

*Reserves Dev. Corp. v. Wilm. Tr. Co.*,
  2008 WL 4951057 (Del. Ch. Nov. 7, 2008).......................................................14

*Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc.*,
  222 F.3d 132 (3d Cir. 2000) ..............................................................................19

RLF1 25172028v.1

*Vill. Green Hldg., LLC* v. *Holtzman*,
  2018 WL 4849964 (Del. Ch. Oct. 5, 2018) ........................................................20

*W. Willow-Bay Court, LLC v. Robino-Bay Court Plaza, LLC*,
  2009 WL 458779 (Del. Ch. Feb. 23, 2009) ........................................................16

*William Penn P'ship v. Saliba*
  13 A.3d 749 (Del. 2011) ....................................................................................17

RLF1 25172028v.1

## **PRELIMINARY STATEMENT**

This action seeks to stop the brazen attempt by an investment manager, GVA Capital LTD ("GVA Capital" or "Defendant"), to steal the substantial gains of its investor, Definition Services Inc. ("Definition Services" or "Plaintiff"), in direct violation of the parties' written agreement.  Pursuant to the terms of that agreement, Definition Services is entitled to receive a distribution of its investment gains, which are currently valued in the hundreds of millions of dollars, in the coming weeks. Until very recently, GVA Capital was working cooperatively with Definition Services in planning for this distribution.  However, as a result of one of GVA Capital's members seizing control of the company's board, GVA Capital has suddenly taken the position that it is entitled to *all* of Definition Services' investment gains and that such gains will be distributed directly to GVA Capital and/or its new controller.

GVA Capital has taken this remarkable position on the grounds of an alleged "oral agreement," which was purportedly reached years ago by individuals who lacked authority to bind either party.  The alleged oral agreement also clearly violates the express terms of the parties' written agreement, which unsurprisingly entitles Definition Services to the gain on its investment.  This written agreement further provides that it may not be amended except in writing.  GVA Capital's shocking conduct must be stopped, including through the prompt issuance of a temporary

1

restraining order.  Otherwise, Definition Services' substantial investment gains will be distributed to foreign entities, including a Russian national, and dissipated before any final relief may be awarded, effectively leaving Definition Services without an available remedy.

Prior to April 8, 2021, Definition Services was working with GVA Capital director Pavel Cherkashin ("Cherkashin") on a distribution agreement, which would provide Definition Services with its rightful share of investment proceeds.  However, on that date, Cherkashin notified Definition Services that another member of GVA Capital, Odrison Investments Limited ("Odrison"), was seeking to remove Cherkashin as a director because Cherkashin refused to recognize an alleged oral agreement that purportedly gave GVA Capital the right to all gains on the investment.  Odrison is an entity controlled Magomed Musaev ("Musaev").  Odrison and Musaev assert that at some point Musaev entered into an oral agreement with a "representative" of Definition Services and/or its predecessor providing that Definition Services would only be entitled to the return of its invested capital and all gain or loss on the investment would be realized by GVA Capital.

GVA Capital's newly-minted position is directly contrary to the express terms of parties' written agreement, which provides that "[a]ll profit and loss shall be allocated to the Capital Accounts of the Members in proportion to their Percentage Interests."  Pursuant to its terms, this written agreement cannot be amended except

2

in writing.   Yet there is no contemporaneous written evidence supporting the existence of Musaev's alleged oral agreement.   Accordingly, any such oral agreement violates the plain terms of the parties' written agreement.   Furthermore, none of the individuals purportedly involved in reaching the alleged oral agreement had authority to bind the parties to it.   As such, Odrison's own partner in GVA Capital, Cherkashin, refused to recognize the alleged oral agreement and sought properly to perform GVA Capital's obligations under the parties' written agreement. However, on April 13, 2021, Odrison purported to remove Cherkashin from GVA Capital's board.   Odrison's intention in doing so was clear:   It was causing GVA Capital to adopt Musaev's outlandish position concerning the alleged oral agreement, including that all of Definition Services' substantial investment gains shall be distributed to GVA Capital and/or Musaev.   This distribution (unless enjoined) is likely to occur on or soon after June 1, 2021.

Given these extraordinary circumstances, Definition Services is entitled to the issuance of a temporary restraining order, preserving the status quo until this Court can determine the claims asserted in this action, and to expedited proceedings.

3

## STATEMENT OF FACTS[1]

### A.    The Investments with GVA Capital

Prosperity Investments LP ("Prosperity"), Definition Services' predecessor-in-interests, originally invested a total of $28 million with GVA Capital across three investments.   Compl. ¶ 13.   Most significantly, in September 2016, Prosperity invested a capital contribution of $20 million in GVA Auto.  *Id.* ¶ 15.  GVA Auto's sole purposes are to: (i) make an investments in Luminar Technologies, Inc. ("Luminar") and (ii) engage in any and all activities related or incidental thereto. *See* GVA Auto, LLC Operating Agreement (the "Operating Agreement" or "OA"), § 2.3. Compl., Ex. A.  At the time of the investment, Luminar was a startup company focused on developing technology for autonomous vehicles.  Compl. ¶ 15.

At the time of its capital contribution, Prosperity was the only investor in GVA Auto.  *Id.* ¶ 17.  On June 29, 2017, Prosperity sold 5% of its position in GVA Auto to Vladimir Smirnov for $1.5 million in cash.  *Id.*  Thereafter, Prosperity owned a 95% interest in GVA Auto.

### B.    The Operating Agreement

The Operating Agreement sets forth the parties' rights and obligations with regard to GVA Auto.

---

[1] The factual statements in this brief come directly from the Verified Complaint Seeking Temporary Restraining Order and Other Relief (cited as "Compl. ¶ __"), which was filed contemporaneously herewith.

GVA Capital is designated as the Manager of the entity, but is not a Member and holds no ownership interest the company.  *See* OA § 1 and Schedule A.

Pursuant to Section 4.5(b) of the Operating Agreement, "[a]ll profit and loss shall be allocated to the Capital Accounts of the Members in proportion to their Percentage Interests."  *Id.* § 4.5(b).

Section 5.2 of the Operating Agreement further provides as follows:

> <u>Ordinary Distributions.</u>  Subject to the limitations of the Act and this Agreement, the Manager shall make prompt distributions of Available Cash (and in any event within 30 days after receipt of proceeds from the Portfolio Company) resulting from receipts attributable to, or proceeds from the disposition of, a Portfolio Company to the Members as follows:
>
> (a)  First, 100% to the Members who have Net Investment amounts, in proportion to their relative amounts of Net Investment until the Net Investment of each Member has been reduced to zero;
>
> (b)   Thereafter, (i) 90% to the Members pro rata to their Percentage Interest and (ii) 10% to the Manager (the "Carried Interest").

*Id.* § 5.2.  Stated differently, the Operating Agreement provides that each Member shall receive back its invested capital and then any additional gains shall be distributed 90% to the Members based on their percentage interests and 10% to the Manager.[2]

---

[2] Under Section 5.3 of the GVA Auto Operating Agreement, the Manager has discretion to "distribute assets in kind in the priority set forth in Section 5.2."

5

Significantly, the Operating Agreement may not be amended or modified without the requisite written consent of the majority of its Members. Under Section 6.2 of the Operating Agreement, the Manager cannot adopt "any amendment to this Agreement" without the "prior written approval of a Required Interest of Members," which is Members holding more than 50% of the Percentage Interests. *Id.* § 6.2. Similarly, Section 11.1 of the Operating provides: "This Agreement may not be modified or amended without the written consent of the Manager and the Members holding a Required Interest." *Id.* § 11.1.

### C.   Prosperity Transfers Its Interests in the Investments to Definition Services

Through an Agreement of Assignment and Adherence (the "Assignment Agreement") dated December 19, 2018, Prosperity transferred and assigned all of its "rights, title and interest in respect of its interest in" GVA Auto to Definition Services. Compl. ¶ 25. The Assignment Agreement, which was signed by Cherkashin on behalf of GVA Auto, further provides that GVA Auto acknowledges, agrees and confirms that "all requirements and conditions for the assignment of the Assigned Interest and the admission of [Definition Services] as a member of the Company have been satisfied or otherwise waived." *Id.* GVA Capital also approved of the Assignment Agreement and Definition Services' admission as a member of

GVA Auto through written resolutions dated December 9, 2018, which were signed by Ordison.  Compl. ¶ 25.[3]

### D.    Luminar Explodes In Value And Goes Public

By early 2020, Luminar was preparing to go public, and it was clear that the company's value had grown considerably.  Compl. ¶ 29.  Luminar ultimately went public on December 1, 2020.  *Id.*  GVA Auto currently holds approximately 18,030,728 shares of Luminar common stock (the "Luminar Shares").  *Id.*  Based on Luminar's recent stock prices, the Luminar Shares have a value in the hundreds of millions of dollars.  *Id.*

The Luminar Shares are currently subject to a lockup period restricting their sale until June 1, 2021, after which time GVA Auto will receive the Luminar Shares in its account.  *Id.* ¶ 30.  Prior to Odrison's/Musaev's attempt to undermine Definition Services' rights, GVA Capital's intention was to promptly make an in-

---

[3] Definition Services subsequently became aware that the Assignment Agreements contained a scrivener's error.  Specifically, the Assignment Agreements referenced and purported to be with "Prosperity Investment Ltd." instead of "Prosperity Investments LP."  This slight error in Prosperity's name is immaterial given that no entity by the name of Prosperity Investment Ltd. ever owned any interests in any of the companies.  Moreover, following the execution of the Assignment Agreements, GVA Capital recognized Definition Services as the owner of the interests in all three managed entities.  Compl. ¶ 25.  Once the error was identified, representatives of Definition Services and former representatives of Prosperity (which had since dissolved) signed corrected copies of the Assignment Agreements.  *Id.*

kind distribution of the Luminar Shares to the GVA Auto investors based on their percentage ownership, minus the "Carried Interest" to be paid to GVA Capital.  *Id.*

### E. GVA Capital Takes Steps to Prepare for Distribution of Luminar Shares to Definition Services

Up until about April 8, 2021, GVA Capital took steps to prepare for distribution of Definition Services' rightful shares in Luminar pursuant to the Operating Agreement.  Compl. ¶ 30.  During this period, GVA Capital's board was composed of two directors: Odrison/Musaev and Cherkashin.  *Id.*  Cherkashin had been involved since the formation of GVA Auto and served as Prosperity's and then Definition Services' principal contact at GVA Capital concerning the GVA Auto investment.

In early March 2021, Cherkashin, on behalf of GVA Capital, reached out to representatives of Definition Services to discuss the planned distribution of the Luminar Shares, consistent with the terms of the Operating Agreement.  *Id.*  ¶ 31.  GVA Capital proposed entering into an agreement that would lay out the process for the expected distribution of the Luminar Shares, including the amounts that would be received by each of the Members and GVA Capital.  *Id.*  The parties agreed that GVA Auto would make the distribution promptly after the lockup restrictions were lifted on June 1, 2021.

In connection with these discussions, GVA Capital sent Definition Services' representatives a draft "distribution model" that reflected Prosperity[4] receiving Luminar Shares worth hundreds of millions of dollars. *Id.* ¶ 32.

