# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| DEFINITION SERVICES INC., a British Virgin Islands corporation,<br><br>        Plaintiff,<br><br>        v.<br><br>GVA CAPITAL LTD., a Cayman Islands exempted company,<br><br>        Defendant. | C.A. No. 1:21 cv-00741-LPS<br><br>JURY TRIAL DEMANDED |

## DEFENDANT GVA CAPTIAL LTD.'S ANSWER
## TO PLAINTIFF'S VERIFIED COMPLAINT

Defendant GVA Capital Ltd. ("GVA"), by and through counsel, hereby responds to and answers Plaintiff Definition Services Inc.'s ("Definition's") Verified Complaint ("Complaint").[1] Any allegation not specifically admitted herein is denied. For the sake of clarity, in this Answer, GVA uses the defined terms and phrases as set out in the Complaint; however, GVA does not concede that any such definitions or phrases are proper. GVA expressly reserves the right to amend and/or supplement this Answer, including, but not limited to, the defenses and affirmative defenses set forth herein.

## NATURE OF THE DISPUTE

This is a dispute between GVA, an investment manager, and Definition, the successor-in-interest to one of GVA's investors. GVA is a Cayman Islands corporation with its headquarters

---

[1] Definition originally filed its Complaint in the Court of Chancery of the State of Delaware on April 26, 2021. Because there is complete diversity between the parties, and because the amount in controversy is more than $75,000, GVA filed a Notice of Removal on May 25, 2021. *See* D.I. 1. The parties stipulated that GVA could answer or otherwise respond to the Complaint by June 7, 2021. *See* D.I. 3.

1

in San Francisco, California; Definition is a British Virgin Islands ("BVI") entity with its headquarters in BVI.

In 2015 and 2016, GVA's principals approached Russian businessman Suleiman Kerimov and encouraged him to invest in various GVA projects. These included a venture-capital fund called GVA Vestor.In; a proposed event and co-working space in San Francisco that would be owned and managed by the Startup Temple Group; and the investment at issue in this dispute, GVA Auto, LLC ("GVA Auto").

In September 2016, Mr. Kerimov and his family agreed to invest $20 million in GVA Auto. Mr. Kerimov routed the investment through Prosperity Investments, LP ("Prosperity") and installed his nephew, Nariman Gadzhiev, as Prosperity's director. GVA invested the $20 million in Luminar Technologies, Inc. ("Luminar"), which, at the time, was a nascent Silicon Valley startup developing LiDAR technology for self-driving (or autonomous) cars.

Within months, Mr. Kerimov and Mr. Gadzhiev grew agitated and skeptical and demanded that GVA extricate Prosperity from the deal. In late 2016, they complained that one GVA investment was "a bog with no prospect of a successful sale" and demanded that GVA "reduc[e] our share in Luminar[]" by at least 75%. Soon after, they demanded that GVA "sell[] Luminar in its entirety or at least our share." Although GVA remained optimistic that Luminar would ultimately succeed, it nevertheless agreed to look for a replacement buyer, ultimately selling 5% of Prosperity's interest to a third party.

At around the same time, GVA made a proposal that it thought would allay Prosperity's concerns: GVA agreed to take on all of Prosperity's risk. Specifically, in late 2016 and early 2017, GVA and Prosperity discussed and agreed that: (1) if the investments that GVA had made on behalf of Prosperity failed, GVA would make Prosperity whole by refunding its entire

investment (or whatever portion remained after sales to third parties); and (2) if those investments ultimately succeeded, GVA would keep any proceeds in excess of Prosperity's original investments (the "Profit and Loss Agreement" or "PLA"). This agreement was entered into by Mr. Kerimov (who funded Prosperity's investment), Mr. Gadzhiev (Prosperity's Director), and Mr. Musaev (GVA's principal). Mr. Gadzhiev went on to confirm and describe the PLA thus in writing:

> [W]e did have a verbal agreement where GVA has undertaken an obligation to compensate Prosperity for any possible losses of invested funds related to the three mentioned entities. The reverse side of that agreement was that should the disposition of assets takes place, any amounts that are generated in excess of the invested amount can be retained by GVA. As far as I know, no amendments or changes were made to this agreement after it was made.

