**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| DEFINITION SERVICES INC., a British Virgin Islands corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 1:21 cv-00741-LPS |
| GVA CAPITAL LTD., a Cayman Islands exempted company, | ) ) ) | |
| Defendant. | ) ) | |

**DEFENDANT'S ANSWERING BRIEF IN OPPOSITION TO**
**PLAINTIFF'S MOTION TO REMAND**

ROSS ARONSTAM & MORITZ LLP

*Of Counsel:*

Elliot R. Peters
Nicholas D. Marais
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, California 94111
epeters@keker.com
nmarais@keker.com

Bradley R. Aronstam (Bar No. 5129)
Adam D. Gold (Bar No. 6412)
100 S. West Street, Suite 400
Wilmington, Delaware  19801
(302) 576-1600
baronstam@ramllp.com
agold@ramllp.com

*Attorneys for Defendant GVA Capital Ltd.*

Dated:  June 18, 2021

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

NATURE AND STAGE OF THE PROCEEDINGS ................................................................... 1

SUMMARY OF THE ARGUMENT .......................................................................................... 2

COUNTERSTATEMENT OF FACTS ....................................................................................... 2

    A.    The Luminar Investment ........................................................................................ 2

    B.    This Lawsuit............................................................................................................ 3

    C.    The Forum Selection Clause .................................................................................. 4

ARGUMENT ............................................................................................................................... 5

I.    THIS CASE MEETS THE STATUTORY REQUIREMENTS FOR REMOVAL. ................ 5

II.   THE FORUM SELECTION CLAUSE IN SECTION 13.10 DOES NOT WAIVE GVA'S RIGHT TO REMOVE. ......................................................................................... 6

    A.    Governing legal standards...................................................................................... 6

    B.    Section 13.10 does not include any language suggestive of waiver. ............................. 7

    C.    The cases Definition relies on are inapposite and readily distinguishable. .................. 10

III. IF THE FORUM SELECTION CLAUSE WERE READ AS DEFINITION PROPOSES, IT WOULD DEPRIVE GVA OF ITS CONSTITUTIONAL RIGHT TO A JURY TRIAL— THUS RENDERING IT UNENFORCEABLE. .................................................................... 13

CONCLUSION........................................................................................................................... 19

## TABLE OF AUTHORITIES

**Page(s)**

*Amerilink Corp. v. Cerco, Inc.*,
 1996 WL 238525 (E.D. Mo. May 3, 1996) ............................................................9

*Amoco Oil Co. v. Torcomian*,
 722 F.2d 1099 (3d Cir. 1983).............................................................................16

*AstenJohnson, Inc. v. Columbia Cas. Co.*,
 562 F.3d 213 (3rd Cir. 2009) .............................................................................16

*Beacon Theatres v. Westover*,
 359 U.S. 500 (1959)....................................................................................13, 17

*Bessemer Sys. Fed. Credit Union v. Fiserv Solutions LLC*,
 472 F. Supp. 3d 142 (W.D. Pa. 2020)..................................................................14

*Billing v. Ravin, Greenberg & Zackin, P.A.*,
 22 F.3d 1242 (3d Cir. 1994).........................................................................15, 16

*Bouriez v. Carnegie Mellon Univ.*,
 359 F.3d 292 (3rd Cir. 2004) .............................................................................13

*Burger King Corp. v. Rudzewicz*,
 471 U.S. 462 (1985)..........................................................................................18

*Canon Financial Services, Inc. v. Kalmus*,
 2020 WL 4333744 (D.N.J. July 28, 2020)............................................................11

*Cap. Bank & Tr. Co. v. Associated Int'l Ins. Co.*,
 576 F. Supp. 1522 (M.D. La. 1984)......................................................................10

*Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*,
 779 F.3d 214, 218 (3d Cir. 2015)..................................................................11, 18

*Carlyle Inv. Mgmt., L.L.C. v. Carlyle Cap. Corp.*,
 800 F. Supp. 2d 639 (D. Del. 2011)..................................................................9, 11

*Cessna Aircraft Co. v. Fid. & Cas. Co. of New York*,
 616 F. Supp. 671 (D.N.J. 1985) ..........................................................................10

*Cowatch v. Sym-Tech Inc.*,
 253 F. App'x 231 (3d Cir. 2007) ...........................................................................9

*Cronin v. Fam. Educ. Co.*,
 105 F. Supp. 2d 136 (E.D.N.Y. 2000) ....................................................................9

*Eagle Indus., Inc. v. DeVilviss Health Care, Inc.*,
   702 A.2d 1228 (Del. 1997) ................................................................8

*E.I. Du Pont de Nemours & Co. v. Quality Carries, Inc.*,
   2011 WL 776211 (D. Del. Feb. 28, 2011) ...........................................12

*Faw, Cason & Co. v. Ballard*,
   1984 WL 548381 (Del. Sup. Dec. 17, 1984) .......................................16

*First Union Nat'l Bank v. United States*,
   164 F. Supp. 2d 660 (E.D. Pa. 2001) ...................................................14

*Firststring Research, Inc. v. JSS Med. Research, Inc.*,
   2021 WL 2182829 (Del. Ch. May 28, 2021) ........................................15

*Foster v. Chesapeake Ins. Co., Ltd.*,
   933 F.2d 1207 (3rd Cir. 1991) ..................................................... *passim*

*Handoush v. Lease Finance Group, LLC*,
   41 Cal. App. 5th 729 (2019) .................................................................18

*Hydramar, Inc. v. Gen. Dynamics Corp.*,
   1989 WL 159267 (E.D. Pa. Dec. 29, 1989) ...................................13, 14

*InterDigital, Inc. v. Wistron Corp.*,
   2015 WL 4537133 (D. Del. June 18, 2015) .........................................12

