IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DEFINITION SERVICES INC., a British Virgin Islands corporation, | ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 21-741-RTD |
| v. | ) ) ) | **REDACTED PUBLIC VERSION** |
| GVA CAPITAL LTD., a Cayman Islands exempted company, | ) ) ) | |
| Defendant. | ) | |

**PLAINTIFF DEFINITION SERVICES INC.'S UNOPPOSED MOTION FOR ISSUANCE OF LETTER OF REQUEST TO ODRISON INVESTMENTS LTD.**

Plaintiff Definition Services, Inc. ("Definition") respectfully moves this Court for the issuance of a Letter of Request, directed to the Ministry of Justice and Public Order of the Republic of Cyprus, for the purpose of obtaining documents and testimony from Odrison Investments Limited ("Odrison"), a non-party located in Limassol, Cyprus. Definition makes this request pursuant to Federal Rule of Civil Procedure 28 and the Hague Convention On The Taking Of Evidence Abroad In Civil Or Commercial Matters of 18 March 1970, 23 U.S.T. 2555 (1970), reproduced at 28 U.S.C. § 1781, so that it may obtain relevant evidence located in Cyprus for use in this proceeding. The documents and testimony requested by Definition are set forth in Attachments A and B to the proposed Letter of Request, which is filed herewith as Exhibit 1. Defendant GVA Capital Ltd. ("GVA") has confirmed that it

1

does not oppose Definition's Letter of Request to Odrison under the Hague Convention. Definition's Certification Pursuant to Local Rule 7.1.1 is filed herewith as Exhibit 2.

The United States and Cyprus are contracting parties to the Hague Convention, where they have expressed their mutual commitment to providing evidence for use in other countries' legal proceedings. Definition's proposed Letter of Request complies with the requirements of the Hague Convention and otherwise satisfies the threshold showing required by this Court to issue a letter of request to obtain relevant documents and deposition testimony from a key non-party, Odrison Investments Ltd., located in Cyprus.

## BACKGROUND

Definition filed this suit to stop its investment manager, GVA, from diverting the gains on Definition's investments to GVA itself. The parties' written contract entitles Definition to an investment distribution worth hundreds of millions of dollars. But GVA has taken the position that ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. *See* D.I. 1-1 at ¶¶ 3, 43-44 ("Complaint"). Definition therefore seeks a Letter of Request to GVA's shareholder and director, Odrison.

In September 2016, Definition's predecessor-in-interest, Prosperity Investments LP ("Prosperity"), and GVA entered into the GVA Auto Operating Agreement (the "Operating Agreement"). The Operating Agreement governs the operations and finances of GVA Auto LLC ("GVA Auto"), a company managed by GVA whose purpose was to invest Prosperity's capital in Luminar Technologies, Inc. ("Luminar"). *Id.* ¶ 15. In accordance with the Operating Agreement, Prosperity made a $20 million capital contribution to GVA Auto, which GVA Auto in turn invested in Luminar. *Id.* ¶¶ 15-16. At the time the Operating Agreement was executed, Luminar was a startup company developing technology for self-driving cars. *Id.* ¶ 15.

The Operating Agreement was amended in June 2017 when Prosperity sold a 5% stake in GVA Auto to Vladimir Smirnov. *Id.* ¶ 17. In December 2018, Prosperity transferred all of its interests in GVA Auto to Definition pursuant to an Assignment Agreement, which was approved by GVA in a document executed by Odrison. *Id.* ¶¶ 25-26; D.I. 6 ("Answer") ¶¶ 25-26.

Luminar went public on December 1, 2020. Complaint ¶ 29. That event caused GVA Auto to receive approximately 18 million shares of Luminar common stock (the "Luminar Shares"), which are currently valued in the hundreds of millions of dollars. Answer ¶ 2. The Luminar Shares were subject to a lock-up period that restricted the Shares' sale until June 1, 2021. Complaint ¶ 30.

In March and April 2021, GVA was working with Definition to plan for an in-kind distribution of the Luminar Shares to Definition when the lock-up period expired. Consistent with the Operating Agreement, GVA Director Pavel Cherkashin communicated with advisors of Definition regarding a planned distribution model under which Definition was to receive nearly 15.5 million shares. *Id.* ¶¶ 31-33.