### F.   Musaev Alleges an Unenforceable Oral Agreement in an Effort to Steal Definition Services' Profits

On April 8, 2021, Cherkashin sent an urgent email to Definition Services' advisors, with whom he had been discussing the distribution of the Luminar Shares, about an "Important matter." Compl. ¶ 34. The email indicated that Musaev claimed to have reached an oral agreement with an individual purportedly on behalf of Prosperity several years ago, whereby Prosperity would receive back its initial investment in GVA Auto but that any loss or gain on the investment would be realized by GVA Capital (the "Alleged Oral Agreement"). *Id.* Cherkashin went on to state that he had "not seen any evidence, other than Mr. Musaev's account of his conversation" supporting the actual existence of the Alleged Oral Agreement. *Id.*

Cherkashin also raised concerns that Musaev would attempt to oust him from GVA Capital for complying with GVA Capital's obligations under the Operating Agreement. *Id.* ¶ 35. His email stated:

> Until recently, I was confident that the transaction Mr. Musaev described could not occur without my approval. … Recently, however, I received the attached notice of an extraordinary meeting of GVA

---

[4] Definition Services promptly reminded Cherkashin that the distribution would need to be made to Definition Services, not Prosperity. Cherkashin subsequently acknowledged this was correct.

Capital's shareholders on April 13, at which a resolution to remove me as a director will be considered. … If the resolution is approved and I am removed, then my approval will no longer be needed for the transaction Mr. Musaev has described.

*Id.*

### G.    Musaev's Alleged Oral Agreement is Unenforceable

Cherkashin's email was shocking for several reasons.  First, the email signaled a potential complete reversal of GVA Capital's position with respect to its duties and obligations under the Operating Agreement.

Second, even if Musaev's assertion of the Alleged Oral Agreement was true (which it is not), it would be unenforceable for numerous reasons.  First, the Operating Agreement is clear that "[a]ll profit and loss shall be allocated to the Capital Accounts of the Members in proportion to their Percentage Interests" and that the agreement shall not be amended except in writing.  *See* Operating Agreement §§ 4.5(b), 6.2.  Yet there is no contemporaneous written evidence supporting Musaev's Alleged Oral Agreement.  Accordingly, any such oral agreement violates the plain terms of the parties' written agreement.

Furthermore, none of the individuals purportedly involved in reaching the Alleged Oral Agreement had authority to bind the parties to it.  The individual whom Musaev identified as the representative who made the agreement on behalf of Prosperity has never had any authority to act on behalf of either Prosperity or Definition Services, let alone enter into any such agreement.  Compl. ¶ 38.

Similarly, Odrison (which is believed to be controlled by Musaev) was only one of the two directors of GVA Capital.   As explained above, the other director, Cherkashin, was unaware of the Alleged Oral Agreement at the time it was struck and never approved the agreement.

Definitions Services promptly advised Cherkashin that it firmly disputed Musaev's Alleged Oral Agreement.  *Id.*  ¶ 39.  And, on April 10, 2021, Definition Services' counsel wrote to GVA Capital's purported attorney, Leonard Grayver, disputing the existence of the Alleged Oral Agreement and objecting to the attempt to remove Cherkashin.  *Id.*

In the letter, counsel stated that Definition Services "strongly disagree[s] with the allegations concerning the purported oral agreement and oppose[s] Odrison's efforts to remove Mr. Cherkashin."  *Id.*  The letter further explained that the Alleged Oral Agreement was not supported by any evidence except for Odrison's/Musaev's self-serving assertions and, in any event, would be invalid and unenforceable.  *Id.*

Grayver, who upon information and belief replaced Cherkashin as a director of GVA Capital and may stand to profit from the Alleged Oral Agreement, never responded.  *Id.* ¶ 41.

**H.    Cherkashin Disputes the Alleged Oral Agreement in Cayman Islands Court**

On April 19, 2021, Cherkashin commenced an action in The Grand Court of the Cayman Islands, Financial Services Division, challenging Odrison's and

Musaev's efforts to cause GVA Capital to implement the Alleged Oral Agreement and seeking the appointment of independent joint receivers for GVA Capital in order to prevent such conduct.  Compl. ¶ 42, Ex. B.  In connection with this action, Cherkashin filed an affidavit (the "Cherkashin Affidavit") that revealed Odrison's/Musaev's plan to spirit away the Luminar Shares so that they will not be subject to collection.  *Id.*

> Cherkashin describes Musaev's scheme as follows:
>
> Mr. Musaev planned to arrange the transfer of the [Luminar] Shares to GVA Capital ***without Definition's knowledge or consent***.  From GVA Capital, Mr. Musaev intended to return to Definition or Prosperity only the amount of Prosperity's original investment currently held by Definition (approximately US$18,500,000).  The profit on that investment … would go to Mr. Musaev or an entity under his control. ***If Definition or Prosperity disagreed with Mr. Musaev's receipt of the profit on the investment, they would have to bring legal action to recover the profit from Mr. Musaev.***

*Id.*  ¶ 42.  This plan would effectively render GVA Auto insolvent, as its only asset is the Luminar Shares.  It would also render GVA Capital effectively judgment proof as the entity would be unable to satisfy any judgment once the Luminar Shares are transferred to Musaev.

Cherkashin states that he objected to Musaev's plan because "I had not seen any concrete evidence that the Alleged Agreement in fact existed."  *Id.* ¶ 44.  In response to Cherkashin's objections, Musaev threatened to remove his as a director of GVA Capital and to dilute his interest in GVA Capital.  *Id.*  Cherkashin explains

12

that Musaev carried out the first part of this threat by having Odrison notice the April 13, 2021 meeting of GVA Capital members. *Id.* Based on the minutes of such meeting, Cherkashin understands that Musaev was successful in removing Cherkashin from the board. *Id.*

Cherkashin also explained, correctly, that "[t]he Alleged Agreement appears to be *prima facie* invalid and unenforceable" and, if Mr. Musaev causes GVA Capital to adopt and implement such purported agreement "it will expose GVA Capital to significant financial and reputational damage." *Id.* ¶ 45.

Significantly, Cherkashin—Musaev's longtime business partner in GVA Capital—also states that Musaev is a Russian national domiciled in the Russian Federation, and that Musaev would not be "concerned about" breaching an order made by the Cayman Islands court. *Id.* ¶ 46. For this reason, Cherkashin requests that the Cayman Islands court enter an order appointing two independent receivers of GVA Capital, who will be authorized to assume control of GVA Capital's business and operations. *Id.* The Cayman Islands court has not yet entered any orders or other relief in that action.

## **ARGUMENT**

### I.   **A TEMPORARY RESTRAINING ORDER MUST BE ISSUED TO PROTECT DEFINITION SERVICES' SUBSTANTIAL INVESTMENT GAINS**

The purpose of a temporary restraining order ("TRO") is "to protect the status quo and to prevent imminent and irreparable harm from occurring before a preliminary injunction hearing or the final resolution of a matter." *Newell Rubbermaid Inc. v. Storm*, 2014 WL 1266827, at \*4 (Del. Ch. Mar. 27, 2014).

To obtain a TRO, Definition Services must demonstrate a (1) "colorable claim," (2) that "it would be irreparably injured without interim injunctive relief," and (3) that "the balance of hardships tips in its favor." *Id.* Definition Services' required showing on the merits of its claims is "less exacting" at the TRO stage than it would be at trial or a preliminary injunction hearing, with the "chief focus" on "the nature and imminence of the allegedly impending injury." *Arkema Inc. v. Dow Chem. Co.*, 2010 WL 2334386, at \*3 (Del. Ch. May 14, 2010).

#### A.   **Definition Services States More Than Colorable Claims.**

The "colorable claim" element requires Definition Services to show "essentially a non-frivolous cause of action." *Newell*, 2014 WL 1266827, at \*9 (citation omitted). This "lenient standard" is easily satisfied here. *Reserves Dev. Corp. v. Wilm. Tr. Co.*, 2008 WL 4951057, at \*2 (Del. Ch. Nov. 7, 2008).

Definition Services has established that until recently GVA Capital was planning to distribute to Definition Services hundreds of millions of dollars' worth

14

of Luminar Shares, pursuant to the terms of the GVA Auto Operating Agreement. This production was slated to occur shortly after the Luminar Shares become unrestricted, on or about June 1, 2021. However, as a result of Odrison/Musaev seizing control of GVA Capital, it has completely reversed course. Indeed, GVA Capital now contends that all of Definition Services' substantial gains effectively belong to Odrison/Musaev based upon the Alleged Oral Agreement from years ago.

However, Odrison's/Musaev's Alleged Oral Agreement is a fabrication, unsupported by any contemporaneous evidence. And, even if it did exist (which it does not), the Alleged Oral Agreement is unenforceable as a matter of law for several reasons. First, the individuals who purportedly reached the Alleged Oral Agreement had no authority to bind either party to such agreement. In particular, the purported representative of Prosperity that Musaev identifies as his counterparty for the Alleged Oral Agrement never had authority to bind Prosperity to any such agreement. Similarly, it appears that Musaev never had authority to bind GVA Capital to the Alleged Oral Agreement without the approval of Cherkashin, which was never obtained.

Second, the Alleged Oral Agreement violates the parties' written agreement, the Operating Agreement, which provides that "[a]ll profit and loss shall be allocated to the Capital Accounts of the Members in proportion to their Percentage Interests." *See* Section 4.5(b). This provision cannot be amended through an oral agreement,

as (i) Section 6.2 of the Operating Agreement states that "the prior <u>written approval</u> of a Required Interest of Members" is required for "any amendment" to the Operating Agreement and (ii) Section 11.1 similarly provides that the Operating Agreement may not be modified or amended "without the <u>written consent</u> of the Manager and the Members holding a Required Interest."

These facts present a clear basis for declaratory relief, including an order declaring that the Alleged Oral Agreement is nonexistent and unenforceable and that GVA Capital is required to distribute the Luminar Shares as set forth by the Operating Agreement. *See* Compl., Count I. Definition Services has likewise stated a valid claim for anticipatory repudiation based on GVA Capital's stated intention not to comply with the distribution provisions of the Operating Agreement. *See* Compl., Count II; *see also Kendall Associated Invs., LLC v. Mallard Creek Realty Advisors, LLC*, 2021 WL 736867, at *3 (Del. Ch. Feb. 25, 2021) (anticipatory repudiation "occurs when, before the time for performance has arisen, a party to a contract declares his intention not to fulfill a contractual duty") (citation omitted); *W. Willow-Bay Court, LLC v. Robino-Bay Court Plaza, LLC*, 2009 WL 458779, at *5 (Del. Ch. Feb. 23, 2009) ("A party may repudiate an obligation through statements . . . [or] through a voluntary and affirmative act rendering performance apparently or actually impossible.").

Finally, Definition Services has more than stated a colorable claim for breach of fiduciary duty by GVA Capital.  *See* Compl., Count III.  As the Manager of GVA Auto, GVA Capital owes Definition Services the "traditional fiduciary duties of loyalty and care."  *William Penn P'ship v. Saliba* 13 A.3d 749, 756 (Del. 2011). These duties have not been waived or modified in the Operating Agreement.  GVA Capital has breached its fiduciary duties by wrongfully asserting that the substantial gains on the Luminar investment should be distributed to GVA Capital itself, instead of Definition Services, and taking actions in furtherance of this assertion.  Indeed, it is difficult to conceive of a more self-interested breach of the duty of loyalty than the theft of hundreds of millions of dollars in investment gains by a management company from its own investor.  But that is exactly what GVA Capital is attempting to perpetrate here.