Then, in early 2018, the U.S. Department of the Treasury designated Mr. Kerimov "an official of the Government of the Russian Federation" and placed him on its sanctions list, making it illegal for him to do business or own assets in the United States.[2] That same year, Mr. Kerimov and Mr. Gadzhiev decided to move Prosperity's holdings—including its GVA Auto investment—into a trust established for the benefit of Mr. Kerimov's children. To do that, they purportedly transferred the investment from Prosperity to a new entity, Definition. Today, notwithstanding these connections, Definition takes the position that Mr. Kerimov "does not have any relationship whatsoever with Definition."

---

[2] *See, e.g.*, U.S. Dept. of the Treasury, *Treasury Designates Russian Oligarchs, Officials, and Entities in Response to Worldwide Malign Activity* (Apr. 6, 2018), available at https://home.treasury.gov/news/press-releases/sm0338 ("He is alleged to have brought hundreds of millions of euros into France—transporting as much as 20 million euros at a time in suitcases, in addition to conducting more conventional funds transfers—without reporting the money to French tax authorities. Kerimov allegedly launders the funds through the purchase of villas. Kerimov was also accused of failing to pay 400 million euros in taxes related to villas.").

Over time, it started to become clear that Luminar was a high-risk-high-reward investment. In August 2020, Luminar announced that it planned to go public by merging with a special purpose acquisition company or "SPAC." At the time, analysts estimated that Luminar would have a post-merger valuation of approximately $3.4 billion, which meant that GVA Auto's initial $20 million investment was suddenly worth approximately $200 million. Today, Luminar has a market capitalization of $8.4 billion, and GVA Auto's stake is worth approximately $480 million.

GVA continues to manage the GVA Auto investment. In that capacity, GVA has decision-making authority, including the "rights and powers" to "sell or otherwise dispose of" any of GVA Auto's assets at any time. However, the Luminar shares were subject to a lockup restriction that expired in early June 2021. Two months ago, as the expiration date approached, GVA wrote to Definition's managers at Neuberger Berman ("NB") to remind them that GVA and Prosperity had entered into an agreement, the PLA, regarding how any GVA Auto profits would be distributed. GVA explained that, when the lockup expired, it intended to proceed according to the terms of the parties' PLA:

> When it sells GVA Auto's interest in Luminar, it will distribute the proceeds accordingly: first, it will ensure that Definition is made whole for Prosperity's investment; then it will ensure that the Manager is paid for its services, consistent with the requirements of the OA; and then, if any proceeds remain, GVA Capital will retain them.

NB never responded to GVA's letter.

Instead, two weeks later, Definition filed a declaratory-judgment complaint, suddenly seeking to unwind its predecessor's commitments, invalidate the PLA, and baselessly remove GVA as the Manager of GVA Auto. In its complaint, Definition alleges that "there is no contemporaneous evidence" documenting the parties' oral PLA, argues that the PLA is thus

"non-existent and unenforceable," and asserts that Definition should be free to renege on its commitments.

Through this lawsuit and its affirmative defenses, GVA asks nothing more than that the Court hold Prosperity and Definition to their enforceable contractual obligations by upholding the PLA.

## **ANSWER**

GVA answers Definition's Complaint as follows:

1. Paragraph 1 sets forth conclusions of law to which no response is required. To the extent any response is required, GVA admits that it is an investment manager. GVA also admits that its position is that the PLA—entered into by and between the principals of GVA and Prosperity—provides that GVA will distribute $18.5 million to Prosperity's successor entity, Definition Services, upon the sale of GVA Auto's interest in Luminar Technologies, Inc., and that it will do so irrespective of the proceeds of that sale. The PLA further provides that, if any funds remain after this distribution, GVA will distribute 10% of those funds to GVA as its carried interest, and 90% of those funds to GVA as contemplated by the PLA. GVA denies any remaining allegations of Paragraph 1.