*Jackson Hewitt, Inc. v. Luke*,
   2013 WL 2444064 (D.N.J. June 4, 2013) ............................................14

*Lorillard Tobacco Co. v. Am. Legacy Found.*,
   903 A.2d 728 (Del. 2006) ......................................................................7

*MacDonald v. CashCall, Inc.*,
   883 F.3d 220 (3rd Cir. 2018) ...............................................................17

*Marra v. Philadelphia Housing Auth.*,
   497 F.3d 286 (3rd Cir. 2007) ...............................................................15

*Martinez v. Bloomberg LP*,
   740 F.3d 211 (2d Cir. 2014) .................................................................18

*In re McGraw-Hill Glob. Educ. Holdings LLC*,
   909 F.3d 48 (3d Cir. 2018) .....................................................................6

*Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.*,
   619 F.2d 1001 (3rd Cir. 1980) ...............................................................6

*Mercy Hosp. Ass'n v. Miccio*,
    604 F. Supp. 1177 (E.D.N.Y. 1985) ..................................................................8

*Miller v. Sun Cap. Partners, Inc.*,
    2016 WL 4941989 (D. Del. Sep. 15, 2016) ......................................................14

*New Jersey v. Merrill Lynch & Co., Inc.*,
    640 F.3d 545 (3rd Cir. 2011) ..........................................................................6

*Oberweis Dairy, Inc. v. Maplehurst Farms, Inc.*,
    1989 WL 2078 (N.D. Ill. Jan. 10, 1989) ..........................................................9

*Osborn ex rel. Osborn v. Kemp*,
    991 A.2d 1153 (Del. 2010) ..........................................................................6, 7

*Park Oil, Inc. v. Getty Refining & Mktg. Co.*,
    407 A.2d 533 (Del. 1979) ............................................................................17

*Periodical Graphics, Inc. v. Spitz*,
    1994 WL 502506 (E.D. Pa. 1994) ..................................................................9

*Quarum v. Mitchell Int'l, Inc.*,
    2019 WL 158153 (Del. Ch. Jan. 10, 2019) ....................................................17

*Sanyo Elec. Co., Ltd v. Intel Corp.*,
    2019 WL 1650067 (D. Del. Apr. 17, 2019) ............................................7, 9, 13

*Scotton v. Wright*,
    122 A. 541 (Del. Ch. Nov. 7, 1923) ..............................................................15

*Tracinda Corp. v. DaimlerChrysler AG*,
    502 F.3d 212 (3rd Cir. 2007) ........................................................................13

*U.S. Bank, Nat'l Ass'n v. Rosenberg*,
    2014 WL 2439427 (E.D. Pa. May 20, 2014) ..................................................14

*Utilisave, LLC v. Khenin*,
    2015 WL 4931862 (Del. Ch. Aug. 18, 2015) ..................................................6

*W. Chestnut Realty of Haverford, Inc. v. First State Ins. Co.*,
    1990 WL 87377 (E.D. Pa. June 19, 1990) ..............................................2, 5, 10

**Federal Statutes**

28 U.S.C. § 1332(a) ............................................................................................4, 5

28 U.S.C. § 1441 ....................................................................................................5

28 U.S.C. § 1441(b) ................................................................................................4

28 U.S.C. § 1446.................................................................................................................4, 5

**State Statutes**

10 *Del. C.* § 369 ...................................................................................................................15

Defendant GVA Capital Ltd. ("GVA") hereby opposes Definition Services Inc.'s ("Definition's") Motion to Remand (D.I. 4, the "Motion").

## NATURE AND STAGE OF THE PROCEEDINGS

This is a dispute over whether Definition should be held to its predecessor's contractual agreements.

In 2016, GVA (a San Francisco-based investment manager) worked with Prosperity (Definition's purported predecessor) to invest in a new technology startup, Luminar. Unfortunately, Prosperity's principals soon soured on the deal, demanding that GVA find a replacement buyer and asking GVA to return its $20 million investment. Unable to do that—at the time, Luminar was a private, illiquid company—GVA made an offer that it believed would allay its investor's fears. GVA offered, and Prosperity agreed, that GVA would take on Prosperity's risk: if the deal failed, GVA would make Prosperity whole; if it succeeded, GVA could keep the profits (the "Profit & Loss Agreement" or "PLA"). Today, some five years later, the initial $20 million investment is worth more than $400 million—and Definition, which purportedly acquired Prosperity's interest in 2018, now denies having any memory of the PLA.

In April 2021, two months before an anticipated liquidation of the Luminar investment, GVA wrote to Definition to explain that it intended to distribute the proceeds in accordance with the PLA. Rather than respond to GVA's letter or discuss the issue with GVA, Definition rushed into the Delaware Court of Chancery, filing an "emergency" TRO to freeze an asset that was already frozen. Because there is complete diversity between the parties—and because the Operating Agreement contemplates resolving disputes in "state *or* federal court" in Delaware— GVA properly and timely removed that dispute to this Court.

Through its Motion, Definition seeks to avoid a jury trial by sending this case back to the Court of Chancery. To do so, Definition misconstrues a geographical forum selection clause as

(a) an implied waiver of GVA's right to remove this action to federal court and (b) an unexpressed waiver of GVA's right to a jury trial. The Court should reject those efforts and deny Definition's Motion.

## SUMMARY OF THE ARGUMENT

There is no dispute that this case meets all the statutory requirements for removal: this Court has original jurisdiction over this action, there is complete diversity between the parties, and GVA complied with all relevant procedural requirements.

Recognizing that removal was otherwise proper, Definition makes just one argument: that this Court should treat a geographical forum selection clause—a commitment to resolve disputes in "*any* state or federal court" in Delaware—as a *waiver* of GVA's right to proceed in federal court and its Seventh Amendment right to a jury trial.