GVA, however, refused to distribute the Luminar Shares as provided by the parties' Operating Agreement. Instead, on April 8, 2021, Mr. Cherkashin wrote to advisors for Definition, saying that Magomed Musaev—"a 35% owner of GVA Capital through his entity, Odrison Investments Ltd."—now claimed to have reached an oral agreement years prior, under which the Luminar Shares would be distributed to *GVA*, not Definition. Declaration of Brock Czeschin ("Czeschin Decl."), Ex. A. Mr. Cherkashin, who was a Director of GVA at the time, indicated that he would not personally authorize the Luminar Shares to be redirected to GVA because he "ha[d] not seen any evidence . . . that Prosperity or Definition Services agreed to such an arrangement." *Id*.

According to Mr. Cherkashin, Odrison then sought to remove him as a director of GVA after he refused to redirect the Luminar Shares. *Id.* Mr. Cherkashin told Definition's advisors, "Mr. Musaev confirmed his intention to proceed with the transaction [to divert any proceeds from the Luminar investment to GVA] following [Mr. Cherkashin's] removal as director." *Id*. Odrison initiated an extraordinary

4

meeting of GVA Capital's shareholders on April 13, 2021 to consider Mr. Cherkashin's removal. During that meeting, Odrison and the other GVA shareholders voted to remove Mr. Cherkashin. Complaint ¶ 45; Answer ¶ 31. In confidential interrogatory responses, ███████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████.

Odrison is therefore likely to have personal knowledge and information material to this case. ███████████████████████████████

██████████████████ Odrison is likely to have documents and first-hand knowledge relevant to the existence, validity, and enforceability of the alleged oral modification to the GVA Auto Operating Agreement. As a director of GVA during the relevant time period, Odrison is likely to have relevant documents and first-hand knowledge regarding GVA's management of Prosperity's and Definition's investments in GVA entities, including GVA Auto. And as the member of GVA who noticed the extraordinary meeting of shareholders to remove Mr. Cherkashin as a director of GVA, Odrison is likely to have first-hand knowledge and information regarding Mr. Cherkashin's removal and the basis for that action.

On information and belief, Odrison is a company organized and existing under the laws of the Republic of Cyprus. As an international non-party witness, discovery pursuant to the Federal Rules of Civil Procedure is unavailable because Odrison is

outside the jurisdiction of the District Court for the District of Delaware. Therefore, foreign compulsory service through the Hague Convention "will facilitate the gathering of evidence" from Odrison for use in this action. *Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 541 (1987).

## ARGUMENT

The United States, the Republic of Cyprus, and many other nations are parties to the Hague Convention.[1] "The Hague Convention 'prescribes certain procedures by which a judicial authority in one contracting nation may request evidence located in another nation.'" *Schindler Elevator Corp. v. Otis Elevator Co.*, 657 F. Supp. 2d 525, 528 (D.N.J. 2009) (quoting *In re Automotive Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 299 (3d Cir. 2004)). "Article 1 of the Convention provides that '[i]n civil or commercial matters a judicial authority of a Contracting State may . . . request the competent authority of another Contracting State, by means of a Letter of Request, to obtain evidence, or to perform some other judicial act.'" *Ethypharm S.A. France v. Abbott Lab'ys*, 748 F. Supp. 2d 354, 358 (D. Del. 2010) (alteration and omission in original); *see also Pronova BioPharma Norge AS v. Teva Pharms. USA, Inc.*, 708 F. Supp. 2d 450, 452–53 (D. Del. 2010).

---

[1] *See* Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, Status Table, Hague Conference on Private International Law, https://www.hcch.net/en/instruments/conventions/status-table/?cid=82.

"Letters of Request are one method of taking evidence pursuant to the Convention." *Pronova*, 708 F. Supp. 2d at 452 (footnote omitted). "Courts 'routinely issue such letters where the movant makes a reasonable showing that the evidence sought may be material or may lead to the discovery of material evidence.'" *Compagnie des Grands Hotels d'Afrique S.A. v. Starman Hotel Holdings LLC*, 2019 WL 3391971, at *2 (D. Del. July 26, 2019) (citations omitted). The movant's burden "is not great . . . since the 'Convention procedures are available whenever they will facilitate the gathering of evidence by the means authorized in the Convention.'" *Tulip Computers Int'l B.V. v. Dell Computer Corp.*, 254 F. Supp. 2d 469, 474 (D. Del. 2003) (quoting *Aerospatiale*, 482 U.S. at 541); *accord Pronova*, 708 F. Supp. 2d at 452–53.