### B.    Definition Services will suffer Irreparable Harm without a TRO

As set forth in Cherkashin's Affidavit, Odrison's/Musaev's plan is to cause GVA Capital to promptly distribute the Luminar Shares to itself.  Thereafter, GVA Capital will distribute the vast bulk of the Luminar Shares directly to Musaev, providing Definition Services only enough shares to constitute a return of its invested capital.

Musaev is a Russian national, who lives in the Russian Federation and, upon information and belief, the United Arab Emirates.  If Musaev obtains possession of

the Luminar Shares, he is unlikely to respect an order from any court to return the shares or their equivalent value.  Indeed, Cherkashin—Musaev's longtime business partner—stated in his affidavit that Musaev is willing to ignore court orders.  *See* Compl. ¶ 47.

These circumstances plainly pose a threat of irreparable harm to Definition Services.  If Odrison/Musaev are permitted to carry out their plan, GVA Auto will be quickly drained of its sole asset, the Luminar Shares.  As a result, the value of Definition Services' 95% ownership interest in GVA Auto will be reduced to zero. GVA Capital will likewise be drained of value, as the vast majority of the Luminar Shares will be immediately transferred to Musaev and/or his affiliates.  At this point, Definition Services will be left with a claim for hundreds of millions of dollars against an entity that will be unable to satisfy any judgment.

The definition of irreparable injury is harm for which there can be "no adequate remedy at law."  *In re Cogent, Inc. S'holder Litig.*, 7 A.3d 487, 513 (Del. Ch. 2010).  Thus, where a defendant plans to dissipate assets, resulting in an insolvent or otherwise effectively judgement proof defendant, this Court has long held that threatened irreparable injury exists.  *See, e.g., Kansas City S. v. Grupo TMM, S.A.*, 2003 WL 22659332, at *5 (Del. Ch. Nov. 4, 2003) (finding that plaintiff "will suffer irreparable harm if the injunction does not issue, as TMM may be unable to satisfy a money judgment"); *Mitsubishi Power Sys. Ams., Inc. v. Babcock &*

*Brown Infrastructure Grp. US, LLC*, 2009 WL 1199588, at \*4-5 (Del. Ch. Apr. 24, 2009) (finding threat of irreparable injury where plaintiff had established likelihood that defendant would engage in fraudulent transfers of company assets); *Drawbridge Special Opportunities Fund LP v. PRC Williston LLC*, C.A. No. 9166-VCL, at 25 (Del. Ch. Dec. 23, 2013) (TRANSCRIPT) (noting irreparable harm exists where threatened transaction "would render an entity insolvent or create a substantial risk of insolvency"); *Destra Targeted Income Unit Inv. Tr. v. Parmar*, C.A. No. 13006-VCL, at 45 (Del. Ch. Jan. 25, 2017) (TRANSCRIPT) (finding threat of irreparable harm where defendant was likely to dissipate transaction proceeds, thereby rending him incapable of later satisfying a judgment).[5]

These authorities are directly applicable here.  Absent injunctive relief, Definition Services' valuable equity ownership of GVA Auto will be rendered worthless and Definitions Services will be left with nothing but a claim for damages against an entity incapable of satisfying the judgment.

Furthermore, the issues presented here are inextricably bound up in Delaware law and should be decided by a Delaware court.  This action concerns the enforcement of an operating agreement of a Delaware limited liability company

---

[5] *See also Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc.*, 222 F.3d 132, 139–41 (3d Cir. 2000) (reversing trial court because it failed to recognize that dissipation of assets "can render money damages inadequate, thereby necessitating equitable relief, especially when the dissipation will clearly result in the debtor's inability ultimately to make payment").

19

against its manager, GVA Capital.  The fact that Cherkashin has separately sought injunctive relief in the Cayman Islands does not dispel the threat of irreparable injury.  Indeed, the Cayman Islands court has not yet ruled on Cherkashin's claims or request for preliminary injunctive relief.  Moreover, Definition Services is not a party to the Cayman Islands action and, therefore, is unable to protect its interests in that court.  As such, this Court should decide the important issues raised by this proceeding.

### C.   The Balance of Hardships Favors Definition Services

Definition Services is seeking an order prohibiting GVA Capital from doing something the Operating Agreement already says it cannot do.  A party "suffer[s] no harm as a result of the enforcement of contractual provisions to which [it] agreed." *Vill. Green Hldg., LLC* v. *Holtzman*, 2018 WL 4849964, at *8 (Del. Ch. Oct. 5, 2018).  Furthermore, Definition Services merely seeks to preserve the status quo by requesting an order prohibiting any distribution or other transactions related to the Luminar Shares until this Court has an opportunity to decide the claims.  Such an order does not threaten any harm to GVA Capital.  By contrast, the absence of an injunction threatens great harm to Definition Services as it appears that GVA Capital (now under the control of Odrison/Musaev) will dissipate the Luminar Shares beyond the reach of this Court if not immediately restrained.

20

## II.   THE COURT SHOULD ORDER EXPEDITED PROCEEDINGS

Having satisfied the standard for entry of a temporary restraining order, Definition Services easily satisfies the similar standard for expedited proceedings. The Court will expedite proceedings where the movant has "articulated a sufficiently colorable claim and shown a sufficient possibility of a threatened irreparable injury." *See Giammargo* v. *Snapple Beverage Corp.*, 1994 WL 672698, at *2 (Del. Ch. Nov. 15, 1994). In applying this standard, the Court "traditionally has acted with a certain solicitude for plaintiffs" and "has followed the practice of erring on the side of more [expedited proceedings] rather than fewer." *Id*. Indeed, the Delaware Supreme Court has observed that "Delaware courts are always receptive to expediting any type of litigation in the interests of affording justice to the parties," and the Court of Chancery in particular is "renowned" for its "expedited decisionmaking." *Box v. Box*, 697 A.2d 395, 398-99 (Del. 1997).

For the reasons set forth above, Definition Services has alleged colorable claims and demonstrated threatened irreparable injury. Accordingly, this Court should grant Definition Services' motion for expedited proceedings with an expedited trial scheduled for October 2021.

## CONCLUSION

For the foregoing reasons, the Court should grant Definition Services' motions for temporary restraining order and expedited proceedings.

21

/s/ Brock E. Czeschin
Brock E. Czeschin (#3938)
Christian Roberts (#6694)
RICHARDS, LAYTON & FINGER,
P.A.
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
*Attorneys for Plaintiff Definition
Services Inc.*

Dated: April 26, 2021

Words: 4,772

EFiled: Apr 26 2021 04:06PM EDT
Transaction ID 66548167
Case No. 2021-0357

RICHARDS
LAYTON
FINGER

Christian C.F. Roberts
(302) 651-7616
CRoberts@rlf.com

April 26, 2021

**BY ELECTRONIC FILING**

Register in Chancery
Court of Chancery of the State of Delaware
Leonard L. Williams Justice Center
500 North King Street
Wilmington, Delaware 19801

Re:   ***Definition Services Inc. v. GVA Capital LTD,***
      **C.A. No. 2021-    -**

Dear Register in Chancery:

Plaintiff Definition Services Inc. ("Plaintiff"), today filed a Verified Complaint Seeking Temporary Restraining Order and Other Relief against Defendant GVA Capital LTD ("Defendant"). In connection therewith, Plaintiff will be using Brandywine Process Servers, Ltd., as Special Process Servers, to serve Defendant. I would appreciate it if someone from your office could prepare the appropriate summonses addressed as follows:

GVA Auto, LLC
Pursuant to 6 *Del. C.* § 18-109
c/o Harvard Business Services, Inc.
16192 Costal Hwy
Lewes, Delaware 19958

Register in Chancery
April 26, 2021
Page 2

I would greatly appreciate a phone call from your office when the summonses are prepared. If you have any questions concerning this request, please do not hesitate to contact me at (302) 651-7616.

Respectfully,

*/s/ Christian C.F. Roberts*

Christian C.F. Roberts (#6694)

Words: 112

EFiled: Apr 26 2021 04:06PM EDT
Transaction ID 66548167
Case No. 2021-0357

Christian C.F. Roberts
(302) 651-7616
CRoberts@rlf.com

April 26, 2021

**BY E-FILE & HAND DELIVERY**

The Honorable Andre G. Bouchard
Court of Chancery of the State of Delaware
Leonard L. Williams Justice Center
500 North King Street
Wilmington, Delaware  19801

> Re:   ***Definition Services Inc. v. GVA Capital LTD,***
> **C.A. No. 2021-   -_____**

Dear Chancellor Bouchard:

I write on behalf of Plaintiff in connection with the above-referenced action, which was filed today.  Enclosed are two courtesy copies of the Verified Complaint Seeking Temporary Restraining Order and Other Relief, Plaintiff's Motion for a Temporary Restraining Order, Motion for Expedited Proceedings, Opening Brief in Support of Its Motions for Temporary Restraining Order and Expedited Proceedings, and the accompanying papers for each of the foregoing.

Plaintiff respectfully requests that the Court assign this matter promptly so that it may present their motions for expedited proceedings and for a temporary restraining order at the Court's earliest convenience.

The Honorable Andre G. Bouchard
April 26, 2021
Page 2

      If Your Honor should have any questions, undersigned counsel remains

available at the Court's convenience.


Respectfully,

*/s/ Christian C.F. Roberts*

Christian C.F. Roberts (#6694)

Words: 112

**EFiled:  Apr 26 2021 05:33PM EDT**
**Transaction ID 66549434**
**Case No. 2021-0357-**

SUPPLEMENTAL INFORMATION PURSUANT TO RULE 3(A)
OF THE RULES OF THE COURT OF CHANCERY

The information contained herein is for the use by the Court for statistical and administrative purposes only. Nothing stated herein shall be deemed an admission by or binding upon any party.

1. Caption of Case:      ***Definition Services Inc. v. GVA Capital LTD***, **C.A. No. 2021-0357-___**

2. Date Filed:      **April 26, 2021**

3. Name and address of counsel for plaintiff(s):
      **Brock E. Czeschin (#3938)**
      **Christian C.F. Roberts (#6694)**
      **Richards Layton & Finger P.A.**
      **920 North King Street**
      **Wilmington, DE 19801**

4. Short statement and nature of claim asserted: **Plaintiff seeks to enjoin breach of Operating Agreement and recover damages for breaches of fiduciary duty and Operating Agreement.**

5. Substantive field of law involved (check one):
| | | |
|---|---|---|
| ____Administrative law | ____Labor law | ____Trusts, Wills and Estates |
| __X__Commercial law | ____Real Property | ____Consent trust petitions |
| ____Constitutional law | ____348 Deed Restriction | ____Partition |
| ___ Corporation law | ____Zoning | ____Rapid Arbitration (Rules 96,97) |
| ____Trade secrets/trade mark/or other intellectual property | | ____Other |

6. Related cases, including any Register of Wills matters (this requires copies of all documents in this matter to be filed with the Register of Wills):  **None**

7. Basis of court's jurisdiction (including the citation of any statute(s) conferring jurisdiction):
**6 *Del. C.* § 18-111; 6 *Del. C.* § 18-109; 10 *Del. C.* § 341; 10 *Del. C.* § 6501**

8. If the complaint seeks preliminary equitable relief, state the specific preliminary relief sought.
**Plaintiffs seeks a temporary restraining order enjoining Defendant from proceeding with self-interested distribution in breach of the Operating Agreement.**

9. If the complaint seeks a TRO, summary proceedings, a Preliminary Injunction, or Expedited Proceedings, check here  **X**  . (If #9 is checked, a Motion to Expedite <u>must</u> accompany the transaction.)