2. GVA admits that it is a venture capital firm, that Definition Services purports to be the successor-in-interest to Prosperity, and that, in that capacity, it holds investments in three special purpose entities managed by GVA, including GVA Auto. GVA admits that GVA Auto's investment in Luminar has increased in value and that, today, it is worth hundreds of millions of dollars. GVA denies any remaining allegations of Paragraph 2.

3. Paragraph 3 sets forth conclusions of law to which no response is required. To the extent any response is required, GVA admits that its position is that the PLA—entered into by and between the principals of GVA and Prosperity—provides that GVA will distribute $18.5

million to Prosperity's successor entity, Definition Services, upon the sale of GVA Auto's interest in Luminar Technologies, Inc., and that it will do so irrespective of the proceeds of that sale. The PLA further provides that, if any funds remain after this distribution, GVA will distribute 10% of those funds to GVA as its carried interest, and 90% of those funds to GVA as contemplated by the PLA. GVA lacks sufficient information or belief to admit or deny the allegations related to Cherkashin and, on that basis, denies them. GVA denies that Cherkashin was a director of GVA when Definition filed its Complaint. GVA denies any remaining allegations of Paragraph 3.

4. Paragraph 4 sets forth conclusions of law to which no response is required. GVA refers the Court to the Operating Agreement for an accurate account of its contents and denies any characterization inconsistent therewith. To the extent any response is required, GVA denies the allegations of Paragraph 4.

5. Paragraph 5 sets forth conclusions of law to which no response is required. To the extent any response is required, GVA admits that Cherkashin was removed as a director of GVA pursuant to GVA's Memorandum and Articles of Association—that is, by a vote of the holders of a majority of the shares of GVA, not by Odrison—on April 13, 2021. GVA otherwise lacks sufficient information or belief to admit or deny the allegations related to Cherkashin's actions and, on that basis, denies them. GVA denies the remaining allegations of Paragraph 5.

6. GVA admits that the lockup restrictions on the Luminar stock expired on or about June 1, 2021. GVA denies the remaining allegations of Paragraph 6.

7. Paragraph 7 sets forth a request for relief to which no response is required. To the extent any response is required, GVA denies that Definition Services is entitled to a temporary restraining order or any other relief. GVA denies any remaining allegations of Paragraph 7.

## JURISDICTION AND VENUE

8. Paragraph 8 sets forth conclusions of law to which no response is required.

9. Paragraph 9 sets forth conclusions of law to which no response is required. To the extent any response is required, GVA admits that it is the manager of GVA Auto and that GVA Auto is a Delaware limited liability company. GVA denies any remaining allegations of Paragraph 9.

10. Paragraph 10 sets forth conclusions of law to which no response is required. GVA refers the Court to the Operating Agreement for an accurate account of its contents and denies any characterization inconsistent therewith. To the extent any response is required, GVA denies the allegations of Paragraph 10.

## FACTUAL BACKGROUND

11. GVA admits that Definition Services is a British Virgin Islands corporation and that, as successor-in-interest to Prosperity, it now holds investments in at least three special purpose entities managed by GVA. GVA denies any remaining allegations of Paragraph 11.

12. GVA admits that it is based in San Francisco and registered in the Cayman Islands, that it manages GVA Auto, Startup Temple, and GVA Vestor.In, and that its members are Cherkashin, Odrison, Sobachevskiy, and Artem Smirnov. GVA denies any remaining allegations of Paragraph 12.

13. GVA admits that Prosperity invested approximately $28 million with GVA across the three investments referenced in the Complaint, and that those investments included a $3 million capital contribution in GVA Vestor.In. GVA denies any remaining allegations of Paragraph 13.

14. GVA admits that Prosperity invested $5 million in Startup Temple. GVA denies any remaining allegations of Paragraph 14.

15. GVA admits that Prosperity invested $20 million in GVA Auto and that Luminar focused on developing technology for use in autonomous vehicles. GVA refers the Court to the Operating Agreement for an accurate account of its contents and denies any characterization inconsistent therewith. GVA denies any remaining allegations of Paragraph 15.