The law holds otherwise, and this Court should reject Definition's Motion for two reasons. *First*, the forum selection clause in Section 13.10 of the GVA Auto LLC Operating Agreement ("OA") is not a waiver of the right to remove. Unlike the clauses in the Third Circuit cases cherry-picked by Definition, the OA does not allow one party or the other to *choose* the forum, and it certainly does not waive the parties' rights to remove an action to federal court when—as here—the criteria for removal are met. *Second*, even if Section 13.10 could be read as waiver of the right to remove—which it cannot—the clause would nevertheless be unenforceable because it would unjustly deprive GVA of its Seventh Amendment right to a jury trial without *any* evidence that GVA ever knowingly and intelligently waived that right.

## COUNTERSTATEMENT OF FACTS

### A.     The Luminar Investment

GVA is a San Francisco-based investment manager. *See* D.I. 1-1 at 13, ¶ 12. GVA Auto LLC ("GVA Auto") is one of GVA's portfolio companies. *See id.* Definition is a British Virgin

2

Islands company ultimately controlled by a trust established for the benefit of the children of a Russian oligarch, Suleiman Kerimov. *See id.* ¶ 11.

In September 2016, GVA encouraged Prosperity—purportedly Definition's predecessor-in-interest—to invest $20 million in a nascent automotive technology company, Luminar Technologies, Inc. ("Luminar"). *See* D.I. 1-1 at 14, ¶ 15. Prosperity agreed. To make the investment, Prosperity paid $20 million to GVA Auto, and GVA in turn invested the $20 million in Luminar. *See id.* at ¶ 16. Within months, Prosperity grew skeptical and demanded that GVA extricate it from the deal. *See* D.I. 1 at 2, ¶ 4. GVA offered two proposals: it would look for a replacement buyer, and it would take on *all* of Prosperity's risk. Specifically, GVA and Prosperity agreed that: (1) if the Luminar investment failed, GVA would make Prosperity whole by refunding its entire investment (or whatever portion remained after any sales to third parties); and (2) if the Luminar investment ultimately succeeded, GVA would keep any proceeds in excess of Prosperity's original investment. *See id.*

Time would prove GVA right. Last year, Luminar announced plans to go public. *See* D.I. 1-1 at 19, ¶ 29. Now, it has a market capitalization of more than $7 billion, and GVA Auto's interest is worth more than $400 million. *See* D.I. 1 at 3, ¶ 6. Had the Luminar investment fared badly, Definition would undoubtedly have demanded that GVA make it whole (as GVA promised it would). Instead, eyeing a $400 million payday to which it is not entitled, Definition now claims that it should be free to ignore its predecessor's promises because "there is no contemporaneous evidence" documenting the PLA "and because the purported oral amendment (if it had occurred) would be invalid." *See* D.I. 4 at ¶¶ 2, 10.

### B.    This Lawsuit

GVA continues to manage the GVA Auto investment. In that capacity, GVA has decision-making authority, including the "rights and powers" to "sell or otherwise dispose of" any of GVA

3

Auto's assets at any time.  However, GVA could not sell those shares until June 2021, when a lockup period expired.  On April 9, 2021, GVA wrote to Definition—which, by then, had purportedly succeeded to Prosperity's interest in GVA Auto—to explain how it would distribute any proceeds in accordance with the PLA.  *See* Ex. A.  Definition did not respond.  Instead, it ran into the Delaware Court of Chancery, seeking an "emergency" TRO, alleging an anticipatory breach, and requesting a declaration that Definition be permitted to renege on its predecessor's commitments and keep all of the Luminar profits.

There was never any emergency; the shares were locked up until June.  The parties nevertheless agreed to a "status-quo order," pursuant to which the disputed asset will remain in escrow until resolution of the parties' dispute.  *See id.* D.I. 1 at 4, ¶ 11.

### C.     The Forum Selection Clause

In its Motion, Definition relies on a forum-selection clause in the OA which provides as follows:

> Governing Law and Venue.  This Agreement shall be governed by, and construed under, the laws of the State of Delaware (without regard to conflict of laws principals), all rights and remedies being governed by such laws.  The parties agree that any action brought by any party under or in relation to this Agreement, including without limitation to interpret or enforce any provision of this Agreement, shall be brought in, and each party agrees to and does hereby submit to the jurisdiction and venue of, ***any state or federal court located in Delaware***, USA.

*See* D.I. 4, ¶ 15 (emphasis added).

Consistent with that provision—and because there is complete diversity between the parties—GVA removed this suit from the Court of Chancery to the District Court on May 25, 2021 so that, among other things, it could have a trial by jury.  GVA based its removal on 28 U.S.C. §§ 1332(a), 1441(b), and 1446.  *See id.* at 4–5.

On June 4, 2021, Definition moved to remand this dispute back to the Court of Chancery. D.I. 4.  Definition does not dispute that there is complete diversity between the parties, that the

amount in controversy is greater than $75,000, that venue would be otherwise proper in this Court, or that there was any procedural defect in GVA's removal. *See generally* D.I. 4. Instead, it makes only one argument: that, because the OA provides for disputes to be resolved in "***any*** state or federal court located in Delaware," GVA somehow *waived* its statutory right to remove qualifying disputes to federal court.

## ARGUMENT

The Court should reject Definition's invitation to remand for two reasons. ***First***, the forum selection clause in the OA is a straightforward *geographical* commitment to resolve disputes in an appropriate court in Delaware—not a waiver of GVA's rights to remove this case to federal court if any investor filed a lawsuit in state court first. In that way, it is categorically different from the Third Circuit cases Definition relies on in its Motion. ***Second***, even if GVA *had* waived its right to remove this case—which it did not—that waiver would be unreasonable and unenforceable here because it would result in an unknowing, unintentional waiver of GVA's fundamental Seventh Amendment right to a jury trial.