Accordingly, pursuant to 28 U.S.C. § 1781(b)(2), federal courts routinely issue Letters of Request for parties to obtain both documents and depositions from foreign non-parties under the Hague Convention. Because Odrison is a non-party located in Cyprus and not otherwise subject to the jurisdiction of this Court, "[r]esort to the Hague Evidence Convention in this instance is appropriate." *Tulip Computers Int'l B.V.*, 254 F. Supp. 2d at 474; *see also id.* ("When discovery is sought from a non-party in a foreign jurisdiction, application of the Hague [Evidence] Convention . . . is virtually compulsory." (alteration in original) (citation omitted)).

Here, Definition has complied with the requirements under the Hague Convention for issuance of a Letter of Request to obtain documents and deposition testimony from Odrison. Definition has made "a reasonable showing that the evidence sought may be material or may lead to the discovery of material evidence." *Compagnie*, 2019 WL 3391971, at *3 (citation omitted). As described more fully in the accompanying Proposed Letter of Request (Ex. 1), Definition seeks highly relevant documents and deposition testimony relating to Odrison's interest in and knowledge of the alleged oral modification to the GVA Auto Operating Agreement, GVA's management of Prosperity's and Definition's investments, and actions Odrison took as a director of GVA. These topics are highly relevant to whether GVA's alleged oral agreement exists or is enforceable, as well as whether GVA met its fiduciary duties to Definition in its management of GVA Auto. As a director and shareholder of GVA, Odrison is likely to have such relevant evidence within its possession, custody, control, and knowledge. Moreover, the requested documents and testimony are limited to facts "germane to [the] claim[s] or defense[s] in the pleadings." *Id.* at *2 (quoting *In re Intel Corp. Microprocessor Antitrust Litig.*, 2007 WL 137152, at *7 (D. Del. Jan. 12, 2007)); *see also Liqwd Inc. v. L'Oreal USA, Inc.*, 2018 WL 11189616, at *2, *6 (D. Del. Nov. 16, 2018) (granting motion for issuance of letter of request where "[t]he discovery sought" was "targeted to documents and communications regarding" facts at issue in the case and

was "relevant to [Plaintiff's] causes of action"). Definition has made a limited number of requests seeking information on topics central to Definition's allegations and GVA's defenses.

Additionally, there is no indication that obtaining relevant documents from Odrison or taking the deposition of Odrison in Cyprus would be unduly burdensome. Indeed, documents can be collected and delivered to the parties through electronic means compliant with the procedural law of Cyprus. And the deposition can be scheduled for a time and at a location convenient for Odrison and the parties, consistent with the laws of Cyprus.

For these reasons, Definition respectfully requests that the Court grant this motion and issue the attached Letter of Request.

|  |  |
|---|---|
| OF COUNSEL: | */s/ Brock E. Czeschin* <br> Brock E. Czeschin (#3938) <br> Travis S. Hunter (#5350) |
| Adam D. Harber (pro hac vice) <br> Sarah F. Kirkpatrick (pro hac vice) <br> William Snyderwine (pro hac vice) <br> Miranda Petersen (pro hac vice) <br> Williams & Connolly LLP <br> 725 Twelfth Street, NW <br> Washington, DC 20005 <br> (202) 434-5000 <br> aharber@wc.com <br> skirkpatrick@wc.com <br> wsnyderwine@wc.com <br> mpetersen@wc.com | Renée Mosley Delcollo (#6442) <br> Richards, Layton & Finger, P.A. <br> 920 North King Street <br> Wilmington, Delaware 19801 <br> (302) 651-7700 <br> czeschin@rlf.com <br> hunter@rlf.com <br> delcollo@rlf.com <br><br> *Attorneys for Plaintiff* <br> *Definition Services, Inc.* |

Dated: March 14, 2022

9

## CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2022, a true and correct copy of the foregoing document was caused to be served upon the following counsel of record as indicated:

| **VIA EMAIL** | **VIA EMAIL** |
|---|---|
| Bradley R. Aronstam | Elliot R. Peters |
| Adam D. Gold | David J. Silbert |
| Ross Aronstam & Moritz LLP | Nicholas D. Marais |
| 100 S. West Street, Suite 400 | Keker, Van Nest & Peters LLP |
| Wilmington, Delaware 19801 | 633 Battery Street |
| | San Francisco, CA 94111 |

*/s/ Brock E. Czeschin*
Brock E. Czeschin (#3938)