10. If the complaint is one that in the opinion of counsel should not be assigned to a Master in the first instance, check here and attach a statement of good cause.  **X**

                                              */s/ Brock E. Czeschin*
                                              Brock E. Czeschin (#3938)

EFiled: Apr 27 2021 11:43AM EDT
Transaction ID 66561237
Case No. 2021-0357-KSJM

Christian C.F. Roberts
(302) 651-7616
CRoberts@rlf.com

April 26, 2021

*4/27/21 - issued (.) 18-109
Sums to SPS (1 copy)*

**BY ELECTRONIC FILING**

Register in Chancery
Court of Chancery of the State of Delaware
Leonard L. Williams Justice Center
500 North King Street
Wilmington, Delaware 19801

     Re:   ***Definition Services Inc. v. GVA Capital LTD,***
           **C.A. No. 2021-  -**

Dear Register in Chancery:   *2021-0357-KSJM*

    Plaintiff Definition Services Inc. ("Plaintiff"), today filed a Verified Complaint Seeking Temporary Restraining Order and Other Relief against Defendant GVA Capital LTD ("Defendant"). In connection therewith, Plaintiff will be using Brandywine Process Servers, Ltd., as Special Process Servers, to serve Defendant. I would appreciate it if someone from your office could prepare the appropriate summonses addressed as follows:

GVA Auto, LLC
Pursuant to 6 *Del. C.* § 18-109
c/o Harvard Business Services, Inc.
16192 Costal Hwy
Lewes, Delaware 19958

*vly $

Register in Chancery
April 26, 2021
Page 2

I would greatly appreciate a phone call from your office when the summonses

are prepared.  If you have any questions concerning this request, please do not

hesitate to contact me at (302) 651-7616.

Respectfully,

/s/ Christian C.F. Roberts

Christian C.F. Roberts (#6694)

Words: 112

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| DEFINITION SERVICES INC., | ) |
| | ) |
| Plaintiff, | ) CA #: 2021-0357-KSJM |
| | ) |
| v. | ) **SUMMONS** |
| | ) Pursuant to 6 <u>Del.C.</u> Sec. 18-109(b) |
| GVA CAPITAL LTD., | ) |
| | ) |
| Defendant. | ) |

### THE STATE OF DELAWARE

**TO:   SPECIAL PROCESS SERVER – Brandywine Process Servers, Ltd.:**

**YOU ARE COMMANDED:**

    To summon the above-named defendants so that, within 20 days after service hereof upon defendants, exclusive of the day of service, defendants shall serve upon <u>Christian C.F. Roberts</u>, Esquire, plaintiff's attorney, whose address is <u>Richards Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801,</u> an answer to the complaint.

To serve upon defendants a copy hereof and of the complaint.

**TO THE ABOVE NAMED DEFENDANTS:**

    In case of your failure, within 20 days after service hereof upon you, exclusive of the day of service, to serve on plaintiff's attorney name above an answer to the complaint, judgment by default will be rendered against you for the relief demanded in the complaint.

Dated: April 27, 2021

_Susan Judge_
_____
Register in Chancery

DEFINITION SERVICES INC.,

Plaintiff,

v.

GVA CAPITAL LTD.,

Defendant.

**SUMMONS**

Please effectuate service upon:

1.  **GVA Capital Ltd.**

    At the registered agent for service of
    GVA Auto, LLC:

    c/o Harvard Business Services, Inc.
    16192 Coastal Hwy
    Lewes, DE 19958

    Pursuant to 6 <u>Del.C</u>. Sec. 18-109

SERVICE TO BE COMPLETED BY SPECIAL PROCESS SERVER –
Brandywine Process Servers, Ltd.

<u>Christian C.F. Roberts, Esquire</u>
Plaintiff's Attorney

EFiled:  Apr 28 2021 06:38PM EDT
Transaction ID 66596958
Case No. 2021-0357-KSJM

Christian C.F. Roberts
(302) 651-7616
CRoberts@rlf.com

April 28, 2021

**BY ELECTRONIC FILING**

Register in Chancery
Court of Chancery of the State of Delaware
Leonard L. Williams Justice Center
500 North King Street
Wilmington, Delaware 19801

Re:   ***Definition Services Inc. v. GVA Capital LTD,***
***C.A. No. 2021-0357-KSJM***

Dear Register in Chancery:

Plaintiff Definition Services Inc. ("Plaintiff"), filed a Verified Complaint Seeking Temporary Restraining Order and Other Relief against Defendant GVA Capital LTD ("GVA Capital") on April 26, 2021.  Trans. ID 66548167.  Service on GVA Capital was accomplished on April 28, 2021, by Special Process Server on the registered agent of GVA Auto, LLC.

Please complete service pursuant to 6 *Del. C.* § 18-109 on GVA Capital. Please send by registered mail one copy of the Verified Complaint Seeking Temporary Restraining Order and Other Relief and the ancillary documents filed therewith, the Motion for a Temporary Restraining Order and [proposed] order filed

Register in Chancery
April 28, 2021
Page 2

therewith, the Motion for Expedited Proceedings and [proposed] order filed

therewith, and Plaintiff's Opening Brief in support of its Motions for Temporary

Restraining Order and Expedited Proceedings, together with a statement that service

is being made pursuant to 6 Del. C. § 18-109, to GVA Capital at each of the

following addresses:

1. GVA Capital LTD
   c/o GVA Auto, LLC
   908 Broadway
   San Francisco, CA 94133

2. GVA Capital LTD
   906 Broadway
   San Francisco, CA 94177

I have enclosed with this letter three copies of the Verified Complaint Seeking

Temporary Restraining Order and Other Relief and ancillary documents filed

therewith, the Motion for a Temporary Restraining Order and [proposed] order filed

therewith, the Motion for Expedited Proceedings and [proposed] order filed

therewith, and Plaintiff's Opening Brief in support of its Motions for Temporary

Restraining Order and Expedited Proceedings.  If you have any questions concerning

this request, please do not hesitate to contact me at (302) 651-7616.

Register in Chancery
April 28, 2021
Page 3

Respectfully,

*/s/ Christian C.F. Roberts*

Christian C.F. Roberts (#6694)

Words: 256

EFiled:  Apr 28 2021 06:38PM EDT
Transaction ID 66556958
Case No. 2021-0357-KSJM

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| DEFINITION SERVICES INC., | ) | |
| | ) | |
| Plaintiff, | ) | CA #:  2021-0357-KSJM |
| | ) | |
| v. | ) | **SUMMONS** |
| | ) | Pursuant to 6 <u>Del.C.</u> Sec. 18-109(b) |
| GVA CAPITAL LTD., | ) | |
| | ) | |
| Defendant. | ) | |

**THE STATE OF DELAWARE**

**TO:    SPECIAL PROCESS SERVER – Brandywine Process Servers, Ltd.:**

**YOU ARE COMMANDED:**

     To summon the above-named defendants so that, within 20 days after service hereof upon defendants, exclusive of the day of service, defendants shall serve upon <u>Christian C.F. Roberts</u>, Esquire, plaintiff's attorney, whose address is <u>Richards Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801,</u> an answer to the complaint.

To serve upon defendants a copy hereof and of the complaint.

**TO THE ABOVE NAMED DEFENDANTS:**

     In case of your failure, within 20 days after service hereof upon you, exclusive of the day of service, to serve on plaintiff's attorney name above an answer to the complaint, judgment by default will be rendered against you for the relief demanded in the complaint.

Dated: April 27, 2021

*Susan Judge*

Register in Chancery

Case # 2021-0357-KSJM

DEFINITION SERVICES INC.,

Plaintiff,

v.

GVA CAPITAL LTD.,

Defendant.

**SUMMONS**

Please effectuate service upon:

1.   **GVA Capital Ltd.**

At the registered agent for service of
GVA Auto, LLC:

c/o Harvard Business Services, Inc.
16192 Coastal Hwy
Lewes, DE 19958

Pursuant to 6 <u>Del.C</u>. Sec. 18-109

SERVICE TO BE COMPLETED BY SPECIAL PROCESS SERVER –
Brandywine Process Servers, Ltd.

<u>Christian C.F. Roberts, Esquire</u>
Plaintiff's Attorney

# *RETURN OF SERVICE*

### IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

**CASE NO:**       2021-0357-KSJM

**SERVED:**        GVA CAPITAL LTD.
                   C/O GVA AUTO, LLC

**DOCUMENT:**      SUMMONS; COMPLAINT WITH EXHIBITS; MOTION FOR EXPEDITED PROCEEDINGS WITH PROPOSED ORDER;
                   TEMPORARY RESTRAINING ORDER & BRIEF IN SUPPORT OF TEMPORARY RESTRAINING ORDER WITH
                   PROPOSED ORDER; UNSWORN VERIFICATION; SUPPLEMENTAL INFORMATION SHEET WITH SUMMONS
                   INSTRUCTION LETTER; LETTER TO THE REGISTER IN CHANCERY

**ADDRESS:**       C/O HARVARD BUSINESS SERVICES, INC., 16192 COASTAL HIGHWAY, LEWES, DE 19958

**DATE:**          04/28/2021

# MANNER OF SERVICE

☒    **PERSONAL:**       ACCEPTED BY:   JEWELL MCNEELY (AUTHORIZED PERSON AT REGISTERED AGENT)

☐    **SUBSTITUTE:**

☐    **NO SERVICE:**

_____
GRANVILLE MORRIS

BRANDYWINE PROCESS SERVERS, LTD
PO BOX 1360
WILMINGTON DE 19899
302-475-2600

SWORN TO BEFORE ME ON   04/28/2021

NOTARY PUBLIC   KEVIN DUNN
                NOTARY PUBLIC
                STATE OF DELAWARE
                My Commission Expires   August 25, 2022

*BRANDYWINE PROCESS SERVERS, LTD  PO BOX 1360  WILMINGTON, DE 19899*

EFiled:  May 05 2021 03:18PM EDT
Transaction ID 66574578
Case No. 2021-0357-KSJM

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

Definition Services Inc.

vs.

GVA Capital LTD

CA # 2021-0357-KSJM

REGISTER'S CERTIFICATE

I, Susan Judge, Court Administrator, do hereby CERTIFY that I

mailed certified copies of the complaint, a copy of the summons and letter

to each named defendant at their last known address, (if one was given), as

well as the principal place of business of  GVA Capital LTD, c/o GVA

Auto, LLC, 908 Broadway, San Francisco, CA  94133

by registered mail, return receipt requested.