16. GVA admits the GVA Auto invested in Luminar through the SAFE Note . GVA refers the Court to the SAFE Note for an accurate account of its contents and denies any characterization inconsistent therewith. GVA denies any remaining allegations of Paragraph 16.

17. GVA admits that Prosperity was the only investor in GVA Auto at the time of its investment, and that on or about June 29, 2017, Prosperity sold 5% of its position in GVA Auto to Vladimir Smirnov for $1.5 million. GVA admits that Vladimir Smirnov is Artem Smirnov's father. GVA lacks sufficient information or belief to admit or deny the remaining allegations of Paragraph 17 and, on that basis, denies them.

18. Paragraph 18 sets forth conclusions of law to which no response is required. GVA refers the Court to the Operating Agreement for an accurate account of its contents and denies any characterization inconsistent therewith. To the extent any response is required, GVA denies any remaining allegations of Paragraph 18.

19. GVA refers the Court to the Operating Agreement for an accurate account of its contents and denies any characterization inconsistent therewith. GVA denies any remaining allegations of Paragraph 19.

20. GVA refers the Court to the Operating Agreement for an accurate account of its contents and denies any characterization inconsistent therewith. GVA denies any remaining allegations of Paragraph 20.

21. Paragraph 21 sets forth a conclusion of law to which no response is required. GVA refers the Court to the Operating Agreement for an accurate account of its contents and denies any characterization inconsistent therewith. To the extent any response is required, GVA denies any remaining allegations of Paragraph 21.

22. Paragraph 22 sets forth a conclusion of law to which no response is required. GVA refers the Court to the Operating Agreement for an accurate account of its contents and denies any characterization inconsistent therewith. To the extent any response is required, GVA denies any remaining allegations of Paragraph 22.

23. Paragraph 23 sets forth conclusions of law to which no response is required. GVA refers the Court to the Operating Agreement for an accurate account of its contents and denies any characterization inconsistent therewith. To the extent any response is required, GVA denies any remaining allegations of Paragraph 23.

24. Paragraph 24 sets forth conclusions of law to which no response is required. GVA refers the Court to the Operating Agreement for an accurate account of its contents and denies any characterization inconsistent therewith. To the extent any response is required, GVA denies any remaining allegations of Paragraph 24.

25. GVA admits that, in December 2018, Prosperity purported to transfer its interests in various GVA Capital–managed entities to Definition Services. GVA denies any remaining allegations of Paragraph 25.

26. Paragraph 26 sets forth conclusions of law to which no response is required. GVA refers the Court to the Assignment Agreement and Adherence for an accurate account of its contents and denies any characterization inconsistent therewith. GVA admits that it approved the Assignment Agreement and Definition Services' admission as a member of GVA Auto on

December 9, 2018, and that the relevant resolutions were signed by Odrison. GVA denies any remaining allegations of Paragraph 26.

27. GVA admits that Prosperity purported to transfer its interests in GVA Vestor.In and Startup Temple to Definition Services. GVA denies any remaining allegations of Paragraph 27.

28. Paragraph 28 sets forth conclusions of law to which no response is required. To the extent any response is required, GVA lacks sufficient information or belief to admit or deny the allegations related to Definition's "awareness" or belief, and on that basis denies them. GVA denies any remaining allegations of Paragraph 28.

29. Paragraph 29 sets forth a conclusion of law to which no response is required. To the extent any response is required, GVA admits that Luminar went public on or about December 1, 2020, following a merger with Gores Metropoulos Inc., that GVA Auto holds 18,030,728 shares of Luminar common stock, and that the value of the Luminar Shares is, as of the filing of this Answer, in the hundreds of millions of dollars. GVA refers the Court to the SAFE Note for an accurate account of its contents and denies any characterization inconsistent therewith. GVA denies any remaining allegations of Paragraph 29.

30. GVA admits that the Luminar Shares were subject to a lockup restriction that expired on or about June 1, 2021. GVA denies that it received the Luminar shares: the parties have stipulated to a consent order related to those shares, and GVA has instructed Luminar to retain possession of GVA Auto's shares until further notice. GVA denies the remaining allegations of Paragraph 30.