## I.   THIS CASE MEETS THE STATUTORY REQUIREMENTS FOR REMOVAL.

Definition does not dispute that this case meets the substantive and procedural prerequisites for removal under 28 U.S.C. §§ 1441 and 1446. Definition likewise does not assert that this case lacks diversity or challenge the amount in controversy under 28 U.S.C. § 1332(a). *See generally* D.I. 4. Indeed, Definition does not attack this Court's original jurisdiction *at all*. *See id.* Nor does Definition contend that GVA's removal runs afoul of any of the procedural requirements for removal in 28 U.S.C. § 1446. And finally, Definition does not contest that this Court is a proper venue for removal under Section 13.10, which establishes that the state and federal courts in Delaware are proper fora for disputes relating to the OA.

## II. THE FORUM SELECTION CLAUSE IN SECTION 13.10 DOES NOT WAIVE GVA'S RIGHT TO REMOVE.

### A. Governing legal standards

Although *certain* forum selection clauses can amount to a waiver of the right to remove, *see, e.g.*, *New Jersey v. Merrill Lynch & Co., Inc.*, 640 F.3d 545, 547 (3rd Cir. 2011), the clause in this case does not.

"The question of the scope of a forum selection clause is one of contract interpretation." *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 58 (3d Cir. 2018).  Accordingly, courts in this Circuit determine whether a forum-selection clause works a waiver of the right to remove using the "same benchmarks of construction and, if applicable, interpretation as [they] employ[] in resolving all preliminary contractual questions."  *Merrill Lynch*, 640 F.3d at 548 (internal quotation marks omitted).  State law—here, Delaware law—controls the inquiry regarding the scope of a forum selection clause.  *See McGraw Hill*, 909 F.3d at 58.  And, although waiver need not be "clear and unequivocal," *Foster v. Chesapeake Ins. Co., Ltd.*, 933 F.2d 1207, 1217 n.15 (3rd Cir. 1991), it ***must*** nevertheless be apparent from the "plain and ordinary meaning" of the words in the forum selection clause that the parties ***intended*** to waive their statutory right to remove.  *See Merrill Lynch*, 640 F.3d at 548.

As such, the question for the Court is whether the specific words of the forum selection clause in Section 13.10 demonstrate that GVA intended to *waive* its rights to remove a case when removal is otherwise conceded to be appropriate.  *See, e.g.*, *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010) ("[A] contract's construction should be that which would be understood by an objective, reasonable third party."); *see also Utilisave, LLC v. Khenin*, 2015 WL 4931862, at *10 (Del. Ch. Aug. 18, 2015) ("It is elemental that this Court construes all contracts by seeking to determine the intent of the parties"); *Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.*,

6

619 F.2d 1001, 1009 (3rd Cir. 1980) ("In construing a contract, a court's paramount consideration is the intent of the parties.").  The answer is clearly no.

## B. Section 13.10 does not include *any* language suggestive of waiver.

The inquiry must begin with the text of the forum selection clause itself.  *See Osborn*, 991 A.2d at 1159-60 ("When the contract is clear and unambiguous, we will give effect to the plain-meaning of the contract's terms and provisions."); *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006) ("When interpreting a contract . . . we are constrained by a combination of the parties' words and the plain meaning of those words where no special meaning is intended.").

The operative language is the final sentence of Section 13.10:

> The parties agree that any action brought by any party under or in relation to this Agreement . . . shall be brought in, and each party agrees to and does hereby submit to the jurisdiction and venue of, any state or federal court located in Delaware, USA.

What this provision makes clear is that GVA intended that relevant disputes would be litigated in a court *in Delaware*—*not* that it would be required to *remain* in state court solely because the plaintiff happened to file a lawsuit in state court first.  Courts in the Third Circuit have explained this distinction as one between, on the one hand, "an agreement to certain geographical locations for the convenience of the parties," and, on the other, "a waiver of the defendant's rights to removal."  *See, e.g.*, *Sanyo Elec. Co., Ltd v. Intel Corp.*, 2019 WL 1650067, at *6 (D. Del. Apr. 17, 2019) (citing *Periodical Graphics, Inc. v. Spitz*, 1994 WL 502506 (E.D. Pa. 1994)).  In other words, one can agree to the former—as happened here—without necessarily agreeing to the latter.

The phrase "shall be brought in" obliges both GVA and Definition to file lawsuits related to the OA in *either* the Delaware state courts or in this Court.  The parties agreed that they would

"submit to" jurisdiction and venue for purposes of actions that "shall be brought" by either side—in other words, they agreed not to challenge the *propriety* of venue or jurisdiction if, for instance, courts in Delaware were inconvenient or lacked jurisdiction over the parties.  But, by removing, GVA is not contending that Definition initially sued in the wrong *state*, or that the state court lacks personal jurisdiction over GVA.  Quite the opposite: "original jurisdiction in state court is a *prerequisite* for the federal court to acquire derivative jurisdiction by removal."  *Mercy Hosp. Ass'n v. Miccio*, 604 F. Supp. 1177, 1180 (E.D.N.Y. 1985) (emphasis added).  A removing defendant is simply electing to pursue a path made available by statute to transfer a case from the state system to the federal system—not challenging the propriety or convenience of state court or its general authority to hear the case.