IN TESTIMONY WHEREOF, I have

hereunto set my hand and affixed the

seal of this Court at Wilmington, this

4th Day of  May        2021

*Susan Judge*

Court Administrator

CA#2021-0357KSJM

Postage $61.90

Certs. $50.00

Letters $40.00

**OFFICE OF THE REGISTER IN CHANCERY**
**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

500 N. King Street
Suite 11600
Wilmington, DE  19801

302-255-0544
FAX: 302-255-2213

May 4, 2021

GVA Capital LTD
c/o GVA Auto, LLC
908 Broadway
San Francisco, CA  94133

RE:  Civil Action # 2021-0357-KSJM

Dear Sir or Madam:

Service of the enclosed true and attested copy of process is made pursuant to

6 Del.C. §18-109.

Very truly yours,

Susan Judge
Susan Judge

**OFFICE OF THE REGISTER IN CHANCERY**
**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

500 N. King Street
Suite 11600
Wilmington, DE   19801

302-255-0544
FAX: 302-255-2213

May 4, 2021

GVA Capital LTD
906 Broadway
San Francisco, CA   94177

RE:   Civil Action # 2021-0357-KSJM

Dear Sir or Madam:

Service of the enclosed true and attested copy of process is made pursuant to

6 <u>Del.C.</u> §18-109.

Very truly yours,

Susan Judge
Susan Judge



Christian C.F. Roberts
(302) 651-7616
CRoberts@rlf.com

April 28, 2021

**BY ELECTRONIC FILING**

Register in Chancery
Court of Chancery of the State of Delaware
Leonard L. Williams Justice Center
500 North King Street
Wilmington, Delaware 19801

      Re:    ***Definition Services Inc. v. GVA Capital LTD,***
               **C.A. No. 2021-0357-KSJM**

Dear Register in Chancery:

      Plaintiff Definition Services Inc. ("Plaintiff"), filed a Verified Complaint

Seeking Temporary Restraining Order and Other Relief against Defendant GVA

Capital LTD ("GVA Capital") on April 26, 2021. Trans. ID 66548167. Service on

GVA Capital was accomplished on April 28, 2021, by Special Process Server on the

registered agent of GVA Auto, LLC.

      Please complete service pursuant to 6 *Del. C.* § 18-109 on GVA Capital.

Please send by registered mail one copy of the Verified Complaint Seeking

Temporary Restraining Order and Other Relief and the ancillary documents filed

therewith, the Motion for a Temporary Restraining Order and [proposed] order filed

Register in Chancery
April 28, 2021
Page 2

therewith, the Motion for Expedited Proceedings and [proposed] order filed therewith, and Plaintiff's Opening Brief in support of its Motions for Temporary Restraining Order and Expedited Proceedings, together with a statement that service is being made pursuant to 6 Del. C. § 18-109, to GVA Capital at each of the following addresses:

(1) GVA Capital LTD
c/o GVA Auto, LLC
908 Broadway
San Francisco, CA 94133

(2) GVA Capital LTD
906 Broadway
San Francisco, CA 94177

I have enclosed with this letter three copies of the Verified Complaint Seeking Temporary Restraining Order and Other Relief and ancillary documents filed therewith, the Motion for a Temporary Restraining Order and [proposed] order filed therewith, the Motion for Expedited Proceedings and [proposed] order filed therewith, and Plaintiff's Opening Brief in support of its Motions for Temporary Restraining Order and Expedited Proceedings. If you have any questions concerning this request, please do not hesitate to contact me at (302) 651-7616.

RLF1 25190078v.1

Register in Chancery
April 28, 2021
Page 3

Respectfully,

*/s/ Christian C.F. Roberts*

Christian C.F. Roberts (#6694)

Words: 256

**UNITED STATES POSTAL SERVICE®**

**Firm Mailing Book For Accountable Mail**

Name and Address of Sender

REGISTER IN CHANCERY
500 N. KING ST.
SUITE 11600
WILMINGTON, DE 19801

CA#2021-0357-KSJM

Check type of mail or service

- [x] Adult Signature Required
- [ ] Adult Signature Restricted Delivery
- [ ] Certified Mail
- [ ] Certified Mail Restricted Delivery
- [ ] Collect on Delivery (COD)
- [ ] Insured Mail
- [ ] Priority Mail

- [ ] Priority Mail Express
- [x] Registered Mail
- [ ] Return Receipt for Merchandise
- [ ] Signature Confirmation
- [ ] Signature Confirmation Restricted Delivery

**Affix Stamp Here**
(for additional copies of this receipt).
Postmark with Date of Receipt.

FILED
2021 MAY -5  A 9:56
CC RIC

| | USPS Tracking/Article Number | Addressee (Name, Street, City, State, & ZIP Code™) | Postage | (Extra Service) Fee | Handling Charge | Actual Value if Registered | Insured Value | Due Sender if COD | ASR Fee | ASRD Fee | RD Fee | RR Fee | SC Fee | SCRD Fee | SH Fee |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. | RF 288 852 567 US | GVA Capital LTD C/O GVA Auto, LLC 908 Broadway San Francisco, CA 94133 | $15.20 $12.90 | | | | | | | | | $2.85 | | | |
| 2. | RF 288 852 575 US | GVA Capital LTD 906 Broadway San Francisco, CA 94177 | | | | | | | | | | | | | |
| 3. | | Both mailings sent pursuant to 6 Del.C. 18-109 | | | | | | | | | | | | | |
| 4. | | | | | | | | | | | | | | | |
| 5. | | | | | | | | | | | | | | | |
| 6. | | | | | | | | | | | | | | | |
| 7. | | | | | | | | | | | | | | | |
| 8. | | | | | | | | | | | | | | | |

SIDNEY SQUARE STA
WILMINGTON, DE
MAY 04 2021
19801
USPS

| Total Number of Pieces Listed by Sender | Total Number of Pieces Received at Post Office | Postmaster, Per (Name of receiving employee) |
|---|---|---|
| | | Complete in Ink |

PS Form **3877**, January 2017 (Page 1 of 2)
PSN 7530-02-000-9098

Privacy Notice: For more information on USPS privacy policies, visit usps.com/privacypolicy.

EFiled:  May 17 2021 08:17PM EDT
Transaction ID 66608528
Case No. 2021-0357-KSJM

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

DEFINITION SERVICES INC.,            )
                                     )
            Plaintiff,               )
                                     )
    v.                               )        C.A. No. 2021-0357-KSJM
                                     )
GVA CAPITAL LTD.,                    )
                                     )
            Defendant.               )

## [PROPOSED] STIPULATED
## STATUS QUO ORDER

WHEREAS, plaintiff Definition Services Inc. ("Definition Services") and defendant GVA Capital Ltd. ("GVA Capital") (together, the "Parties") have agreed to preserve and maintain the status quo with regard to their rights and interests in GVA Auto LLC ("GVA Auto") and its assets pending final resolution of this action;

WHEREAS, GVA Auto currently owns as its principal asset shares of common stock of Luminar Technologies, Inc. (the "Luminar Shares"), which are subject to lockup restrictions until on or about June 1, 2021;

WHEREAS, Vladimir Smirnov's Net Investment in GVA Auto is $1.5 million and his Percentage Interest in GVA Auto is 5%;

WHEREAS, Definition Services' Net Investment in GVA Auto is $18.5 million;

WHEREAS, other than as set forth in this Stipulation, the Parties disagree as to the appropriate distribution of the Luminar Shares;

WHEREAS, in connection with separate proceedings in the Cayman Islands (the "Cayman Proceedings"), GVA Capital has undertaken not to "[m]ake any distribution or transfer (or give instructions to any third party to cause such distribution or transfer) of the assets of GVA Auto, LLC, including the interest that GVA Auto, LLC has in any securities issued by Luminar Technologies, Inc." (the "Undertaking");

WHEREAS, the Parties have agreed that, once the lockup restrictions on the Luminar Shares expire and the Undertaking is modified or dissolved, the Luminar Shares shall be transferred to an escrow agent jointly designated by the Parties; and

WHEREAS, Definition Services has agreed to pay the costs associated with the escrow agent and escrow account;

IT IS HEREBY STIPULATED AND AGREED, by the parties hereto, subject to the approval of the Court, that:

1.      Except as expressly provided herein, GVA Capital, in its capacity as Manager of GVA Auto or otherwise, shall not undertake, authorize, approve, or facilitate any direct or indirect distribution, sale, transfer, contribution, pledge, encumbrance, or other transaction involving or implicating the Luminar Shares, or any related rights or interests held by GVA Auto.

2.     The Parties shall ensure that, upon the expiration of the lockup restrictions on the Luminar Shares and the modification or dissolution of the Undertaking, the Luminar Shares will be transferred to an account (the "Escrow Account") established by an escrow agent (the "Escrow Agent") jointly designated by the Parties.  Except as otherwise provided in this Order, the Escrow Agent will be authorized and directed to hold the Luminar Shares in the Escrow Account until it receives either joint instructions from the Parties or an order of the Court directing how the Luminar Shares are to be distributed.

3.     GVA Capital shall promptly seek to modify or dissolve the Undertaking as necessary to permit the transfer of the Luminar Shares to the Escrow Account on or before June 1, 2021.  In the event that the Undertaking has not been modified or dissolved as necessary to permit the transfer of the Luminar Shares to the Escrow Account prior to the expiration of the lockup restrictions, then the Parties agree to take steps to ensure that the Luminar Shares shall remain with the Luminar transfer agent and/or will be held in another secure location mutually agreed upon by the Parties until the Luminar Shares can transferred to the Escrow Account.

4.     Notwithstanding anything to the contrary herein, within 30 days of receipt of the Luminar Shares by the Escrow Agent, Definition Services and GVA Capital shall agree to a written resolution declaring and instructing GVA Auto to make an in-kind distribution of all of the Luminar Shares to the Members of GVA

Auto in accordance with Section 5.2 and 5.3 of the Operating Agreement (the "Permitted Distribution"), in which the Escrow Agent shall be jointly instructed to distribute the Luminar Shares as follows:

(a) the number of Luminar Shares to be distributed to Mr. Smirnov in such Permitted Distribution will be deposited into an account designated in writing by Mr. Smirnov;

(b) the number of Luminar Shares to be distributed to GVA Capital in respect of the Manager Carried Interest attributable to the Luminar Shares to be distributed to Mr. Smirnov in such Permitted Distribution will be deposited into an account designated in writing by GVA Capital;

(c) the number of Luminar Shares to be distributed to Definition Services in such Permitted Distribution equal to its Net Investment amount ($18,500,000) will be deposited into an account designated in writing by Definition Services; and

 (d) the remaining Luminar Shares to be distributed in the Permitted Distribution shall remain in the Escrow Account pending joint instructions by the Parties or an order of the Court.

5.     For purposes of the Permitted Distribution, the fair market value of each of the Luminar Shares shall be deemed to be equal to the closing price of the shares of common stock of Luminar Technologies, Inc. as quoted on The Nasdaq Stock

Market LLC at the close of business on the business day prior to the date the Permitted Distribution is duly declared by GVA Capital.  GVA Capital shall take such steps as necessary to ensure that its declaration of the Permitted Distribution does not violate the Undertaking and is valid and enforceable under the GVA Auto, LLC Operating Agreement and GVA Capital's Memorandum and Articles of Association.  The Parties shall provide joint instructions to the Escrow Agent to distribute the Luminar Shares in accordance with this Order within two business days of GVA Capital's declaration of the Permitted Distribution.

6.      Following the Permitted Distribution, the restrictions of this Order shall no longer apply to those Luminar Shares that are distributed in accordance with Paragraph 3(a), (b), and (c).

7.      Except as expressly provided herein, until the final resolution of this action, the Parties shall not undertake any action with respect to GVA Auto outside of the ordinary course of business.