31. GVA admits that prior to April 13, 2021, Cherkashin was a director of GVA. GVA denies the remaining allegations of Paragraph 31.

32. GVA lacks sufficient information or belief to admit or deny the allegations related to Cherkashin's actions and, on that basis, denies them. GVA denies any remaining allegations of Paragraph 32.

33. GVA denies the allegations of Paragraph 33.

34. Paragraph 34 sets forth conclusions of law to which no response is required. To the extent any response is required, GVA denies the allegations of Paragraph 34.

35. GVA lacks sufficient information or belief to admit or deny allegations related to Cherkashin's actions and, on that basis, denies them. GVA admits that Cherkashin sent an email to Definition's lawyers on or about April 8, 2021; without admitting its truthfulness, GVA refers the Court to that email for an accurate account of its contents and denies any characterization inconsistent therewith. GVA denies any remaining allegations of Paragraph 35.

36. GVA lacks sufficient information or belief to admit or deny allegations related to Cherkashin's actions and, on that basis, denies them. GVA admits that Cherkashin sent an email to Definition's lawyers on or about April 8, 2021; without admitting its truthfulness, GVA refers the Court to that email for an accurate account of its contents and denies any characterization inconsistent therewith. GVA denies any remaining allegations of Paragraph 36.

37. Paragraph 37 sets forth conclusions of law to which no response is required. To the extent any response is required, GVA denies the allegations of Paragraph 37.

38. Paragraph 38 sets forth conclusions of law to which no response is required. To the extent any response is required, GVA denies the allegations of Paragraph 38.

39. Paragraph 39 sets forth conclusions of law to which no response is required. To the extent any response is required, GVA denies the allegations of Paragraph 39.

40. GVA admits that Leonard Grayver received a letter purporting to be from Definition Services' counsel on April 10, 2021, and that that letter incorrectly disputed the existence of the PLA and baselessly objected to Cherkashin's removal as director. Definition Services' counsel did not send a copy of that letter to GVA's undersigned counsel. GVA lacks sufficient information or belief to admit or deny the remaining allegations of Paragraph 40, and on that basis denies them.

41. GVA admits that the letter received by Leonard Grayver on April 10, 2021 incorrectly disputed the existence and enforceability of the PLA and baselessly objected to Cherkashin's removal as a director of GVA. GVA denies the remaining allegations of Paragraph 41.

42. GVA admits that Grayver is a director of GVA. GVA denies the remaining allegations of Paragraph 42.

43. GVA admits that Cherkashin filed an action in The Grand Court of the Cayman Islands, Financial Services Division, seeking injunctive relief and the appointment of joint receivers, and that, in connection with that action, Cherkashin filed an affidavit. Without admitting its truthfulness, GVA refers the Court to the Cherkashin Affidavit for an accurate account of its contents and denies any characterization inconsistent therewith. GVA denies any remaining allegations of Paragraph 43.

44. Without admitting its truthfulness, GVA refers the Court to the Cherkashin Affidavit for an accurate account of its contents and denies any characterization inconsistent therewith. GVA denies all other allegations of Paragraph 44.

45. Without admitting its truthfulness, GVA refers the Court to the Cherkashin Affidavit for an accurate account of its contents and denies any characterization inconsistent therewith. GVA denies all other allegations of Paragraph 45.

46. Paragraph 46 sets forth a conclusion of law to which no response is required. Without admitting its truthfulness, GVA refers the Court to the Cherkashin Affidavit for an accurate account of its contents and denies any characterization inconsistent therewith. GVA denies any remaining allegations of Paragraph 46.

47. Without admitting its truthfulness, GVA refers the Court to the Cherkashin Affidavit for an accurate account of its contents and denies any characterization inconsistent therewith. GVA denies all other allegations of Paragraph 47.

48. Paragraph 48 sets forth conclusions of law to which no response is required. To the extent any response is required, GVA admits that the Cayman Islands court has not issued any rulings related to Cherkashin's filings. GVA denies all other allegations of Paragraph 48.