It's certainly possible for a party to knowingly *waive* its right to removal, or to explicitly agree to remain in whichever Court their opponent chooses.  For instance, in *Foster*—which Definition relies on extensively in its Motion—the relevant forum selection clause made clear that one party, Mutual Fire, could *choose* the forum and that the other party, Chesapeake, would not object.  *Foster*, 933 F.2d at 1216–17 ("[B]y consenting to 'submit' to 'any court' of competent jurisdiction '*at the request of the Company*,' and to comply with all requirements necessary to give '*such court*' jurisdiction, Chesapeake agreed to go to, *and stay in,* the forum chosen by Mutual Fire.").  But there is no analogous language in Section 13.10 that indicates that GVA considered and chose to forgo its statutory right to removal.[1]  Indeed, GVA did not agree to "submit" to "any court" of competent jurisdiction "*at the request of*" Definition, as happened in *Foster*, *see, e.g.*,

---

[1] *See Eagle Indus., Inc. v. DeVilviss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997) ("Contract terms themselves will be controlling when they establish the parties' common meaning so that a reasonable person in the position of either party would have no expectations inconsistent with the contract language").

933 F.2d at 1216–17.  Nor did it waive "any rights regarding diversity of jurisdiction pertaining to this matter," *see, e.g.*, *Cowatch v. Sym-Tech Inc.*, 253 F. App'x 231, 234 (3d Cir. 2007).  Nor did it "irrevocably waive[], to the fullest extent permitted by law, any objection that it may have . . . to the laying of venue . . . or to the jurisdiction of, any and each" court.  *See, e.g.*, *Carlyle Inv. Mgmt., L.L.C. v. Carlyle Cap. Corp.*, 800 F. Supp. 2d 639, 644 (D. Del. 2011).  Plainly, there are many ways in which parties can express their intent to *waive* the statutory right to remove; none appears in Section 13.10.

In short, the plain and ordinary meaning of the words in Section 13.10 clearly demonstrate that the parties to the OA intended that relevant disputes would be resolved *in Delaware*, not in whichever court in Delaware a party happened to file in first.  Section 13.10 is an "agreement to certain geographical locations for the convenience of the parties," not a "waiver of the defendant's right to removal."  *Periodical Graphics, Inc. v. Spitz*, 1994 WL 502506, at *3 (E.D. Pa. Sep. 14, 1994); *see also Sanyo*, 2019 WL 1650067, at *5 ("courts in this circuit have rejected attempts like Sanyo's to transform agreements on the geography of a lawsuit into a promise not to remove to a federal court within the agreed geography.").  This is in accord with a wealth of decisions interpreting similar forum selection clauses in federal courts around the country ruling on requests to remand removed actions.  *See Cronin v. Fam. Educ. Co.*, 105 F. Supp. 2d 136, 138 (E.D.N.Y. 2000) ("the forum selection clause at issue here is plainly geographic ('courts located in')"); *Amerilink Corp. v. Cerco, Inc.*, 1996 WL 238525, at *2 (E.D. Mo. May 3, 1996) ("Where the contract provides that the parties consent to the jurisdiction of state or federal court within a particular geographic region, the agreement does not constitute waiver of a defendant's right to remove." (citing *Newman/Haas Racing v. Unelko Corp.*, 813 F. Supp. 1345 (N.D. Ill. 1993)); *Oberweis Dairy, Inc. v. Maplehurst Farms, Inc.*, 1989 WL 2078, at *2 (N.D. Ill. Jan. 10, 1989)

("This clause provides, in essence, that any dispute between these parties will be brought in a courtroom located in Illinois . . . this case does not involve language which vests in the plaintiff the right to choose a particular Illinois court.").

      **C.**     **The cases Definition relies on are inapposite and readily distinguishable.**

     Definition claims inaccurately that other decisions "have repeatedly interpreted forum selection clauses *like the one at issue here* as a waiver of a defendant's right to seek removal[.]" D.I. 4 at 8, ¶ 17 (emphasis added).  But those decisions found waiver by relying on language that is absent from Section 13.10.

     For instance, Definition turns first and most frequently to *Foster*, arguing that it—and "a long line of cases" on which *Foster* relies—require this Court to grant its Motion.  But Definition mischaracterizes *Foster* in several respects.  *First*, in *Foster*, the Third Circuit found that one party had waived its right to remove specifically because it agreed to submit to the jurisdiction of the court *of the other party's choosing*.  *Foster*, 933 F.2d at 1217 (3d Cir. 1991).[2]  There is, of course, no such preferential treatment in Section 13.10.

     *Second*, the Third Circuit in *Foster* focused on the phrase "such court"—a reference to the one, single court that had been chosen by the plaintiff there.  *See id.* at 1216–1217 ("[B]y consenting to 'submit' to 'any court' of competent jurisdiction 'at the request of the Company,'

---

[2] The same is true of the holdings in the "long line of cases" that Definition references but does not discuss.  *See, e.g.*, *W. Chestnut Realty of Haverford, Inc. v. First State Ins. Co.*, 1990 WL 87377, at *1 (E.D. Pa. June 19, 1990) ("[A]t the request of the insured (or reinsured), will submit to the jurisdiction of any Court of competent jurisdiction within the United States."); *Cessna Aircraft Co. v. Fid. & Cas. Co. of New York*, 616 F. Supp. 671, 673 n.1 (D.N.J. 1985) (same); *Cap. Bank & Tr. Co. v. Associated Int'l Ins. Co.*, 576 F. Supp. 1522, 1524 (M.D. La. 1984) ("the policy accords to the assured the right to choose the court of competent jurisdiction in which disputes are to be determined.").  Most or all of these cases arise in the reinsurance context and involve forum-selection clauses that are altogether different than Section 13.10.

and to comply with all requirements necessary to give '**such court**' jurisdiction, Chesapeake agreed to go to, and stay in, ***the forum*** chosen by Mutual Fire.") (emphasis added).  It was the repeated reference to one "such court" that convinced the Third Circuit that the defendant had forgone its right to remove.  *Id*.  Here, however, the opposite is true.  Section 13.10 reflects that the parties "agree to . . . submit to the jurisdiction of[] *any* state or federal court" in Delaware.  Nothing in that provision indicates that—as the *Foster* court put it—GVA agreed "to go to, ***and stay in***, the forum chosen by" Definition.  *Id.* at 1217 (emphasis in original).