8.      The restrictions imposed by this Order shall apply to the Parties and their affiliates, including, but not limited to, their members, managers, directors, employees, agents, or other persons under their control or acting at their direction.

9.      The restrictions imposed by this Order may be waived on a case-by-case basis by the prior written agreement of counsel of record in this action for both (a) Definition Services and (b) GVA Capital.

10.     The Parties' agreement to this Order is without prejudice to the Parties' rights, claims, arguments and defenses in the action, nor will it be deemed an admission by any Party or an adjudication by the Court of the merits of any of the Parties' rights, claims, arguments or defenses in this action.

11.     The Parties may petition the Court at any time to vacate or modify this Order.  Unless otherwise modified or vacated by the Court, this Order shall remain in full force and effect until the final resolution of this action.

| ROSS ARONSTAM & MORITZ LLP | RICHARDS, LAYTON & FINGER, P.A. |
|---|---|
| */s/ Adam Gold*_____ | */s/ Brock E. Czeschin*_____ |
| Bradley R. Aronstam (#5129) | Brock E. Czeschin (#3938) |
| Adam Gold (#6412) | Christian Roberts (#6694) |
| 100 South West St, Suite 400 | One Rodney Square |
| Wilmington, DE 19801 | 920 North King Street |
| (302) 576-1600 | Wilmington, Delaware 19801 |
| | (302) 651-7700 |
| *Of Counsel*: | |
| | *Attorneys for Plaintiff Definition Services Inc.* |

Elliot R. Peters
David J. Silbert
Nicholas D. Marais
Tara M. Rangchi
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, California 94111

*Attorney for Defendant GVA Capital
Ltd.*

Dated: May 17, 2021


SO ORDERED this _____ day of _____, 2021.


_____
Vice Chancellor Kathaleen St. Jude McCormick

EFiled:  May 18 2021 09:56AM EDT
Transaction ID 66609157
Case No. 2021-0357-KSJM

### IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DEFINITION SERVICES, INC. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 2021-0357-KSJM |
| | ) | |
| GVA CAPITAL LTD. | ) | |
| | ) | |
| Defendants. | ) | |

### ENTRY OF APPEARNACE

PLEASE ENTER THE APPEARANCE of Ryan D. Stottmann of Morris,

Nichols, Arsht & Tunnell LLP on behalf of Interested Non-Party Pavel Cherkashin

the above-captioned action.

MORRIS, NICHOLS, ARSHT &
  TUNNELL LLP

OF COUNSEL:

Kathleen Goodhart
Amy M. Smith
COOLEY LLP
101 California Street, 5th Floor
San Francisco, CA  94111-5800
(415) 693-2000

May 18, 2021

*/s/ Ryan D. Stottmann*
Ryan D. Stottmann (#5237)
1201 N. Market Street
Wilmington, DE  19801
*Attorney for Interested Non-Party*
*Pavel Cherkashinin*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 18, 2021, copies of the foregoing documents were

served upon the following counsel of record via File &Serve*Xpress*:

Brock E. Czeschin, Esquire
Christian C. F. Roberts, Esquire
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE  19801


*/s/ Ryan D. Stottmann*
Ryan D. Stottmann (#5237)

EFiled:  May 18 2021 09:56AM EDT
Transaction ID 66609157
Case No. 2021-0357-KSJM

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE  19899-1347
————
(302) 658-9200
(302) 658-3989 FAX

RYAN D. STOTTMANN
(302) 351-9430
(302) 425-4676 FAX
rstottmann@morrisnichols.com

May 18, 2021

**BY E-FILING AND HAND DELIVERY**

Chancellor Kathaleen S. McCormick
Chancery Court
Leonard L. Williams Justice Center
500 North King Street
Wilmington, DE  19801

> Re:   *Definition Services, Inc. v. GVA Capital Ltd.*
>        C.A. No. 2021-0357-KSJM

Dear Chancellor McCormick:

We represent non-party Pavel Cherkashin, and we write with respect to the [Proposed] Stipulated Status Quo Order ("Proposed Order") filed last night by Plaintiff Definition Services, Inc. ("Definition") and Defendant GVA Capital Ltd. ("GVA Capital") (collectively, the "Parties").  The Proposed Order fails to appropriately account for Mr. Cherkashin's rights and interests in the April 30, 2021 order of the Grand Court of the Cayman Islands issued in *Cherkashin et al. v. GVA Capital Ltd. & Odrison Investments Limited*, No. FSD 94 of 2021 (NSJ) (the "Cayman Court Order").

Chancellor Kathaleen S. McCormick
May 18, 2021
Page 2

**Background**

   In his role as a director of GVA Capital, the manager of GVA Auto LLC ("GVA Auto"), Mr. Cherkashin oversaw the management of GVA Auto and its shares of common stock of Luminar Technologies, Inc. ("Luminar Shares").  As detailed in Definition's complaint, Mr. Cherkashin filed suit in the Cayman Islands court (the "Cayman Proceeding") seeking emergency relief to enjoin any transfer of GVA Auto's assets and preserve the Luminar Shares until a court could determine the proper distribution to shareholders.  Pursuant to the GVA Auto Operating Agreement, GVA Capital is entitled to a 10% carried interest in distributions made to GVA Auto shareholders. Mr. Cherkashin is a shareholder of GVA Capital and entitled to 35% of the GVA Capital carried interest, pursuant to the GVA Capital Articles of Association ("Articles").

   As a result of Mr. Cherkashin's filings in the Grand Court, on April 23, 2021, GVA Capital agreed to a series of undertakings, including that it would not "make any distribution or transfer (or give instructions to any third party to cause such distribution or transfer) of the assets of GVA Auto, LLC, including the interest that GVA Auto, LLC has in any securities issued by Luminar Technologies, Inc." The Grand Court adopted GVA Capital's undertakings, resulting in the Cayman Court Order, attached hereto as Exhibit 1.

Chancellor Kathaleen S. McCormick
May 18, 2021
Page 3

**The Proposed Order**

      Although the Proposed Order is presented to the Court as a "status quo" order, it is not.  To the contrary, it is a request of this Court to bless a stipulation by the Parties that is contrary to, and contemplates the revision of, the existing Cayman Court Order, and it proposes a distribution of shares to certain parties and non-parties, but not to Mr. Cherkashin.

      In the Proposed Order, the Parties agree to transfer all Luminar Shares to an escrow account designated by the Parties ("Escrow Account"), and then authorize distribution of Luminar Shares to:

(1)    GVA Auto stockholder Vladimir Smirnov (in proportion to his 5% share of GVA Auto);

(2)    GVA Capital (in the amount attributable to its Manager Carried Interest for Mr. Smirnov's distribution, as defined in the Proposed Order);

(3)    Definition Services (in the amount equal to its Net Investment, as defined in the Proposed Order)

(¶ 4.)  The Parties acknowledge that the Cayman Court Order prohibits any transfer or distribution of the Luminar Shares, but the Proposed Order contemplates that GVA Capital will seek to modify or dissolve its "undertaking" in the Cayman Islands

Chancellor Kathaleen S. McCormick
May 18, 2021
Page 4

which, in fact, is incorporated in an order of the Grand Court. (*See* Proposed Order

¶¶ 2, 3, 5.)  Recognizing the possibility that the Grand Court may refuse to modify

the Cayman Court Order, Paragraph 3 of the Proposed Order remarkably asserts that

the Parties will nevertheless transfer the Luminar Shares to "another secure location

mutually agreed upon by the Parties."

       GVA Capital's apparent goal in seeking to revise, dissolve or ignore

the Cayman Court Order is to gain control over the Luminar Shares without

distributing the carried interest associated with those shares to Mr. Cherkashin

pursuant to the Articles.  If that were not the case, GVA Capital would agree to Mr.

Cherkashin's request of the Parties that the Escrow Account contemplated by the

Proposed Order would also be to the benefit of Mr. Cherkashin, and the Luminar

Shares would not be distributed from the Escrow Account without Mr. Cherkashin's

consent.

       Mr. Cherkashin understands that Definition Services is agreeable to an

order that requires Mr. Cherkashin's consent for transfer of the Luminar Shares out

of the Escrow Account.  GVA Capital's agreement to do so would result in an order

that could be jointly presented to the Grand Court of the Cayman Islands, as well as

to this Court.  Instead, GVA Capital asks this Court to issue an order that expressly

Chancellor Kathaleen S. McCormick
May 18, 2021
Page 5

contemplates deviation from or violation of the existing Cayman Court Order to which GVA Capital is bound.

Mr. Cherkashin is not opposed to the Luminar Shares being transferred into the contemplated Escrow Account if the Proposed Order appropriately accounts for Mr. Cherkashin's interests. Mr. Cherkashin respectfully requests that the Court modify the Proposed Order to require that any transfer of the Luminar Shares out of the Escrow Account will require Mr. Cherkashin's, in addition to the Parties', approval.

As always, counsel are available at the Court's convenience, including at what we understand to be the hearing currently scheduled for May 21 at 11:00 a.m.

Respectfully,

*/s/ Ryan D. Stottmann*

Ryan D. Stottmann (#5237)

Words: 821

RDS
Enclosure
cc:   Brock E. Czeschin, Esquire (via File&Serve*Xpress*)
      Christian C. F. Roberts, Esquire (via File&Serve*Xpress*)

EFiled:  May 18 2021 09:56AM EDT
Transaction ID 66609157
Case No. 2021-0357-KSJM

# EXHIBIT 1



**IN THE GRAND COURT OF THE CAYMAN ISLANDS
FINANCIAL SERVICES DIVISION**

**CAUSE NO: FSD 94 OF 2021 (NSJ)**

**BETWEEN:**

         (1)    **PAVEL CHERKASHIN**
         (2)    **PAVEL CHERKASHIN (DERIVATIVELY ON BEHALF OF GVA CAPITAL LTD)**

**PLAINTIFFS**

**AND:**

         (1)    **GVA CAPITAL LTD**
         (2)    **ODRISON INVESTMENTS LIMITED**

**DEFENDANTS**

**ORDER BY CONSENT**

**UPON** the hearing of the Plaintiffs' *Ex Parte* Summons dated 19 April 2021 (the **Summons**)

**AND UPON** hearing counsel for the Plaintiffs, and there being no appearance by the Defendants

**AND UPON** the Court reading a letter dated 23 April 2021 from Harney Westwood & Riegels, the attorneys for the First Defendant GVA Capital Ltd (**GVA**), to KSG, the

attorneys for the Plaintiffs, by which GVA offered, without making any admission and without prejudice to its position, to undertake to the Court that it shall not:

1. Make any distribution or transfer (or give instructions to any third party to cause such distribution or transfer) of the assets of GVA Auto, LLC, including the interest that GVA Auto, LLC has in any securities issued by Luminar Technologies, Inc.; and

2. Issue or cause to be issued any further shares or equity interests, or any rights or interests capable of becoming a share or equity interest, in GVA,

until the conclusion of the *inter partes* hearing of the Summons (the **Undertakings**)

**AND UPON** the Court making no determinations or findings in respect of the Plaintiffs' allegations against GVA, and being willing to accept the Undertakings but indicating that it is appropriate that the Undertakings be incorporated into an order of the Court

**IT IS HEREBY ORDERED AND DIRECTED** that:

1. The *ex parte* hearing of the Summons be adjourned to allow the Plaintiffs and GVA to incorporate the Undertakings into an order of the Court;

2. In the event that GVA does not agree to incorporate the Undertakings into an order of the Court, the Plaintiffs have leave to restore the Summons on an *ex parte* basis on 1 business days' notice;

3. The Plaintiffs and GVA have liberty to apply for directions in respect of the *inter partes* hearing Summons; and

4. Costs reserved.



This Order was filed by KSG, attorneys for the Plaintiffs, whose address for service is 4th Floor Harbour Centre, 42 North Church Street, PO Box 2255, Grand Cayman KY1-1107, Cayman Islands [JK/MR/2101]

**AND IT IS HEREBY NOTED**, by this Order and in satisfaction of paragraph 1 above, that the Court accepts the Undertakings.