## COUNT I
### (Declaratory Judgment)

49. GVA incorporates by reference its response to each allegation contained in the above paragraphs as if fully set forth herein.

50. Paragraph 50 sets forth a conclusion of law to which no response is required. To the extent any response is required, GVA denies the allegations of Paragraph 50.

51. Paragraph 51 sets forth conclusions of law to which no response is required. To the extent any response is required, GVA denies the allegations of Paragraph 51.

52. Paragraph 52 sets forth conclusions of law to which no response is required. GVA refers the Court to the Operating Agreement for an accurate account of its contents and

denies any characterization inconsistent therewith. To the extent any response is required, GVA denies the allegations of Paragraph 52.

53. GVA denies the allegations of Paragraph 53.

54. Paragraph 54 sets forth a request for relief to which no response is required. To the extent any response is required, GVA denies that Definition Services is entitled to declaratory or any other relief.

## COUNT II
### (Anticipatory Repudiation and Entitlement to Remove GVA as Manager)

55. GVA incorporates by reference its response to each allegation contained in the above paragraphs as if fully set forth herein.

56. Paragraph 56 sets forth conclusions of law to which no response is required. GVA refers the Court to the Operating Agreement for an accurate account of its contents and denies any characterization inconsistent therewith. To the extent any response is required, GVA denies the allegations of Paragraph 56.

57. Paragraph 57 sets forth a request for relief to which no response is required. To the extent any response is required, GVA denies that Definition Services is entitled to an order of specific performance or any other relief.

58. Paragraph 58 sets forth a request for relief to which no response is required. To the extent any response is required, GVA denies that Definition Services is entitled to damages or any other relief.

59. Paragraph 59 sets forth a request for relief to which no response is required. To the extent any response is required, GVA denies that Definition Services is entitled to declaratory or any other relief.

## COUNT III
### (Breach of Fiduciary Duty)

60. GVA incorporates by reference its response to each allegation contained in the above paragraphs as if fully set forth herein.

61. Paragraph 61 sets forth conclusions of law to which no response is required. To the extent any response is required, GVA denies the allegations of Paragraph 61, and specifically denies that it has breached its fiduciary duties.

62. Paragraph 62 sets forth a conclusion of law to which no response is required. To the extent any response is required, GVA denies the allegations of Paragraph 62.

## PRAYER FOR RELIEF

The Prayer for Relief contains a summary of the relief Definition Services seeks, to which no response is required. To the extent any response is required, GVA denies that Definition Services is entitled to any of the relief sought.

## AFFIRMATIVE DEFENSES

Without assuming the burden of proof or persuasion where such burden properly rests with Definition Services, and without waiving and hereby expressly preserving its right to assert any defenses at such time and to such extent as discovery and factual developments establish a basis therefor, GVA expressly: (a) reserves the right to amend or supplement this Answer, its defenses and affirmative defenses, and all other pleadings; and (b) reserves the right to assert any and all additional defenses and affirmative defenses under any applicable state or common law if discovery shows that such defenses would be appropriate.

## FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim, in whole or in part, upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

The Complaint and each purported cause of action seeking monetary relief must be reduced, excused, and/or discharged because Definition Services failed to exercise reasonable diligence to any alleged monetary injuries.

## THIRD AFFIRMATIVE DEFENSE

Definition Services' claims are barred, in whole or in part, because Definition Services has failed to show that GVA's alleged actions cause any harm, loss, or damages to Definition Services.

## FOURTH AFFIRMATIVE DEFENSE

Definition Services' claims are barred, in whole or in part, by the doctrines of waiver, acquiescence, and estoppel.

## FIFTH AFFIRMATIVE DEFENSE

Definition Services' claims are barred, in whole or in part, by the doctrine of unclean hands.

## SIXTH AFFIRMATIVE DEFENSE

Definition Services' claims are barred, in whole or in part, by the doctrine of accord and satisfaction.

## SEVENTH AFFIRMATIVE DEFENSE

Definition Services' claims are barred, in whole or in part, by the applicable statutes of limitations or the doctrine of laches.

## EIGHTH AFFIRMATIVE DEFENSE

The PLA is valid and enforceable and bars Definition Services' claims.