Third, the clause in *Foster* provided that disputes were to be resolved "in accordance with the law and practice of *such* court"—*i.e.*, whichever court Mutual Fire selected under the venue provision.  933 F.2d at 1217.  The Third Circuit observed that, "while the substantive law to be applied by the federal court upon removal" in a diversity case would be the same as in state court, "the practice of the federal courts rather than that of the Commonwealth Court of Pennsylvania would govern the matter."  *Id.*  Thus, removal would undermine the parties' agreement to adhere to the specific procedural rules of whichever particular court Mutual Fire designated as its chosen forum under the terms of the parties' contract.  Section 13.10 of the OA has no similar provision indicating the parties' agreement to remain in a court with the same practices as the court in which the plaintiff initially filed suit.

Definition separately relies on *Carlyle Investment Management, LLC v. Carlyle Capital Corp. Ltd.*, 800 F. Supp. 2d 639, 644 (D. Del. 2011).  But in *Carlyle*, the parties explicitly waived their right to object to any particular court: "each party hereto hereby ***irrevocably waives***, to the fullest extent permitted by law, ***any objection*** that it may have, whether now or in the future, to the laying of venue in, or to the jurisdiction of, any and each of such courts."  *Id.* (emphasis added).  The same is true of *Canon Financial Services, Inc. v. Kalmus*, 2020 WL 4333744, at *3 (D.N.J.

July 28, 2020) (relied on by Definition at 10 n.3), where the parties "***irrevocably waive[d] objection***
to the jurisdiction of such courts and objection venue and convenience of forum." (emphasis
added.)  And in *E.I. Du Pont de Nemours & Co. v. Quality Carries, Inc.*, 2011 WL 776211, at *2
(D. Del. Feb. 28, 2011) (relied on by Definition at 9), where the parties "***waive[d] in advance any
and all objections*** to the Delaware courts as forums based upon any question of venue; the doctrine
of *forum non conveniens*; the present or future pendency of any other case or proceeding
elsewhere; the compulsory counterclaim rule ***or any other doctrine, statute, rule of practice or
fact***." (emphasis added.)  Importantly, the parties in each of these cases considered, negotiated,
and agreed to waive any objections they might have had to each other's choice of any particular
forum.  Here, by contrast, GVA has agreed only to "submit to the jurisdiction" of "any state or
federal court"; Section 13.10 says *nothing* about waiving objections, let alone about waiving one's
right to remove.

Finally, Definition cites to *InterDigital*, in which this Court found that the parties
"arguably" waived their right to remove by "***irrevocably*** consent[ing] to ***exclusive*** jurisdiction and
venue" of the Delaware state and federal courts.  *InterDigital, Inc. v. Wistron Corp.*, 2015 WL
4537133, at *1 (D. Del. June 18, 2015) (emphasis added).  The Court based its decision in part on
*Foster*, which it summarized as finding a waiver where parties "consent[ed] to 'submit' to 'any
court' of competent jurisdiction . . . ." *Id*.  But, as explained above, the forum provision in *Foster*
was quite different, and the Third Circuit found waiver specifically because the *Foster* contract
gave *one party* the right to choose the forum and then plainly and repeatedly referred to the specific
court so chosen.  Here, there is no "irrevocable consent" and no indication that the parties waived
any particular rights; there is only a commitment that disputes arising under the OA will be
resolved in "any state or federal court located in . . . Delaware . . . ."  That does not rise to the level

of *InterDigital* ("irrevocabl[e] consent"), and certainly does not clear the *Foster* threshold. Instead, the OA, "on its face, . . . states that either federal or state court is permitted so long as the court is in Delaware," which defeats an argument that such provision waives a party's right to remove. *See, e.g.*, *Sanyo*, 2019 WL 1650067, at *5.

This Court should reject Definition's invitation "to transform agreements on the geography of a lawsuit into a promise not to remove to a federal court within the agreed geography." *Id.*

## III.  IF THE FORUM SELECTION CLAUSE WERE READ AS DEFINITION PROPOSES, IT WOULD DEPRIVE GVA OF ITS CONSTITUTIONAL RIGHT TO A JURY TRIAL—THUS RENDERING IT UNENFORCEABLE.

If the Court were to decide that Section 13.10 constituted a waiver of GVA's statutory right to remove this case—which it does not—it should nevertheless deny Definition's motion for a separate reason that was not presented in *Foster*: sending this case back to the Court of Chancery would deprive GVA of its Seventh Amendment right to a jury trial.

"The right to a jury trial is a fundamental right that is expressly protected by the Seventh Amendment to the United States Constitution." *Bouriez v. Carnegie Mellon Univ.*, 359 F.3d 292, 294 (3rd Cir. 2004). As the Supreme Court has explained many times, "[m]aintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." *Beacon Theatres v. Westover*, 359 U.S. 500, 501 (1959) (quoting *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935)). That is why jury-trial waivers "must be made knowingly and voluntarily based on the facts of the case"—and why "courts indulge every reasonable presumption against waiver[.]" *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 222 (3rd Cir. 2007); *see also Hydramar, Inc. v. Gen. Dynamics Corp.*, 1989 WL 159267, at *2 (E.D. Pa. Dec. 29, 1989) ("Although there is a compelling interest in the preservation of the freedom to contract, there is an even greater interest in guarding the fundamental right to a jury." (citing *Johnson v. Zerbst*, 304

U.S. 458 (1988)). "Courts do not uphold jury trial waivers lightly and the burden of proving that a waiver was done both knowingly and intelligently falls upon the party seeking enforcement of a waiver of a jury trial clause." *First Union Nat'l Bank v. United States*, 164 F. Supp. 2d 660, 663 (E.D. Pa. 2001); *see also Miller v. Sun Cap. Partners, Inc.*, 2016 WL 4941989, at *5 (D. Del. Sep. 15, 2016) ("burden of proving that a waiver was done both knowingly and intelligently falls upon the party seeking enforcement").