**DATED** the ___30___ day of April , 2021

**FILED** the ___30___ day of April , 2021

_____
**THE HON. JUSTICE SEGAL**
**JUDGE OF THE GRAND COURT**



This Order was filed by KSG, attorneys for the Plaintiffs, whose address for service is 4th Floor Harbour Centre, 42 North Church Street, PO Box 2255, Grand Cayman KY1-1107, Cayman Islands [JK/MR/2101]

Approved as to form and content:

**KSG**
Attorneys for the Plaintiffs

**HARNEY WESTWOOD & RIEGELS**
Attorneys for the First Defendant

This Order was filed by KSG, attorneys for the Plaintiffs, whose address for service is 4th Floor Harbour Centre, 42 North Church Street, PO Box 2255, Grand Cayman KY1-1107, Cayman Islands [JK/MR/2101]

**GRANTED**

EFiled:  May 18 2021 11:23AM EDT
Transaction ID 66609811
~~Case No. 2021-0357-KSJM~~

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DEFINITION SERVICES INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2021-0357-KSJM |
| | ) | |
| GVA CAPITAL LTD., | ) | |
| | ) | |
| Defendant. | ) | |

## [PROPOSED] STIPULATED
## <u>STATUS QUO ORDER</u>

WHEREAS, plaintiff Definition Services Inc. ("Definition Services") and defendant GVA Capital Ltd. ("GVA Capital") (together, the "Parties") have agreed to preserve and maintain the status quo with regard to their rights and interests in GVA Auto LLC ("GVA Auto") and its assets pending final resolution of this action;

WHEREAS, GVA Auto currently owns as its principal asset shares of common stock of Luminar Technologies, Inc. (the "Luminar Shares"), which are subject to lockup restrictions until on or about June 1, 2021;

WHEREAS, Vladimir Smirnov's Net Investment in GVA Auto is $1.5 million and his Percentage Interest in GVA Auto is 5%;

WHEREAS, Definition Services' Net Investment in GVA Auto is $18.5 million;

WHEREAS, other than as set forth in this Stipulation, the Parties disagree as to the appropriate distribution of the Luminar Shares;

WHEREAS, in connection with separate proceedings in the Cayman Islands (the "Cayman Proceedings"), GVA Capital has undertaken not to "[m]ake any distribution or transfer (or give instructions to any third party to cause such distribution or transfer) of the assets of GVA Auto, LLC, including the interest that GVA Auto, LLC has in any securities issued by Luminar Technologies, Inc." (the "Undertaking");

WHEREAS, the Parties have agreed that, once the lockup restrictions on the Luminar Shares expire and the Undertaking is modified or dissolved, the Luminar Shares shall be transferred to an escrow agent jointly designated by the Parties; and

WHEREAS, Definition Services has agreed to pay the costs associated with the escrow agent and escrow account;

IT IS HEREBY STIPULATED AND AGREED, by the parties hereto, subject to the approval of the Court, that:

1.      Except as expressly provided herein, GVA Capital, in its capacity as Manager of GVA Auto or otherwise, shall not undertake, authorize, approve, or facilitate any direct or indirect distribution, sale, transfer, contribution, pledge, encumbrance, or other transaction involving or implicating the Luminar Shares, or any related rights or interests held by GVA Auto.

2.     The Parties shall ensure that, upon the expiration of the lockup restrictions on the Luminar Shares and the modification or dissolution of the Undertaking, the Luminar Shares will be transferred to an account (the "Escrow Account") established by an escrow agent (the "Escrow Agent") jointly designated by the Parties.  Except as otherwise provided in this Order, the Escrow Agent will be authorized and directed to hold the Luminar Shares in the Escrow Account until it receives either joint instructions from the Parties or an order of the Court directing how the Luminar Shares are to be distributed.

3.     GVA Capital shall promptly seek to modify or dissolve the Undertaking as necessary to permit the transfer of the Luminar Shares to the Escrow Account on or before June 1, 2021.  In the event that the Undertaking has not been modified or dissolved as necessary to permit the transfer of the Luminar Shares to the Escrow Account prior to the expiration of the lockup restrictions, then the Parties agree to take steps to ensure that the Luminar Shares shall remain with the Luminar transfer agent and/or will be held in another secure location mutually agreed upon by the Parties until the Luminar Shares can transferred to the Escrow Account.

4.     Notwithstanding anything to the contrary herein, within 30 days of receipt of the Luminar Shares by the Escrow Agent, Definition Services and GVA Capital shall agree to a written resolution declaring and instructing GVA Auto to make an in-kind distribution of all of the Luminar Shares to the Members of GVA

Auto in accordance with Section 5.2 and 5.3 of the Operating Agreement (the "Permitted Distribution"), in which the Escrow Agent shall be jointly instructed to distribute the Luminar Shares as follows:

(a) the number of Luminar Shares to be distributed to Mr. Smirnov in such Permitted Distribution will be deposited into an account designated in writing by Mr. Smirnov;

(b) the number of Luminar Shares to be distributed to GVA Capital in respect of the Manager Carried Interest attributable to the Luminar Shares to be distributed to Mr. Smirnov in such Permitted Distribution will be deposited into an account designated in writing by GVA Capital;

(c) the number of Luminar Shares to be distributed to Definition Services in such Permitted Distribution equal to its Net Investment amount ($18,500,000) will be deposited into an account designated in writing by Definition Services; and

 (d) the remaining Luminar Shares to be distributed in the Permitted Distribution shall remain in the Escrow Account pending joint instructions by the Parties or an order of the Court.

5.      For purposes of the Permitted Distribution, the fair market value of each of the Luminar Shares shall be deemed to be equal to the closing price of the shares of common stock of Luminar Technologies, Inc. as quoted on The Nasdaq Stock

Market LLC at the close of business on the business day prior to the date the Permitted Distribution is duly declared by GVA Capital. GVA Capital shall take such steps as necessary to ensure that its declaration of the Permitted Distribution does not violate the Undertaking and is valid and enforceable under the GVA Auto, LLC Operating Agreement and GVA Capital's Memorandum and Articles of Association. The Parties shall provide joint instructions to the Escrow Agent to distribute the Luminar Shares in accordance with this Order within two business days of GVA Capital's declaration of the Permitted Distribution.

6.      Following the Permitted Distribution, the restrictions of this Order shall no longer apply to those Luminar Shares that are distributed in accordance with Paragraph 3(a), (b), and (c).

7.      Except as expressly provided herein, until the final resolution of this action, the Parties shall not undertake any action with respect to GVA Auto outside of the ordinary course of business.

8.      The restrictions imposed by this Order shall apply to the Parties and their affiliates, including, but not limited to, their members, managers, directors, employees, agents, or other persons under their control or acting at their direction.

9.      The restrictions imposed by this Order may be waived on a case-by-case basis by the prior written agreement of counsel of record in this action for both (a) Definition Services and (b) GVA Capital.

10.     The Parties' agreement to this Order is without prejudice to the Parties' rights, claims, arguments and defenses in the action, nor will it be deemed an admission by any Party or an adjudication by the Court of the merits of any of the Parties' rights, claims, arguments or defenses in this action.

11.     The Parties may petition the Court at any time to vacate or modify this Order.  Unless otherwise modified or vacated by the Court, this Order shall remain in full force and effect until the final resolution of this action.


ROSS ARONSTAM & MORITZ LLP

*/s/ Adam Gold*
Bradley R. Aronstam (#5129)
Adam Gold (#6412)
100 South West St, Suite 400
Wilmington, DE 19801
(302) 576-1600

*Of Counsel*:


RICHARDS, LAYTON & FINGER, P.A.

*/s/ Brock E. Czeschin*
Brock E. Czeschin (#3938)
Christian Roberts (#6694)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700

*Attorneys for Plaintiff Definition Services Inc.*

Elliot R. Peters
David J. Silbert
Nicholas D. Marais
Tara M. Rangchi
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, California 94111

*Attorney for Defendant GVA Capital
Ltd.*

Dated: May 17, 2021


     SO ORDERED this _____ day of _____, 2021.


       _____
       Vice Chancellor Kathaleen St. Jude McCormick

This document constitutes a ruling of the court and should be treated as such.

| | |
|---:|:---|
| **Court:** | DE Court of Chancery Civil Action |
| **Judge:** | Kathaleen St Jude McCormick |
| **File & Serve Transaction ID:** | 66608528 |
| **Current Date:** | May 18, 2021 |
| **Case Number:** | 2021-0357-KSJM |
| **Case Name:** | Definition Services Inc. v. GVA Capital LTD. |
| **Court Authorizer:** | Kathaleen St Jude McCormick |

**/s/ Judge Kathaleen St Jude McCormick**

**EFiled:  May 21 2021 11:47AM EDT**
**Transaction ID 66609955**
**Case No. 2021-0357-KSJM**

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DEFINITION SERVICES INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2021-0357-KSJM |
| | ) | |
| GVA CAPITAL LTD., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ENTRY OF APPEARANCE

Please enter the appearances of Bradley R. Aronstam and Adam D. Gold of Ross Aronstam & Moritz LLP as counsel on behalf of Defendant GVA Capital Ltd. in the above-captioned action.

ROSS ARONSTAM & MORITZ LLP

*/s/ Adam D. Gold*
Bradley R. Aronstam (Bar No. 5129)
Adam D. Gold (Bar No. 6412)
100 S. West Street, Suite 400
Wilmington, Delaware  19801
(302) 576-1600

*Attorneys for Defendant GVA Capital Ltd.*

Dated: May 21, 2021

## <u>CERTIFICATE OF SERVICE</u>

I, Adam D. Gold, hereby certify that on May 21, 2021, I caused a true and

correct copy of the foregoing *Entry of Appearance* to be served through File

& Serve*Xpress* upon the following counsel of record:

Brock E. Czeschin
Christian Roberts
RICHARDS, LAYTON &
  FINGER, P.A.
920 North King Street
Wilmington, Delaware 19801

Ryan D. Stottmann
MORRIS, NICHOLS, ARSHT &
  TUNNELL LLP
1201 N. Market Street
Wilmington, Delaware 19801

*/s/ Adam D. Gold*
Adam D. Gold (Bar No. 6412)

**EFiled:  May 21 2021 11:47AM EDT**
**Transaction ID 66609955**
**Case No. 2021-0357-KSJM**

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| DEFINITION SERVICES INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2021-0357-KSJM |
| | ) | |
| GVA CAPITAL LTD., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MOTION FOR ADMISSION *PRO HAC VICE* OF ELLIOT R. PETERS

I, Adam D. Gold, a member of the Delaware Bar, pursuant to Court of Chancery Rule 170, move for the admission pro hac vice of Elliot R. Peters of the law firm Keker, Van Nest & Peters LLP, 633 Battery Street, San Francisco, California 94111, to represent Defendant GVA Capital Ltd. in the above-captioned action.  I certify that I find the applicant to be a reputable and competent attorney, and I am in a position to recommend the applicant's admission.