### NINTH AFFIRMATIVE DEFENSE

Definition Services has an adequate remedy at law.  Therefore, injunctive, equitable, and/or declaratory relief is inappropriate.

\* \* \*

GVA hereby gives notice that it intends to rely upon such other and further defenses as may become available or apparent during pre-trial proceedings in this action and hereby reserves all rights to amend this Answer to assert all such defenses.

### STATEMENT ON DECLARATORY RELIEF

Through its Complaint, Definition has sought a declaration that the PLA—or what it refers to as the "Alleged Oral Agreement"—is non-existent and unenforceable, "and that all gains on Definition Services' investments (including the Luminar investment) must be distributed pursuant to the express terms of the parties' written agreement."  Compl. at ¶ 54.

GVA disputes that Definition is entitled to such declaratory relief, because the parties are indeed subject to a binding and enforceable oral agreement.  As such, GVA seeks its own declaration from the Court: that the PLA was entered into by GVA's and Prosperity's principals; that it is valid, enforceable, and binding; and that the gains on Prosperity's original investments (including on the GVA Auto investment) must be distributed pursuant to the PLA.

GVA pleads the existence and enforceability of the Profit and Loss Agreement as an affirmative defense (*see* Eighth Affirmative Defense) rather than a counterclaim, because Third Circuit authority suggests that such a counterclaim could be subject to dismissal for redundancy. *See, e.g.*, *Aldens v. Packel*, 524 F.2d 38, 51–52 (3d Cir. 1975) (holding that dismissal of a declaratory judgment counterclaim is appropriate "where it is clear that there is a complete identity of factual and legal issues between the complaint and the counterclaim"); *Penn Mut. Life Ins. Co. v. Norma Espinosa 2007-1 Ins. Tr.*, 2010 WL 3023402, at \*1 (D. Del. July 30, 2010)

(finding that where plaintiff requested a declaratory judgment that a contract was void and where defendants counterclaimed that the contract was in full force and effect, defendants' counterclaim was unnecessary because there was a complete identity of factual and legal issues and "a finding adverse to Plaintiff … effectively grants Defendants the declaration sought…."). Accordingly, to avoid such redundancy, GVA does not formally plead a counterclaim, but instead reserves its rights to pursue declaratory relief confirming the existence and enforceability of the PLA (which, in any event, Definition has put at issue in its Complaint).

## **PRAYER FOR RELIEF**

WHEREFORE, GVA respectfully requests that the Court enter judgment in GVA's favor and against Definition Services as follows:

1. Declaring that GVA has not breached any obligations under the GVA Auto Operating Agreement ("OA"), nor any fiduciary duties, and is entitled to its full "carried interest" as set out in the OA;

2. Declaring that the PLA is a valid and enforceable agreement that binds GVA and Definition;

3. Declaring that GVA has performed all of its obligations under the PLA;

4. Declaring, and entering an order requiring, that (a) GVA shall return to Definition the $18.5 million that Prosperity invested in GVA Auto, and (b) GVA shall be entitled to retain any proceeds that remain after GVA has returned $18.5 million and after any "carried interests" have been distributed under the OA;

5. Awarding damages to GVA;

6. Awarding pre- and post-judgment interest to GVA, as applicable;

7. Awarding GVA its costs and reasonable attorneys' fees incurred in connection with this action; and

8. Awarding GVA such other relief as the Court deems just and proper.

## JURY DEMAND

GVA hereby demands a jury trial for all issues so triable.

                                  Respectfully submitted,

                                  ROSS ARONSTAM & MORITZ LLP

OF COUNSEL:

Elliot R. Peters
David J. Silbert
Nicholas D. Marais
Tara M. Rangchi
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, California 94111

By:  */s/ Adam D. Gold*
Bradley R. Aronstam (Bar No. 5129)
Adam D. Gold (Bar No. 6412)
100 S. West Street, Suite 400
Wilmington, Delaware 19801
(302) 576-1600

*Attorneys for Defendant GVA Capital Ltd.*

Dated: June 7, 2021