Indeed, courts in this Circuit have observed that, where a purported jury waiver is "lost in a sea" of other forum and venue language, much of which "cannot logically apply to the jury waiver," such a waiver *cannot* meet the constitutional standard. *See U.S. Bank, Nat'l Ass'n v. Rosenberg*, 2014 WL 2439427, at *2 (E.D. Pa. May 20, 2014). And they have appropriately declined to enforce purported jury waivers when "it is uncertain whether the [jury waiver] provision was a bargained for term of the contract." *Jackson Hewitt, Inc. v. Luke*, 2013 WL 2444064, at *4 (D.N.J. June 4, 2013). In *Rosenberg* and *Jackson*, the courts refused to enforce a jury waiver because it was ambiguous or inconspicuous; here, there is no provision *at all* that addresses jury rights, let alone one that clearly and conspicuously waives them. *Cf. Hydramar*, 1989 WL 159267, at *5 ("[T]he jury waiver clause was so inconspicuously situated as to completely nullify the possibility of a knowing and intelligent waiver.").[3]

And yet, if this case is sent back to the Court of Chancery, the consequences are clear and serious: GVA will forfeit its right to try its case to a jury. Just last month, the Court of Chancery

---

[3] Should the Court conclude that there is factual ambiguity with respect to whether GVA knowingly and intentionally waived its jury rights, GVA respectfully requests that the Court order limited discovery on that issue before ruling on Definition's motion to remand. *See, e.g.*, *Bessemer Sys. Fed. Credit Union v. Fiserv Solutions LLC*, 472 F. Supp. 3d 142, 181–82 (W.D. Pa. 2020) (denying motion to strike jury waiver presenting "factual issues that this Court can more effectively address following discovery in this matter.").

14

held that "a litigant is *not* entitled to a Superior Court jury trial of claims that are cognizable in [the] Court [of Chancery]." *See Firststring Research, Inc. v. JSS Med. Research, Inc.*, 2021 WL 2182829, at *7 (Del. Ch. May 28, 2021) (citing *Acierno v. Goldstein*, 2004 WL 1488673 (Del Ch. June 25, 2004) (emphasis in original)).  Although the defendant's counterclaim could have been tried to a jury in Superior Court if brought alone, the Chancellor held that because the plaintiff had "adequately pled a claim for equitable relief sufficient to invoke [the Court of Chancery's] jurisdiction" over the "entire complaint," "the defendant [did] not have a right to a jury trial on its counterclaims." *Id*. at *1, 5–7.[4]

That holding will apply even to those portions of Definition's claims that seek *legal* relief, which GVA would be entitled to defend before a jury in this Court.  "The right to a jury trial in federal court, regardless of whether the claim arises under state law, presents a question of federal law, even when a state statute or state constitution would preclude a jury trial in state court." *Marra v. Philadelphia Housing Auth.*, 497 F.3d 286, 313 (3rd Cir. 2007).  Under federal law, a defendant is entitled to a jury trial for "suits at common law," which the Supreme Court has determined means "cases involving legal rights," as opposed to equitable claims.  *Billing v. Ravin, Greenberg & Zackin, P.A.*, 22 F.3d 1242, 1245 (3d Cir. 1994) (explaining that Seventh Amendment right to jury trial extends to legal claims).  To determine whether a claim is equitable or legal, courts look first to "18th-century actions brought in the courts of England prior to the merger of the courts of

---

[4] There are statutory procedures that allow the Court of Chancery to utilize a jury in its sole discretion, *see* 10 *Del. C.* § 369, but any jury determination is not binding because "the verdict of the jury is only advisory and that if for any reason the verdict is not satisfactory to the Chancellor's conscience, for whose enlightenment is sought, another issue may be framed and submitted for trial to another jury, or the Chancellor may disregard the verdict already rendered and himself proceed on the evidence disclosed by the record to make a finding." *Scotton v. Wright*, 122 A. 541, 542 (Del. Ch. Nov. 7, 1923).

law and equity." *Id.* (quoting *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42 (1989)).  Second, courts consider "the remedy sought and determine whether it is legal or equitable in nature."  *Id.* This step of the analysis is "more important than the first."  *Id.*  Importantly, *unlike in the Court of Chancery*, "neither joinder of an equitable claim with a legal claim nor joinder of a prayer for equitable relief with a claim for legal relief as to a legal claim can defeat an otherwise valid seventh amendment right to a jury trial" in federal court.  *Amoco Oil Co. v. Torcomian*, 722 F.2d 1099, 1102 (3d Cir. 1983).

There can be no serious dispute that Definition's complaint includes claims that seek legal relief, and GVA will accordingly receive a jury trial on those claims if the case remains in this Court.  Definition's first cause of action is for a declaratory judgment that nullifies the PLA and seeks to *collect profits* it alleges GVA is wrongfully withholding in violation of the terms of the OA.  *See* D.I. 1-1 at 26–27.  This, as the Third Circuit has explained, is "essentially an inverted law suit" seeking money damages for a purported anticipatory breach of the OA.  *AstenJohnson, Inc. v. Columbia Cas. Co.*, 562 F.3d 213, 223 (3rd Cir. 2009).  Under well-established Third Circuit precedent, courts should look to "the essential nature of the action" when weighing whether a defendant has a Seventh Amendment right to a jury trial on a declaratory judgment claim.  *See AstenJohnson*, 562 F.3d at 224.