ROSS ARONSTAM & MORITZ LLP

*/s/ Adam D. Gold*
Bradley R. Aronstam (Bar No. 5129)
Adam D. Gold (Bar No. 6412)
100 S. West Street, Suite 400
Wilmington, Delaware  19801
(302) 576-1600

*Attorneys for Defendant GVA Capital Ltd.*

Dated:  May 21, 2021

Words:  80

## **CERTIFICATE OF SERVICE**

I, Adam D. Gold, hereby certify that on May 21, 2021, I caused a true and correct copy of the foregoing *Motion for Admission Pro Hac Vice of Elliot R. Peters* to be served through File & Serve*Xpress* on the following counsel:

Brock E. Czeschin
Christian Roberts
RICHARDS, LAYTON &
   FINGER, P.A.
920 North King Street
Wilmington, Delaware
19801

Ryan D. Stottmann
MORRIS, NICHOLS, ARSHT &
   TUNNELL LLP
1201 N. Market Street
Wilmington, Delaware 19801


*/s/ Adam D. Gold*
Adam D. Gold (Bar No. 6412)

**EFiled:  May 21 2021 11:47AM EDT**
**Transaction ID 66609955**
**Case No. 2021-0357-KSJM**

## <u>CERTIFICATION OF ELLIOT R. PETERS</u>

I, Elliot R. Peters, hereby certify that:

1.      I am a member in good standing of the bar of the State of California and the State of New York;

2.      I shall be bound by the Delaware Lawyers' Rules of Professional Conduct, and I have reviewed the Principles of Professionalism for Delaware Lawyers, as effective on November 1, 2003, and as amended;

3.      I and all attorneys of my firm who directly or indirectly provide services to the party or cause at issue shall be bound by the Rules of the Court;

4.      I consent to the appointment of the New Castle County Register in Chancery as agent upon whom service of process may be made for all actions, including disciplinary actions, that may arise out of the practice of law in this case and any activities related thereto;

5.      I have appeared in no actions in a court of record in Delaware in the preceding twelve (12) months;

6.      My payment for the *pro hac vice* admission assessment in the amount of Four Hundred and Twenty-Two dollars ($422.00) has been paid through "File & Serve*Xpress*" to the Supreme Court Registration Fund;

7.      I have not been disbarred or suspended, and I am not the object of any pending disciplinary proceedings in any jurisdiction where I have been admitted generally, *pro hac vice*, or in any other way; and

8.      I am admitted generally for the practice of law in the following states or other jurisdictions: the State of California and the State of New York.

_____

Elliot R. Peters

May 18, 2021

**EFiled:  May 21 2021 11:47AM EDT**
**Transaction ID 66609955**
**Case No. 2021-0357-KSJM**

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| DEFINITION SERVICES INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2021-0357-KSJM |
| | ) | |
| GVA CAPITAL LTD., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## [PROPOSED] ORDER GRANTING MOTION FOR ADMISSION *PRO HAC VICE* OF ELLIOT R. PETERS

The foregoing motion for admission *pro hac vice* of Elliot R. Peters to represent Defendant GVA Capital Ltd. is hereby granted.

IT IS SO ORDERED this _____ day of _____, 2021.

_____
Chancellor Kathaleen St. Jude McCormick

**EFiled: May 21 2021 11:47AM EDT**
**Transaction ID 66609955**
**Case No. 2021-0357-KSJM**

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| DEFINITION SERVICES INC., | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 2021-0357-KSJM |
| GVA CAPITAL LTD., | ) ) | |
| Defendant. | ) ) ) | |

## MOTION FOR ADMISSION *PRO HAC VICE* OF NICHOLAS D. MARAIS

I, Adam D. Gold, a member of the Delaware Bar, pursuant to Court of Chancery Rule 170, move for the admission pro hac vice of Nicholas D. Marais of the law firm Keker, Van Nest & Peters LLP, 633 Battery Street, San Francisco, California 94111, to represent Defendant GVA Capital Ltd. in the above-captioned action. I certify that I find the applicant to be a reputable and competent attorney, and I am in a position to recommend the applicant's admission.

ROSS ARONSTAM & MORITZ LLP

*/s/ Adam D. Gold*
Bradley R. Aronstam (Bar No. 5129)
Adam D. Gold (Bar No. 6412)
100 S. West Street, Suite 400
Wilmington, Delaware 19801
(302) 576-1600

*Attorneys for Defendant GVA Capital Ltd.*

Dated: May 21, 2021

Words: 80

## **CERTIFICATE OF SERVICE**

I, Adam D. Gold, hereby certify that on May 21, 2021, I caused a true and correct copy of the foregoing *Motion for Admission Pro Hac Vice of Nicholas D. Marais* to be served through File & Serve*Xpress* on the following counsel:

Brock E. Czeschin
Christian Roberts
RICHARDS, LAYTON &
   FINGER, P.A.
920 North King Street
Wilmington, Delaware 19801

Ryan D. Stottmann
MORRIS, NICHOLS, ARSHT &
   TUNNELL LLP
1201 N. Market Street
Wilmington, Delaware 19801

*/s/ Adam D. Gold*
Adam D. Gold (Bar No. 6412)

**EFiled:  May 21 2021 11:47AM EDT**
**Transaction ID 66609955**
**Case No. 2021-0357-KSJM**

# CERTIFICATION OF NICHOLAS D. MARAIS

I, Nicholas D. Marais, hereby certify that:

1.      I am a member in good standing of the bar of the State of California and the District of Columbia;

2.      I shall be bound by the Delaware Lawyers' Rules of Professional Conduct, and I have reviewed the Principles of Professionalism for Delaware Lawyers, as effective on November 1, 2003, and as amended;

3.      I and all attorneys of my firm who directly or indirectly provide services to the party or cause at issue shall be bound by the Rules of the Court;

4.      I consent to the appointment of the New Castle County Register in Chancery as agent upon whom service of process may be made for all actions, including disciplinary actions, that may arise out of the practice of law in this case and any activities related thereto;

5.      I have appeared in no actions in a court of record in Delaware in the preceding twelve (12) months;

6.      My payment for the *pro hac vice* admission assessment in the amount of Four Hundred and Twenty-Two dollars ($422.00) has been paid through "File & Serve*Xpress*" to the Supreme Court Registration Fund;

7.     I have not been disbarred or suspended, and I am not the object of any pending disciplinary proceedings in any jurisdiction where I have been admitted generally, *pro hac vice*, or in any other way; and

8.     I am admitted generally for the practice of law in the following states or other jurisdictions: the State of California and the District of Columbia.

_____

Nicholas D. Marais

May 18, 2021

**EFiled:  May 21 2021 11:47AM EDT**
**Transaction ID 66609955**
**Case No. 2021-0357-KSJM**

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| DEFINITION SERVICES INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2021-0357-KSJM |
| | ) | |
| GVA CAPITAL LTD., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## [PROPOSED] ORDER GRANTING MOTION FOR ADMISSION
## *PRO HAC VICE* OF NICHOLAS D. MARAIS

The foregoing motion for admission *pro hac vice* of Nicholas D. Marais to

represent Defendant GVA Capital Ltd. is hereby granted.

IT IS SO ORDERED this _____ day of _____, 2021.

_____
Chancellor Kathaleen St. Jude McCormick

**EFiled:  May 21 2021 06:47PM EDT**
**Transaction ID 66623350**
**Case No. 2021-0357-KSJM**

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

DEFINITION SERVICES INC.,       )
                                        )
                                        )
            Plaintiff,         )   C.A. No. 2021-0357-KSJM
                                          )
         v.                     )
                                          )
GVA CAPITAL LTD.,           )
                                          )
                                        )
          Defendant,        )

## NOTICE AND CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that, on May 21, 2021, true and correct copies of: (1) Plaintiff Definition Services Inc.'s First Set of Interrogatories Directed to Defendant GVA Capital LTD.; (2) Plaintiff Definition Services Inc.'s First Set of Requests for Production Directed to Defendant GVA Capital LTD.; and (3) this Notice and Certificate of Service were caused to be served on the following counsel of record in the manner indicated:

### VIA FILE & SERVE*XPRESS*

Bradley R. Aronstam
Adam D. Gold
ROSS ARONSTAM & MORITZ LLP
100 S. West Street, Suite 400
Wilmington, Delaware 19801

1

/s/ Christian C.F. Roberts
Brock E. Czeschin (#3938)
Christian Roberts (#6694)
RICHARDS, LAYTON & FINGER, P.A.
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
*Attorneys for Plaintiff Definition Services Inc.*

Dated:  May 21, 2021

2

**GRANTED**

EFiled: May 24 2021 03:50PM EDT
Transaction ID 66626984
Case No. 2021-0357-KSJM

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| DEFINITION SERVICES INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2021-0357-KSJM |
| | ) | |
| GVA CAPITAL LTD., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## [PROPOSED] ORDER GRANTING MOTION FOR ADMISSION
## *PRO HAC VICE* OF ELLIOT R. PETERS

The foregoing motion for admission *pro hac vice* of Elliot R. Peters to represent Defendant GVA Capital Ltd. is hereby granted.

IT IS SO ORDERED this _____ day of _____, 2021.

_____

Chancellor Kathaleen St. Jude McCormick

This document constitutes a ruling of the court and should be treated as such.

| | |
|---:|:---|
| **Court:** | DE Court of Chancery Civil Action |
| **Judge:** | Kathaleen St Jude McCormick |
| **File & Serve Transaction ID:** | 66609955 |
| **Current Date:** | May 24, 2021 |
| **Case Number:** | 2021-0357-KSJM |
| **Case Name:** | Definition Services Inc. v. GVA Capital LTD. |
| **Court Authorizer:** | Kathaleen St Jude McCormick |

**/s/ Judge Kathaleen St Jude McCormick**

**GRANTED**

EFiled: May 24 2021 03:50PM EDT
Transaction ID 66626984
Case No. 2021-0357-KSJM

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| DEFINITION SERVICES INC., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | C.A. No. 2021-0357-KSJM |
| GVA CAPITAL LTD., | ) ) | |
| Defendant. | ) ) ) | |

## [PROPOSED] ORDER GRANTING MOTION FOR ADMISSION
### *PRO HAC VICE* OF NICHOLAS D. MARAIS

The foregoing motion for admission *pro hac vice* of Nicholas D. Marais to

represent Defendant GVA Capital Ltd. is hereby granted.

IT IS SO ORDERED this _____ day of _____, 2021.

_____

Chancellor Kathaleen St. Jude McCormick

This document constitutes a ruling of the court and should be treated as such.

| | |
|---|---|
| **Court:** | DE Court of Chancery Civil Action |
| **Judge:** | Kathaleen St Jude McCormick |
| **File & Serve Transaction ID:** | 66609955 |
| **Current Date:** | May 24, 2021 |
| **Case Number:** | 2021-0357-KSJM |
| **Case Name:** | Definition Services Inc. v. GVA Capital LTD. |
| **Court Authorizer:** | Kathaleen St Jude McCormick |

**/s/ Judge Kathaleen St Jude McCormick**