In Definition's second cause of action, it alleges a claim for anticipatory repudiation of the OA and seeks, *inter alia*, "an award of damages for the injuries is has suffered[.]"  D.I. 1-1 at 21, ¶ 58.  "An action for money damages based on a breach of contract is traditionally a legal claim." *Billing*, 22 F.3d at 1245.  Anticipatory repudiation is a species of breach of contract and courts consistently conclude that such claims are legal—not equitable—in nature.  *See Faw, Cason & Co. v. Ballard*, 1984 WL 548381, at *2 (Del. Sup. Dec. 17, 1984) ("[T]he defendant fails to give

adequate assurance of performance in accordance with the agreement that he signed, and this can, under the law, constitute Anticipatory Repudiation, affording the plaintiff remedies in this Court."); *see also Quarum v. Mitchell Int'l, Inc.*, 2019 WL 158153, at *4 (Del. Ch. Jan. 10, 2019) ("Certain of Quarum's allegations appear to form a claim of anticipatory breach . . . .  This claim standing alone does not confer subject matter jurisdiction on this Court.  (citations omitted)).  There is no question that GVA is entitled to a jury trial in this Court on at least the first and second causes of action in the complaint.

But, if this case is remanded and the Court of Chancery finds that Definition adequately pled *any* equitable claim, GVA would lose the right to a jury trial on the legal issues that this case presents—a right GVA will retain if the case remains in this Court.  *See Park Oil, Inc. v. Getty Refining & Mktg. Co.*, 407 A.2d 533, 535 (Del. 1979) ("Under settled principles of equity jurisprudence, once equity jurisdiction had attached, as it did here, the Court [of Chancery] properly proceeded to deal with the whole matter.").  In other words, reading Section 13.10 as Definition proposes would result in an improper, *sub silentio* jury-trial waiver—it would deprive GVA of its constitutional right to a jury trial even though GVA has *never* knowingly and intentionally waived that right.  Given these extreme consequences, caution is warranted.  Indeed, as the Supreme Court teaches in *Beacon Theatres*, Definition's assertion of the forum selection clause in these circumstances "should be scrutinized with the utmost care."  359 U.S. at 501.

Fortunately, the Court is not required to implement the forum-selection provision *even if* it agrees with Definition's overly broad interpretation.  Although "[f]ederal law presumes forum selection clauses to be valid, that presumption is overcome where the resisting party shows that enforcement would be 'unreasonable under the circumstances.'"  *MacDonald v. CashCall, Inc.*, 883 F.3d 220, 232 n.14 (3rd Cir. 2018) (quoting *Foster*, 933 F.2d at 1219).  A forum-selection

clause is "unreasonable" where the defendant can make a "strong showing" that the forum selected is "gravely difficult and inconvenient" such that it deprives a party of its "day in court," or when application of the clause would be "unjust."  *See Foster*, 933 F.2d at 1219 (quoting *The Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 15, 18 (1972)); *Carlyle Inv. Mgm't LLC v. Moonmouth Co. SA,* 779 F.3d 214, 218 (3d Cir. 2015).  In these circumstances, where remand would work a deprivation of GVA's constitutional right to a jury trial, it would be unjust and its enforcement would offend due process.  *Cf. Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985) ("Where such forum-selection provisions have been obtained through freely negotiated agreements and are not unreasonable and unjust, their enforcement does not offend due process."  (internal quotation marks and citation omitted)).

*Handoush v. Lease Finance Group, LLC*, is illustrative.  There, the California Court of Appeal was confronted with a motion to dismiss based on a forum-selection clause that specified New York courts.  *See* 41 Cal. App. 5th 729, 732 (2019).  Unlike GVA Auto's OA, the contract at issue in *Handoush* actually contained an express, prelitigation jury trial waiver.  *Id.*  But under California law, prelitigation jury trial waivers are unconstitutional.  *See id.* at 736.  The Court reversed the lower court's order granting the motion to dismiss—that is, it declined to enforce the forum-selection clause—on the grounds that doing so would undermine the state's constitutional provisions.  *See id.* at 741.  Although *Handoush* is a state court decision applying a state constitution, its reasoning is doubly applicable here, where the contract at issue does not include a jury trial waiver at all.

The Court should therefore decline Definition's invitation to convert an agreement between the parties as to the *geographic* location of any disputes between them into a wholesale, unwritten, and unknowing forfeiture of GVA's Seventh Amendment rights.[5]

## CONCLUSION

This case was properly removed and this Court has original jurisdiction over the matter and personal jurisdiction over the parties.  In Section 13.10, GVA agreed—and required that GVA Auto's Members agree—to litigate any disputes in Delaware.  It did not waive its right to object when appropriate, nor to remove this case as it has done.  Nor did it waive its Constitutional right to try the parties' legal claims before a jury.  Definition improperly asks this Court to read *both* commitments in where they don't exist.  GVA respectfully submits that the Court should decline to do so.

ROSS ARONSTAM & MORITZ LLP

*Of Counsel:*

Elliot R. Peters
Nicholas D. Marais
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, California  94111
epeters@keker.com
nmarais@keker.com

*/s/ Bradley R. Aronstam*
Bradley R. Aronstam (Bar No. 5129)
Adam D. Gold (Bar No. 6412)
100 S. West Street, Suite 400
Wilmington, Delaware  19801
(302) 576-1600
baronstam@ramllp.com
agold@ramllp.com

*Attorneys for Defendant GVA Capital Ltd.*

Dated:  June 18, 2021

---

[5] This is especially true in this diversity case, where the substantive law applicable to Definition's claims will be identical in state or federal court.

19